UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD.,

                           Plaintiffs,

            -against-

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON

                          Defendants.
------------------------------------------------------------X

Case No. 13-00547 (CM)

## GPIF-I EQUITY CO., LTD. AND GPIF-I FINANCE CO., LTD.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

WILMER CUTLER PICKERING
 HALE AND DORR LLP
Charles C. Platt
Jeremy S. Winer
7 World Trade Center
250 Greenwich Street
New York, New York 10007

## TABLE OF AUTHORITIES

*FXDirectDealer, LLC v. Abadi,*
   No. 12 Civ. 1796, 2012 WL 1155139 (S.D.N.Y. Apr. 5, 2012)..................................................5

*Marselis-Warner v. Rabens,*
   51 F. Supp. 2d 508 (D.N.J. 1999).................................................................................................4

## ARGUMENT

Defendants' opposition does not rebut the essential facts that the HDG Entities[1] and Harold D. Garrison:

- Owed fiduciary duties to the Funds as their manager under the Investment Advisers Act, the parties' Agreements, and the common law;
- Used their authority as the Funds' manager throughout 2012 to pre-pay themselves unilaterally at least $5,818,682 out of the Funds' assets for transactions that they expected to occur, before they had earned the money;
- Created accounting entries during the year to avoid expensing these pre-payments so they would remain hidden from the Funds' boards of directors;
- Re-characterized these pre-payments as additional "Financing Fees" when the expected transactions did not occur, thereby further concealing these payments; and
- Advised the Funds' directors that they took the money because they were concerned they would be terminated as fund manager to the Funds.

Hazell Declaration ¶¶ 5-6, 11, 13.

Rather than disputing this dispositive evidence, Defendants' opposition relies on their "cover story" that they only took additional "Financing Fees," and on legal arguments that ignore the special circumstances presented where they have violated their fiduciary duty to protect assets entrusted to them and to put their clients' interests ahead of their own.

1. <u>Plaintiffs Are Likely To Succeed On The Merits.</u>

Defendants argue that the Funds are unlikely to succeed because the HDG Entities had the authority to pay themselves fees under the Agreements. Def. Mem. at 14. That is untrue—the Agreements provide that any Financing Fees are to be paid "upon request." Hazell Decl. Ex. A § 5.1 Even if it were true, it would simply confirms Defendants' fiduciary responsibility to

---

[1] Capitalized terms have the same meaning as in Plaintiffs' opening brief ("Pl. Mem."). "Hazell Decl." refers to the Declaration of Deborah Hazell submitted with the Funds' opening brief. "2d Hazell Decl." refers to the Second Declaration of Deborah Hazell, submitted herewith.

1

protect those assets and to put the Funds' interests ahead of their own, especially when Defendants knew that the Funds disputed their entitlement to the money. 2d Hazell Decl. ¶ 8.

Defendants further argue that the amount they took is "the exact amount [the Funds] owed due to a chronic underpayment resulting from an inaccurately narrow interpretation of the plain language" of the Agreements. Def. Mem. at 14-15. Regardless of how Defendants may have manipulated the accounting entries to "come out even," they do not dispute that they pre-paid themselves millions of dollars throughout 2012 for transactions that they expected to occur, and accounted for those payments so they would remain hidden from the Funds' boards. Hazell Decl. ¶ 13. When the transactions did not occur by year end, Defendants re-characterized the pre-payments as additional "Financing Fees." The Funds did not learn that the "fees" had been paid until they were informed by a person affiliated with Defendants who was troubled by the payments. *Id.* ¶¶ 5-6; *see also* 2d Hazell Decl. ¶ 6. In other words, the evidence shows that Defendants concocted a story after-the-fact to cover up their misappropriation of Fund assets.

The Funds' likelihood of success is further bolstered by the fact that Defendants' "Financing Fee" cover story is not based on any rational interpretation of the Agreements (Hazell Decl. ¶¶ 7-8), would result in their being paid twice for their services (*id.* ¶ 9), and is undercut by their raiding of cash accounts without regard to whether the accounts correlated to transactions for which Defendants were purportedly owed additional "Financing Fees" (*id.* ¶ 10; *see also* 2d Hazell Decl. ¶ 9 & Exs. E, F). Defendants' suggestion that the word "equity" in Section 5.5 of the Agreements means that Financing Fees are paid on the entire equity (and not just the financing) in each transaction is without merit. *E.g.*, Def. Mem. at 15 (quoting Section 5.5's statement that Financing Fees are payable with respect to "equity, debt, debt-equivalent and Islamic financing elements"). The word "equity" in Section 5.5 of the Agreements clearly refers

2

to *equity financing*, just as the words "debt," "debt-equivalent" and "Islamic" in that Section refer to other types of *financing*. None of the transactions at issue utilized equity financing, so Defendants are not entitled to any additional Financing Fees. 2d Hazell Decl. ¶ 3.

Defendants' suggestion that KPMG has endorsed their right to additional "Financing Fees" is simply untrue. Def. Mem ¶ 5. The KPMG report that Defendants cite is completely silent on any alleged "underpayment," does not purport to interpret the Agreements, and in fact shows that KPMG calculated Financing Fees as the Funds calculated them. 2d Hazell Decl. ¶ 4.

Finally, Defendants argue that the Funds will not succeed on their fiduciary duty and fraud claims because they are "duplicative" of the Funds' breach of contract claim. Def. Mem. at 2, 15-16. But a registered investment adviser cannot escape liability for fraud and breaching fiduciary duties by claiming to have acted in accordance with a contract. Defendants do not dispute that they exercised fiduciary authority over Fund assets, that they put their own interests ahead of the Funds' because they were concerned about being terminated, and that they engaged in misleading accounting practices—all of which give rise to the separate tort claims.

2. <u>Any Delay Was Caused By Defendants' Concealment.</u>

Defendants' opposition also suggests that a preliminary injunction is unwarranted because of supposed "delays in making this motion." Def. Mem. at 1, 13. To the extent that there was any delay, it was due to Defendants' own concealment of relevant facts. Defendants do not dispute that they failed to disclose their misleading accounting practices to the Funds' boards or that the boards only discovered those machinations on January 16, 2013. Hazell Decl. ¶ 13. That discovery led the Funds to conclude that Defendants' "Financing Fees" explanation had been concocted to cover up accounting fraud and the misappropriation of Fund assets, and the Funds filed their preliminary injunction motion the very next week. 2d Hazell Decl. ¶ 7.

3

3. <u>The Funds Face Irreparable Injury And Are Entitled To A Constructive Trust.</u>

Defendants argue that injunctive relief is improper because "plaintiffs seek only money damages, and have made no showing that they could not be made whole through the payment of money." Def. Mem. at 12. This ignores the Funds' request for a constructive trust to be imposed while the rights of the parties are adjudicated. Indeed, Defendants' insistence that only "money damages" are at issue shows a shocking disregard for their fiduciary duty to protect the Funds' assets in dispute, and to put the Funds' interests ahead of their own. That Defendants used their fiduciary control to misappropriate the Funds' assets improperly does not mean that a constructive trust is unavailable to preserve those assets from any further waste or other misuse.

A constructive trust is especially required here, where Defendants do not deny that they engaged in accounting improprieties, that Mr. Garrison told board members that the HDG Entities have had difficulty meeting expenses, and that Mr. Garrison admitted that he grabbed the cash because of his concern that he would be terminated. Hazell Decl. ¶¶ 11, 14; *see Marselis-Warner v. Rabens*, 51 F. Supp. 2d 508, 531 (D.N.J. 1999) ("Defendants who have engaged in past financial manipulations create a substantial and real risk . . . that funds will be unavailable to satisfy a reasonably foreseeable judgment") (citations omitted). Indeed, Defendants' response that they continue to be a "going concern" (Garrison Decl. ¶ 33) does not address whether they took the Funds' assets to avoid bankruptcy, and provides no assurance that the misappropriated money will not be further dissipated. The Funds have serious doubts that the HDG Entities continue to be a going concern as they have recently learned that the HDG Entities are losing their London office due to non-payment of rent, have been or will be terminated as manager on other projects, and are not even paying one of their lawyers. 2d Hazell Decl. ¶ 11.

4

Finally, Defendants do not dispute the evidence that a constructive trust is necessary because a later award of money damages would not compensate the Funds for the disruption in Fund operations and the attendant impairment of goodwill that is already resulting from Defendants' misappropriation and failure to assure the Funds that the money has not been and will not be dissipated. Hazell Decl. ¶¶ 16-18. Absent the injunctive relief that the Funds seek here, "there is a substantial chance that upon final resolution of the action" the Funds "cannot be returned to the position[s] [they] previously occupied." *FXDirectDealer, LLC v. Abadi*, No. 12 Civ. 1796, 2012 WL 1155139, at *4 (S.D.N.Y. Apr. 5, 2012).

4. The Balance Of The Equities Strongly Favors The Funds.

Defendants argue that because they have manufactured a "substantial severance payment" in an even greater amount that is allegedly due to them, the equities "do not decidedly tilt toward either party." Def. Mem. at 16-17. But their efforts to grab even more cash from the Funds than they have already misappropriated does not create equities in their favor. To the contrary, it underscores that their self-dealing and reckless disregard of their fiduciary responsibilities to preserve the Funds' assets knows no boundaries, and shows the inequity of permitting them to hold the millions of dollars that they have taken so far. In any event, any severance payments will be irrelevant if the Funds succeed on their claims to recover *all* the fees paid or owing to Defendants based on Defendants' breaches of fiduciary duty.

## CONCLUSION

Under these special circumstances, a constructive trust is required to preserve the Funds' assets while their claims are litigated, and a preliminary injunction should be entered requiring that the $5,818,682 be placed in escrow with an independent bank.

| | |
|---|---|
| Dated: New York, New York<br>January 30, 2013 | WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br><br>By: _/s/ Charles C. Platt_<br>Charles C. Platt<br>Jeremy S. Winer<br><br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Tel: (212) 230-8800<br>Fax: (212) 230-8888<br><br>*Attorneys for Plaintiffs GPIF-I Equity Co.,*<br>*Ltd. and GPIF-I Finance Co., Ltd.* |