UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD.,     :

   Plaintiffs, :

   -against-   :

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON     :

   Defendants. :
------------------------------------------------------------------X

Case No. 13-00547 (CM)


# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
# MOTION FOR SUMMARY JUDGMENT ON COUNT II, BREACH OF CONTRACT

                    WILMER CUTLER PICKERING
                     HALE AND DORR LLP
                    Charles C. Platt
                    Jeremy S. Winer
                    7 World Trade Center
                    250 Greenwich Street
                    New York, New York 10007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF UNDISPUTED FACTS ......................................................................................1

ARGUMENT.......................................................................................................................................4

I.      Defendants Breached the Agreements by Taking $5,818,682 in Alleged Financing Fees to Which They Were Not Entitled. ..............................................................................4

II.     Even If Defendants' Proffered Interpretation of the Agreements Were Credited, the Statute of Limitations Bars Defendants from Taking $3,904,659 of the Alleged Financing Fee Payments at Issue. .........................................................................7

III.    The Funds Are Entitled to Prejudgment Interest. ...............................................................8

IV.    Plaintiffs Reserve Their Rights with Respect to Their Remaining Claims. ......................8

CONCLUSION....................................................................................................................................9

## TABLE OF AUTHORITIES

### CASES

*Fulton Cogeneration Ass'n v. Niagara Mohawk Power Corp.*,
    84 F.3d 91 (2d Cir. 1996) ...................................................................................................6

*Moras v. Marco Polo Network, Inc.*,
    No. 11 Civ. 2081, 2012 WL 6700231 (S.D.N.Y. Dec. 20, 2012) ............................................8

*Royal Indemnity Co. v. Deep Sea Int'l*,
    619 F. Supp. 2d 14 (S.D.N.Y. 2007) ......................................................................................6

*Schanfield v. Sojitz Corp. of America*,
    663 F. Supp. 2d 305 (S.D.N.Y. 2009) ....................................................................................4

*Taste of Society, L.C. v. Ciffon*,
    No. 05 Civ. 4028, 2006 WL 760270 (S.D.N.Y. Mar. 23, 2006) .............................................6

### RULES

N.Y. C.P.L.R. § 213(2) ...................................................................................................................7

N.Y. C.P.L.R. § 5001(b) .................................................................................................................8

N.Y. C.P.L.R. § 5004 ......................................................................................................................8

Plaintiffs GPIF-I Equity Co., Ltd. ("Equity Co.") and GPIF Finance Co., Ltd. ("Finance Co." and, together with Equity Co., the "Funds") respectfully submit this motion for partial summary judgment against HDG Mansur Investment Services, Inc. and HDGM Advisory Services, LLC (the "HDG Entities" or "Defendants") on the Funds' second claim for relief in the Complaint.

## PRELIMINARY STATEMENT

The undisputed facts show that Defendants took $5,818,682 of the Funds' assets. Defendants have tried to justify that taking, both to the Funds and to this Court, based on an obvious misinterpretation of Section 5.5 and Schedule X (Definitions) of their Fund Management Agreements. The plain language of those relevant provisions shows that Defendants had no contractual right to take this money. As a result, Defendants have breached their Fund Management Agreements with the Funds, and partial summary judgment should be granted for the Funds on their second claim for relief.

## STATEMENT OF UNDISPUTED FACTS

The Plaintiff Funds are real estate investment funds that invest in a diversified portfolio of real estate properties. Pls. St. ¶ 1.[1] The Defendant HDG Entities acted as the Fund Manager to the Funds pursuant to Fund Management Agreements with the Funds (the "Agreements"). *Id.* ¶ 5 (Hazell Decl. Exs A, B).[2]

---

[1] "Pls. St." refers to Plaintiffs' Rule 56.1 Statement of Material Facts, submitted herewith. "Garrison Decl." refers to the Declaration of Defendant Harold D. Garrison in opposition to Plaintiffs' motion for a preliminary injunction. "Defs. Mem." refers to Defendants' memorandum in opposition to Plaintiffs' motion for a preliminary injunction.

[2] "Hazell Decl." refers to the Declaration of Deborah Hazell, submitted herewith. The Equity and Finance Agreements are identical in all relevant respects, so citations herein will be only to the Equity Agreement attached at Exhibit A to the Hazell Declaration.

1

The Agreements provided that the HDG Entities would provide various services to the Funds, including services in connection with the financing and acquisition of the Funds' Property Investments.  Pls. St. ¶ 6; *see also* Garrison Decl. ¶¶ 8-10.  In return for their services, the HDG Entities were entitled to receive certain fees from the Funds.  Pls. St. ¶ 9; *see also* Garrison Decl. ¶¶ 11-15.

The fees that the HDG Entities were entitled to receive included Investment Financing Fees ("<u>Financing Fees</u>").  Pls' St. ¶¶ 9-10 (Hazell Decl. Ex. C at pg. 8).  The Financing Fees were defined in Schedule X of the Agreements ("Definitions; Rules of Usage and Interpretation"), which provides:

> [W]ith respect to each Project Investment, a financing fee payable to the Fund Manager … in connection with the acquisition by the Fund, directly or indirectly (including by or through an Investment Entity), of a Property Investment, which *financing fee shall be an amount equal to 1% of the aggregate amount of financing with respect to such Property Investment*….

*Id.* (emphasis added).

Section 5.5 of the Agreements (as contained in the First Amendment to the Agreements) sets forth the circumstances in which Financing Fees were payable.  Section 5.5 provides:

> [T]he Investment Financing Fees *payable in connection with the financing* of any investment in, or acquisition, construction or improvement of, the Property Investments (including equity, debt, debt-equivalent and Islamic financing elements) are *payable in full on and prior to the time of the completion of the relevant financing*…. The Fund Manager shall be entitled to receive the Financing Fees *at the time of financing* of a Property Investment . . . .

*Id.* ¶ 11 (Hazell Decl. Ex. A, First Amen. at pg. 3 (emphasis added)).

Between 2002 and 2008, the Funds entered into sixty-eight transactions, called "Property Investments," that generated Financing Fees for the HDG Defendants.  Pls' St. ¶ 14 (Hazell Decl. Ex. E).  Those Financing Fees were based on the debt financing that was provided in connection with those transactions.  *Id.* ¶ 15.  In no instance was there any equity financing with

respect to any of the transactions by the Funds.  *Id.* ¶ 18.  The HDG Entities were paid those Financing Fees at or around the time of the completion of the debt financing that was provided in connection with those transactions.  *Id.* ¶ 16.  Until 2012, the HDG Entities never stated that they were entitled to any additional Financing Fees.  *Id.* ¶ 17.

According to Defendants, in late 2011 or early 2012, the HDG Entities decided they were owed $5,818,682 in additional Financing Fees under Section 5.5 of the Agreements.  Garrison Decl. ¶ 18; Def. Mem. at 6-7.  In particular, the HDG Entities claim that they decided they should have been paid Financing Fees on the "equity" portion of the sixty-eight transactions that occurred between 2002 and 2008, and not just on the "debt" portion of the financing in connection with the transactions.  Garrison Decl. ¶ 18; Def. Mem. at 6-7.  Beginning in January 2012, the HDG Entities began taking money from the Funds, and by the end of the year they had paid themselves a total of $5,818,682 of the Funds' assets that they claimed were additional Financing Fees due on each of the sixty-eight transactions.  Pls. St. ¶¶ 22-24 (Hazell Decl. Ex. F); *see also* Garrison Decl. ¶ 23; Def. Mem. at 7.

The HDG Entities paid themselves this money on nearly 30 different occasions, in different amounts, and from the accounts of different investment property companies.  Pls. St. ¶¶ 23-24 (Hazell Decl. Ex. F); *see also* Garrison Decl. ¶ 23; Def. Mem. at 7.  Those different amounts, dates, and accounts are summarized in a document that the HDG Entities provided to the Funds, and which can be found at Exhibit F to the Hazell Declaration.

A document summarizing the sixty-eight transactions that occurred from 2002 to 2008, and identifying the total amounts invested and the additional Financing Fees allegedly due, is attached as Exhibit E to the Hazell Declaration.  Forty six of those transactions closed more than six years prior to the date in January 2012 at which the HDG Entities began taking the

$5,818,682.  Pls. St. ¶ 24 (Hazell Decl. ¶¶ 11-12 & Exs. E, F.)  The total amount of the additional Financing Fees for these forty-six transactions is $3,858,132.  Pls. St. ¶ 24.

The Funds have demanded that the HDG Entities return the $5,818,682 taken from the Funds' assets.  *Id* ¶ 25.  In response to that demand, the HDG Entities refused to return any of the money.  *Id.* ¶ 26.  The HDG Entities' refusal to return the money has caused damages to the Funds.  *Id.* ¶ 27.

At a hearing before this Court on January 31, 2013, Defendants explained that they took the money because Financing Fees were supposed to have been "based upon the full value of the propert[ies]" that had been financed, but instead had been paid only on the financing element of those property investments.  Transcript of Jan. 31, 2013 Hearing ("Hr'g Tr.") at 13:3-10 (Hazell Decl. Ex. H).  The Court remarked that, based on its review, the Defendants' "interpretation of the contract is absurd," *id.* at 7:25-8:1, and the Agreement "is extremely clear on its face," *id.* at 8:12-13.

## ARGUMENT

**I.    Defendants Breached the Agreements by Taking $5,818,682 in Alleged Financing Fees to Which They Were Not Entitled.**

To establish a breach of contract claim under New York law, a plaintiff must show (i) the existence of a contract; (ii) breach of the contract by the defendant; and (iii) damages suffered as a result of the breach.  *See, e.g.*, *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 345 (S.D.N.Y. 2009).

The undisputed facts show that the Agreements were valid and existing contracts between the HDG Entities and the Funds from 2002 to December 27, 2012.  Pls. St. ¶ 5.  The undisputed facts also show that the Funds have suffered damages as a result of the HDG Entities' taking of $5,818,682 of the Funds' assets.  *Id.* ¶ 27.

Defendants argue, however, that they did not breach the Agreements by taking the money. In statements to the Funds and to this Court, Defendants have argued that they were entitled to the $5,818,662 pursuant to the plain language of Section 5.5 of the Agreements and accompanying Schedule X, as additional Financing Fees on the sixty-eight transactions that had occurred from 2002 to 2008. Garrison Decl. ¶ 18; Def. Mem. at 6-7. In particular, the HDG Entities have argued that they were entitled to Financing Fees on the "equity" portion of the transactions, and not just the "debt" portion" that was financed. Garrison Decl. ¶ 18; Def. Mem. at 6-7.

Defendants' justification for taking the money misinterprets the Agreements' provision relating to Financing Fees, which "is extremely clear on its face." Hr'g Tr. at 8:12-13; *see also id.* at 13:11-13 ("I can't see any other way to read that clause"). Schedule X of the Agreements, which defines the "Financing Fees," states expressly that the "financing fee shall be an amount equal to 1% of the aggregate amount of financing with respect to such Property Investment . . . ." Pls. St. ¶ 10 (Hazell Decl. Ex. C at pg. 8). Similarly, Section 5.5 states expressly that the Financing Fee is "payable in connection with the financing" and is "payable in full on or prior to the time of the completion of the relevant financing." Pls. St. ¶¶ 11-12 (Hazell Decl. Ex. A, First Amen. at pg. 3). Thus, the plain language of the Agreements provides that Financing Fees are payable only with respect to the "financing" of the transactions, not the equity value of those investments. Since there was no equity financing, only debt financing, and Defendants have already received all Financing Fees payable on the debt financing, *id.* ¶¶ 15-18, Defendants have no justification for taking additional Financing Fees.

As the Court noted at the January 31 hearing, "[t]here really is no way to read the contractual clause any differently." Hr'g Tr. at 16:22-24. Where, as here, "the language of the

5

contract is unambiguous, and reasonable persons could not differ as to its meaning," a breach-of-contract claim is suitable for resolution on summary judgment. *Taste of Society, L.C. v. Ciffone*, No. 05 Civ. 4028, 2006 WL 760270, at *2 (S.D.N.Y. Mar. 23, 2006) (citing *Fulton Cogeneration Ass'n v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996)).

Nevertheless, Defendants have argued (Hr'g Tr. at 11:25-12:1) that the Financing Fees are "meant to be paid on the same amount that the acquisition fee is" paid, which is "1% of the aggregate *gross acquisition price*." Pls. St. ¶ 13 (Hazell Decl. Ex. C at pg. 8 (emphasis added)). In other words, Defendants suggest that Financing Fees were supposed to have been "based upon the full value of the propert[ies]" that had been financed, but instead had been paid only on the financing element of those property investments. Hr'g Tr. at 13:9-10. As the Court remarked, Defendants' "interpretation of the contract is absurd." *Id.* at 7:25-8:1. The Agreement says that Financing Fees are "1% of the aggregate *amount of financing*," which makes sense because the fees are paid for services provided in connection with the financing. Moreover, Defendants have already been paid a fee on the total acquisition price of the Property Investments. Pls. St. ¶ 14. If the parties had intended for Financing Fees to be paid on the *aggregate gross acquisition price* in a way that was duplicative of the Investment Acquisition Fees, they would have used those very words, which appear on the same page in Section X of the Agreements (Hazell Decl. Ex. C at pg. 8). *See Royal Indem. Co. v. Deep Sea Int'l*, 619 F. Supp. 2d 14, 21 (S.D.N.Y. 2007) (concluding that the "broader wording" of one contract provision "underscores the narrower reach" of the provision at issue). Defendants are not *misreading* the Agreement, but rather are trying to *rewrite* it.

Defendants have also argued that the word "equity" that appears parenthetically within Section 5.5 of the Agreements means that Financing Fees are to be paid on the equity portion of

the Funds' sixty-eight transactions. *See, e.g.*, Garrison Decl. ¶ 18 (stating that pursuant to Section 5.5, "the fees should have been based not only on debt financing, but also on 'equity, debt, debt-equivalent, and Islamic financing elements'").[3] But that language identifies the types of *financing* that could result in the payment of Financing Fees. The word "equity" in this provision—as well as the words "debt," "debt-equivalent," and "Islamic"—obviously "modify the term 'financing elements.'" Hr'g Tr. at 16:10-17. It does not mean that Financing Fees are paid on the equity portion of transactions, *i.e.*, the cash used to make property investments. There was no equity financing for any of the transactions for which Defendants were paid fees (Pls. St. ¶ 18), and thus Defendants "ha[d] no right to be paid for equity financing." Hr'g Tr. at 16:17-20.

## II. Even If Defendants' Proffered Interpretation of the Agreements Were Credited, the Statute of Limitations Bars Defendants from Taking $3,904,659 of the Alleged Financing Fee Payments at Issue.

Even if Defendants' "absurd" interpretation of the Financing Fees provision were to be credited, they would not be entitled to obtain $5,818,862 from the Funds. That is because under New York law, a party to a contract cannot sue a counterparty for breach if she waits more than six years from the breach to do so. N.Y. C.P.L.R. § 213(2).

Here, there were sixty-eight transactions that generated Financing Fees. Pls. St. ¶ 14 (Hazell Decl. Ex. E). Forty six of those transactions closed more than six years before Defendants first started taking money from the Funds, in January 2012, for what they claim were additional Financing Fees. *Id.* ¶ 24 (Hazell Decl. Exs. E, F). The additional Financing Fees for those forty-six transactions totaled $3,904,659. *Id.* Since any claims by Defendants for fees relating to those transactions are more than six years old, and are thereby time-barred,

---

[3] *But see* Garrison Decl. ¶ 13 (acknowledging that "the Financing Fee was 1% *of all financing* used to acquire Property Investments" (emphasis added)).

7

Defendants were prevented as a matter of law from taking that $3,904,659, and should be liable to the Funds for that amount at the very least.

### III. The Funds Are Entitled to Prejudgment Interest.

Under New York law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *Moras v. Marco Polo Network, Inc.*, No. 11 Civ. 2081, 2012 WL 6700231, at *14 (S.D.N.Y. Dec. 20, 2012) (citation omitted). The statutory rate for prejudgment interest on a claim for breach of contract is nine percent per year. *See id.* (citing N.Y. C.P.L.R. § 5004). The interest is computed "from the earliest ascertainable date the cause of action existed." *Id.* (citing N.Y. C.P.L.R. § 5001(b)).

Here, Defendants breached the Agreements each time throughout 2012 that they took from the Funds money to which they were not entitled. Attached as Exhibit F to the Hazell Declaration is a chart that Defendants provided to the Funds, showing when they took the $5,818,682 in alleged Financing Fees (as well as an additional approximately $639,000 in disposition fees that are not at issue here). The chart does not indicate which of the transfers was with respect to disposition fees, but if nine percent interest were calculated independently for each of the first 27 withdrawals (which, together total just under $5.8 million), the total prejudgment interest as of February 5, 2013 would amount to $363,593.97.

### IV. Plaintiffs Reserve Their Rights with Respect to Their Remaining Claims.

The Funds do not move for summary judgment on their breach of fiduciary duty and fraud claims against the HDG Entities and Harold Garrison, which are based on facts relating to Defendants' misleading accounting practices and misrepresentations regarding the Funds' assets. The Funds reserve, and do not intend to waive, all rights with respect to their other claims for relief, and the remedies associated with those claims, including their causes of action against defendant Harold D. Garrison and their cause of action under the Investment Advisers Act. The

8

Funds also reserve all rights with respect to any counterclaims that the HDG Entities or Mr. Garrison might assert, including the right to raise arguments or defenses relating to the fraud and breach of fiduciary duty by the HDG Entities and the Funds.

## CONCLUSION

For the foregoing reasons, the Funds respectfully request that summary judgment be granted on Count II, for breach of contract, and, there being no just reason for delay, that pursuant to Rule 54(b) of the Federal Rules of Civil Procedure final judgment be entered against the HDG Entities in the amount of $5,818,682 in out-of-pocket losses resulting from the HDG Entities' breach, plus prejudgment interest in the amount of $363,593.97.

Dated: New York, New York
February 5, 2013

WILMER CUTLER PICKERING
 HALE AND DORR LLP

By:  _/s/ Charles C. Platt_____
     Charles C. Platt
     Jeremy S. Winer
   7 World Trade Center
   250 Greenwich Street
   New York, New York 10007
   Tel: (212) 230-8800
   Fax: (212) 230-8888

*Attorneys for Plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd.*