UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD.,                            Case No. 13-00547 (CM)
                                        :
                                        :
                        Plaintiffs, :
                                        :
        -against-                       :
                                        :
HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON                      :
                                        :
                        Defendants. :
                                        :
------------------------------------------------------------------X


**GPIF-I EQUITY CO., LTD. AND GPIF-I FINANCE CO., LTD.'S
RULE 56.1 STATEMENT IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON COUNT II**


                    WILMER CUTLER PICKERING
                     HALE AND DORR LLP
                    Charles C. Platt
                    Jeremy S. Winer
                    7 World Trade Center
                    250 Greenwich Street
                    New York, New York 10007

Pursuant to Rule 56.1 of this Court's Local and Civil Rules, Plaintiffs GPIF-I Equity Co., Ltd. ("Equity Co.") and GPIF Finance Co., Ltd. ("Finance Co." and, together with Equity Co., the "Funds") respectfully submit the following statement of material facts as to which there is no genuine issue to be tried.

## STATEMENT OF MATERIAL FACTS

1.      Plaintiffs Equity Co. and Finance Co. are real estate investment funds that invest in a diversified portfolio of real estate properties.

2.      Defendant HDG Mansur Investment Services, Inc. ("HDG Investment") is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in Indiana.

3.      Defendant HDGM Advisory Services, LLC  ("HDG Advisory and, together with HDG Investment, the "HDG Entities") is a limited liability company organized and existing under the laws of the State of Indiana with its principal place of business in Indiana.  HDG Advisory is registered with the U.S. Securities and Exchange Commission as an investment adviser.

4.      Harold D. Garrison is the Chairman and CEO of the HDG Entities.

**The HDG Entities Acted as Fund Manager to the Funds.**

5.      Around September 2002, HDG Investment entered into a Fund Management Agreement with Equity Co.  *See* Declaration of Deborah Hazell ("Hazell Decl.") ¶ 2 & Exs. A, C.  Around September 2002, HDG Investment entered into a substantially identical Fund Management Agreements with Finance Co.  Hazell Decl. ¶ 2 & Exs. B, C.  The Fund Management Agreements are referred to herein collectively as the "Agreements."  The

Agreements are identical in relevant respects, so citations herein will be only to the Equity

Agreement found at Exhibit A to the Hazell Declaration and the definitions thereto (Exhibit C).

6.      The Agreements provided that HDG Investment would act as Fund Manager to

the Funds, and HDG Investment acted in that capacity until on or around March 30, 2012.

Hazell Decl. ¶ 3.

7.      On or around March 30, 2012, HDG Investment assigned all of its rights, duties

and obligations under the Agreements to HDGM Advisor.  On or after that date, HDGM

Advisory acted as Fund Manager to the Funds.  Hazell Decl. ¶ 3 & Ex. D.

**The HDG Entities Were Paid (Among Other Fees) Acquisition Fees and Financing Fees.**

8.      Among the services that the HDG Entities provided to the Funds pursuant to the

Agreements were services in connection with the acquisition and financing of the Funds'

Property Investments, referred to here as the "transactions."  *See, e.g.*, Hazell Decl. Ex. A at §

4.2 ("Acquisition Services"), § 4.5 ("Financing or Refinancing"); *see also* Garrison Decl. ¶¶ 8-

10.

9.      In return for performing their services on these transactions, certain fees were

payable from the Funds to the HDG Entities, which fees included, among others, Investment

Financing Fees ("Financing Fees") and  Investment Acquisition Fees ("Acquisition Fees").

Hazell Decl. Ex. C at pg. 8; *see also* Garrison Decl. ¶¶ 12-13.

10.      The Agreements define Financing Fees to mean, "with respect to each Project

Investment, a financing fee payable to the Fund Manager (for its own account and that of the

Advisor, as appropriate) in connection with the acquisition by the Fund, directly or indirectly

(including by or through an Investment Entity), of a Property Investment, which financing fee

shall be an amount equal to 1% of the aggregate amount of financing with respect to such

Property Investment (unless otherwise approved by the Investment Committee), and, with respect to all Property Investments, the sum of all Investment Acquisition Fees for all Property Investments." Hazell Decl. Ex. C at pg. 8.

11.     Section 5.5 of the Agreements (as contained in the First Amendment to the Agreements) sets forth the circumstances in which Financing Fees are payable. Section 5.5 provides, in part, that "the Investment Financing Fees payable in connection with the financing of any investment in, or acquisition, construction or improvement of, the Property Investments (including equity, debt, debt-equivalent and Islamic financing elements) are payable in full on and prior to the time of the completion of the relevant financing." Hazell Decl. Ex. A at First Amen. pg. 3.

12.     Section 5.5 of the Agreements also provides that "the Fund Manager shall be entitled to receive the Financing Fees at the time of financing of a Property Investment . . . . Hazell Decl. Ex. A at First Amen. pg. 3.

13.     The Agreements define Acquisition Fees to mean, "with respect to each Project Investment, an acquisition fee payable to the Fund Manager . . . in connection with the acquisition by the Fund . . . of a Property Investment, which acquisition fee shall be an amount equal to 1% of the aggregate gross acquisition price of such Property Investment . . . ." Hazell Decl. Ex. C at pg. 8.

14.     The HDG Entities were paid Financing Fees and Acquisition Fees on sixty-eight Fund transactions that occurred between 2002 and 2008.  Hazell Decl. ¶ 5 & Ex. E; Garrison Decl. ¶ 12.

15.     The HDG Entities were paid the Financing Fees based on the debt financing that was provided in connection with those transactions.  Hazell Decl. ¶ 6.

4

16.     The HDG Entities were paid the Financing Fees at or around the time of the completion of the debt financing that was provided in connection with those transactions.  Hazell Decl. ¶ 6.

17.     The HDG Entities did not state at the time that they received the Financing Fees that they were entitled to any additional Financing Fees, but rather raised that argument for the first time in 2012.  Hazell Decl. ¶ 7.

18.     There was no equity financing with respect to any of the transactions by the Funds. Hazell Decl. ¶ 6.

**The HDG Entities Took $5,818,682 from the Funds as Purported Payment for Underpaid Financing Fees.**

19.     According to Defendants, in late 2011 or early 2012, the HDG Entities decided they were owed "additional financing fees" under Section 5.5 of the Agreements.  Garrison Decl. ¶ 18; Def. Mem. at 6-7.

20.     In particular, according to Defendants, the HDG Entities decided that they had only been paid on the "debt" portion of the financing in connection with the transactions, and not the "equity" portion." Garrison Decl. ¶ 18; Def. Mem. at 6-7.

21.     According to Defendants, the HDG Entities decided that they were entitled to receive $5,818,682 in additional Financing Fees, under Section 5.5 of the Agreements, with respect to each of the sixty-eight transactions.  Hazell Decl. ¶ 8; Garrison Decl. ¶ 22; Def. Mem. at 7, 14.

22.     In 2012, the HDG Entities paid themselves a total of $5,818,682 of the Funds' assets.  Hazell Decl. ¶¶ 8-9; Garrison Decl. ¶ 23; Def. Mem. at 7.

23.     The HDG Entities paid themselves this money on nearly 30 different occasions throughout 2012, in different amounts, from different accounts. Hazell Decl. ¶¶ 9-10; Garrison Decl. ¶ 23; Def. Mem. at 7. Those different amounts, dates, and accounts are summarized in Exhibit F to the Hazell Declaration.

24.     According to Exhibit F, which was provided to the Funds by the HDG Entities, the HDG Entities began paying themselves this money beginning in January 2012 and continuing through November 2012. Hazell Decl. ¶¶ 9-10 & Ex. F. Forty six of the transactions for which the HDG Entities were paid Financing Fees (and for which the HDG Entities maintain that they are owed additional Financing Fees) occurred more than six years before January 2012. Hazell Decl. ¶ 10 & Exs. E, F. Based upon the HDG Entities' interpretation of the Agreements' Financing Fees provision, the additional Financing Fees owed on these forty-six transactions would amount to $3,904,659 (a figure derived by adding the first forty-six amounts that are listed in the last column on Exhibit E).

25.     The Funds demanded that the HDG Entities return the $5,818,682 that had been taken. Hazell Decl. ¶ 11.

26.     In response to that demand, the HDG Entities refused to return the $5,818,682 that had been taken. Hazell Decl. ¶ 11.

27.     The HDG Entities' refusal to return the money to the Funds has caused the Funds damages. The $5,818,682 represents approximately one third of the Funds' available cash and approximately 6.6% of the Funds' current net asset value. Hazell Decl. ¶ 12.

28.     If prejudgment interest were to be calculated (i) at a rate of 9% per annum; (ii) as of the date of each of the first twenty-seven withdrawals of Fund assets identified on Exhibit F (which amount to a little under $5.8 million), with respect to the amount of each such

6

withdrawal; and (iii) accruing up until February 5, 2013, the total amount of prejudgment interest would be $363,593.97.  Hazell Decl. Ex. G.

Dated: New York, New York
       February 5, 2013

                                   WILMER CUTLER PICKERING
                                   HALE AND DORR LLP

By:   /s/ Charles C. Platt_____
       Charles C. Platt
       Jeremy S. Winer
   7 World Trade Center
   250 Greenwich Street
   New York, New York 10007
   Tel: (212) 230-8800
   Fax: (212) 230-8888

*Attorneys for Plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd.*