UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GPIF-I EQUITY CO., LTD. and                               :
GPIF-I FINANCE CO., LTD.,                                 :
                                                          :
        Plaintiffs,                                   :
                                                          :
v.                                                        :  **Case No. 13 Civ 547 (CM)**
                                                          :
HDG MANSUR INVESTMENT SERVICES, INC.,                     :
HDGM ADVISORY SERVICES, LLC, and                          :
HAROLD D. GARRISON                                        :
                                                          :
        Defendants.                                    :
-----------------------------------------------------------------x
HDG MANSUR INVESTMENT SERVICES, INC.,                     :
and HDGM ADVISORY SERVICES, LLC,                          :
                                                          :
        Third-Party Plaintiffs,                       :
                                                          :
v.                                                        :
                                                          :
HSBC SECURITIES (USA) INC.                                :
                                                          :
        Third-Party Defendants.                       :
                                                          :
-----------------------------------------------------------------x

## THIRD-PARTY PLAINTIFFS' OPPOSITION TO THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

                              MINTZ LEVIN COHN FERRIS
                               GLOVSKY AND POPEO, P.C.
                              Francis J. Earley
                              John S. McMahon III
                              Chrysler Center
                              666 Third Avenue, 25th Floor
                              New York, New York 10017
                              FEarley@mintz.com
                              TMcMahon@mintz.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

    The HDG Entities' Role as Fund Manager ...................................................................2

    HSBC's Role as Placement Agent ................................................................................3

ARGUMENT ..........................................................................................................................5

I.     The HDG Entities Have Adequately Pled that HSBC Intentionally Procured a Breach of the FMA ..........................................................................5

II.    The HDG Entities Have Adequately Pled that HSBC's Acts Interfered with the FMA ...............................................................................................7

III.   The HDG Entities Have Adequately Pled that HSBC Was the But-For Cause of the Breach ..................................................................................8

CONCLUSION .......................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Astor Holdings, Inc. v. Roski*,
  01 Civ. 1905 (GEL), 2002 U.S. Dist. LEXIS 758 (S.D.N.Y. Jan. 17, 2002) .............................8

*Don King Prods., Inc. v. Douglas*,
  742 F. Supp. 741 (S.D.N.Y. 1990) ...........................................................................................7

*Johnson v. Nextel Comm'ns., Inc.*,
  660 F.3d 131 (2d Cir. 2011) .....................................................................................................5

*M'Baye v. N.J. Sports Prod. Inc.*,
  06 Civ. 3439 (DC), 2007 U.S. Dist. LEXIS 9101 (S.D.N.Y. Feb. 7, 2007) .............................6

*S&L Vitamins, Inc. v. Australian Gold, Inc.*,
  521 F. Supp. 2d 188 (E.D.N.Y. 2007) ..................................................................................6, 8

*Sawabeh Info. Servs. Co. v. Brody*,
  832 F. Supp. 2d 280 (S.D.N.Y. 2011).......................................................................................5

*Sharma v. Skaarup Ship Mgmt. Corp.*,
  916 F.2d 820 (2d Cir. 1990)......................................................................................................6

### STATUTES

Federal Rule of Civil Procedure 12(b)(6) .........................................................................................5

Third-party plaintiffs HDG Mansur Investment Services, Inc. ("HDG Investment") and HDGM Advisory Services, LLC ("HDG Advisory" and, together with HDG Investment, the "HDG Entities" or "Third-Party Plaintiffs") respectfully submit this Memorandum of Law in opposition to the motion to dismiss filed by third-party defendant HSBC Securities (USA), Inc. ("Third-Party Defendant" or "HSBC").

## PRELIMINARY STATEMENT

HSBC bases its motion to dismiss on the argument that the HDG Entities have failed to plead certain elements of tortious interference with contract. Besides making several misconstructions of the requirements for the claim of tortious interference with contract, HSBC otherwise relies almost entirely on misdirection and irrelevant facts which do not support their arguments. Despite HSBC's attempts to confuse the issue, the HDG Entities' claim for tortious interference with contract is sufficiently pled.

The HDG Entities and GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd. (together, "the Funds") have valid contracts—the Fund Management Agreements ("FMA")—contracts with which HSBC is familiar. HSBC's actions have tortiously interfered with these contracts by causing the Funds to breach. Specifically, HSBC unilaterally decided to stop marketing the Funds to investors to raise capital, a decision which made it impossible for the Funds to continue to fulfill their duties under the FMA—to invest in real estate properties and compensate the HDG Entities accordingly. As a result of the Funds' breach of the FMA, the HDG Entities have been damaged.

**STATEMENT OF FACTS**

### The HDG Entities' Role as Fund Manager

In the 1990's, HDG Investment began exploring the idea of a real estate investment vehicle which would appeal to religious Muslim investors by accommodating the requirements and restrictions of *Shari'ah*, Muslim religious law. (HDG Compl.[1] at ¶ 11.) The Funds are part of a complex structure designed to create an investment product that is compliant with *Shari'ah* law. (*Id*. at ¶¶ 15-16.)

In September 2002, HDG Investment entered into separate Fund Management Agreements with both of the Funds. (*Id*. at ¶ 12.) The two Fund Management Agreements are identical in all relevant parts. (*Id*.) In 2012, HDG Advisory, a corporate relative of HDG Investment, received an assignment of all of HDG Investments' rights and obligation pursuant to the FMA. (*Id*. at ¶ 13.)

The HDG Entities acted as Fund Manager for the Funds, a role which carried significant responsibilities. (*Id*. at ¶ 14.) The HDG Entities investigated properties as potential acquisitions, both for their prospects as investments and for their suitability under the Funds' special requirements of compliance with *Shari'ah*. (*Id*. at ¶ 16.) Once an attractive property was identified, the HDG Entities negotiated the purchase, presented the property to the Investment Committee for approval, obtained suitable, *Shari'ah*-compliant financing, hired property managers and leasing agents for each property as required, and provided fulsome quarterly reports to the Boards. (*Id*. at ¶¶ 16-19.)

In return, the HDG Entities received a series of fees based on the various transactions performed as Fund Manager. (*Id*. at ¶ 20.) Among other things, these fees included administrative fees and financing fees. (*Id*. at ¶¶ 26-39.)

---

[1] "HDG Compl." refers to the HDG Entities' Third-Party Complaint against HSBC, dated February 15, 2013.

**HSBC's Role as Placement Agent**

From the beginning, HSBC has been intimately involved with the Funds. HSBC has controlled a majority of the Boards of Directors ("Boards") of the Funds since their creation. In addition, investors in the Funds purchased units in HSBC Amanah Global Properties Income Fund, which is not a separate legal entity but a collective reference to the Funds. (Counterclaims[2] at ¶ 4.)

Most importantly here, HSBC served as Placement Agent for the Funds. (HDG Compl. at ¶ 40.) As Placement Agent, HSBC's primary duty and obligation under its Distribution Agreement with the Funds was to market the Funds to potential investors for the purpose of raising capital for the Funds. (*Id*. at ¶ 41.)

The Funds were "open-ended," meaning that investors could redeem their interests at any time. (*Id*. at ¶ 42.) Therefore, the Funds needed a steady stream of new investors to replace the investors who redeemed their investments, making HSBC's obligation to raise capital crucial to the proper functioning of the Funds and the avoidance of major economic distress. (*Id*.)

Beginning in 2006, HSBC failed to perform its obligations in marketing and raising capital for the Funds. (*Id*. at ¶ 43.) HSBC made this decision unilaterally and failed to notify or seek approval from the Boards of the Funds. (*Id*.) In fact, not only did HSBC fail to market the Funds to investors, HSBC actively turned away potential investors. (*Id*.)

Although there has not yet been discovery in this proceeding to determine the internal mechanics at HSBC, as far as the HDG Entities are aware, HSBC stopped raising capital for the Funds because senior HSBC executives resented that the Funds were performing better than

---

[2] "Counterclaims" refers to the Counterclaims of the HDG Entities and Harold D. Garrison against the Funds, dated February 15, 2013.

3

internal HSBC real estate funds, and demanded that HSBC raise capital instead for its own funds.  (*Id*. at ¶ 44.)

As it happened, HSBC's failure to raise capital for the Funds did cause the Funds major economic distress in several ways:

- The Funds had less capital to acquire new Property Investments (*Id*. at ¶ 51);
- Since the Funds lacked enough capital to meet their redemption requests, the Funds had to forgo new investments and even sell portfolio properties to scrounge up enough cash flow (*Id*. at ¶ 52);
- The lack of new investments and the sale of existing properties hurt the performance of the Funds overall, reducing the returns for investors as well as the HDG Entities' fees (*Id*.); and
- Most importantly, the Funds themselves were forced to breach the FMA by not making new investments in properties and paying the HDG Entities the fees that would have been owed had HSBC not induced the breach by failing to raise capital (*Id*. at ¶¶ 52-53.)

As a result of HSBC's failure to raise capital, the HDG Entities were unable to perform their duties in making new investments, delivering the highest possible returns to investors, and receiving payment for those investments.  (*Id*. at ¶ 52.)  The Funds, likewise, did not pay the resulting fees to the HDG Entities, pursuant to and intended by the FMA.  (*Id*. at ¶ 53.)

Although HSBC honored its obligations to raise capital for two quarters in 2008, HSBC once again stopped raising capital beginning in late 2008 and continuing until the present day. (*Id*. at ¶ 46.)  Even when the HDG Entities later offered to assist HSBC in marketing the Funds to potential investors, HSBC declined those offers on the grounds that they were unnecessary.

4

(*Id*. at ¶ 48.)   Despite the efforts of the HDG Entities to bring these issues to the attention of the Boards of the Funds, the HSBC representatives on the Boards have refused since 2006 to allow these issues to be placed on the agenda of the Boards' meetings.  (*Id*. at ¶ 49.)

## ARGUMENT

"In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all factual allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor."  *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 292-93 (S.D.N.Y. 2011) (internal citations omitted).  "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient to raise a right to relief above the speculative level."  *Johnson v. Nextel Comm'ns., Inc.,* 660 F.3d 131, 138 (2d Cir. 2011) (internal citations omitted).

HSBC alleges the HDG Entities have not sufficiently pled each element of tortious interference with contract, specifically that the defendant's acts interfered with the contract and that the defendant was the but-for cause of the breach.  This is not the case.  The HDG Entities have pled all elements of the claim clearly and sufficiently.

**I.     The HDG Entities Have Adequately Pled that HSBC Intentionally Procured a Breach of the FMA**

HSBC claims, on two grounds, that the HDG Entities have not sufficiently alleged that HSBC intended to interfere with the FMA.  First, HSBC seems to imply that, because the HDG Entities are not a party to the Distribution Agreement dictating HSBC's obligations to the Funds, the HDG Entities have not sufficiently pled tortious interference with the FMA.  (HSBC Mem.[3] at 4.)  This argument is absurd.  The HDG Entities have pled that HSBC's failure to raise capital

---

[3] "HSBC Mem." refers to the Memorandum of Law in Support of HSBC Securities (USA) Inc.'s Motion to Dismiss the Third-Party Complaint, dated March 11, 2013.

5

for the Funds tortiously interfered with the FMA between the HDG Entities and the Funds.  (*See supra* at 3-4; HDG Compl. at ¶¶ 51-52.)  The fact that HSBC's behavior also may have breached a separate agreement between itself and the Funds is irrelevant to a claim for tortious interference with the FMA.  It is immaterial to the Court's analysis whether a defendant in a tortious interference with contract claim has a separate agreement which may or may not have been breached. *See, e.g., S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188 (E.D.N.Y. 2007) (defendants did not have a separate contract with the underlying breaching party); *M'Baye v. N.J. Sports Prod. Inc.*, 06 Civ. 3439 (DC), 2007 U.S. Dist. LEXIS 9101 (S.D.N.Y. Feb. 7, 2007) (defendants did have a separate contract with the underlying breaching party).

Second, HSBC argues that the element of intentional interference is not adequately pled because HSBC had other reasons, namely internal HSBC politics, to induce a breach of the FMA.  (HSBC Mem. at 4.)  HSBC misreads the intentional procurement element of a tortious interference claim: as stated in *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990), the case cited by HSBC, the intentional procurement element merely requires that the act which causes the tortious interference be the but-for cause of the breach.  Since this also is the third element with which HSBC takes issue, one of HSBC's three main contentions with the Third-Party Complaint is simply redundant.  The HDG Entities have adequately pled this element in either form.  *See infra* at 8-9.

HSBC's argument that its own internal politics means there could not have been an intentional procurement of a breach, besides misreading the law, also makes no sense even under HSBC's misapplication.  (HSBC Mem. at 4.)  There is simply no requirement in a tortious interference with contract claim that the defendant have no other reason or ulterior motive for

6

inducing the breach other than causing the breach itself. And nowhere in its motion papers does HSBC cite to a single case that stands for this premise.

Further, although not contested here, another element of tortious interference with contract is that the defendant knew of the existence of the contract being breached. If a separate element required that the defendant intended specifically that the contract be breached, then the knowledge element would be rendered superfluous. "It is the 'actual, legal interest' and not 'the state of mind of the interfering tortfeasor' that determines the propriety of interference." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 777 (S.D.N.Y. 1990). Whether a defendant intentionally procured the breach "is not controlled by what [the defendant] *felt* about the validity of [the breached contracts], but by what it actively did with reference to them." *Id*. at 776 (emphasis in original). Thus, HSBC's argument that internal politics partly motivated its behavior here is irrelevant since its intentional actions caused the breach of the FMA about which HSBC had knowledge.

## II. The HDG Entities Have Adequately Pled that HSBC's Acts Interfered with the FMA

For the second element at issue, whether HSBC interfered with the FMA, HSBC again draws attention to facts which have little substantive relevance to whether the element was adequately pled. First, HSBC points out that HSBC's alleged misconduct, specifically its failure to market and raise capital for the Funds, began well before the Funds failed to pay the HDG Entities' termination fees, breaching the FMA in early 2013. (HSBC Mem. at 4.) HSBC argues that the HDG Entities' separate breach of contract claim against the Funds means that the only breach of the FMA took place in January 2013. (HSBC Mem. at 4.) But the HDG Entities' breach of contract claim against the Funds is irrelevant here.

Tortious interference with contract is an independent tort and does not require an underlying breach of contract claim to survive dismissal. *See Astor Holdings, Inc. v. Roski*, 01 Civ. 1905 (GEL), 2002 U.S. Dist. LEXIS 758, at *47 (S.D.N.Y. Jan. 17, 2002) (tortious interference "is a separate tort for which there is a separate cause of action brought against different persons…"); *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188 (E.D.N.Y. 2007) (plaintiff in tortious interference with contract action did not bring breach of contract suit against third-party). The fact that the HDG Entities have not previously made a breach of contract claim against the Funds relating to HSBC's wrongdoing does not render meaningless a tortious interference with contract claim against HSBC. Rather, asserting the proper claim against the proper defendant is the only correct procedure. HSBC has not cited any cases holding that a breach of a separate contract claim is required for a tortious interference with contract claim, as indeed they cannot, because a separate contract claim is not necessary for this claim.

### III. The HDG Entities Have Adequately Pled that HSBC Was the But-For Cause of the Breach

HSBC's argument that the HDG Entities have not sufficiently alleged HSBC as the proximate cause of the breach relies on the same misdirection. According to HSBC, since the only breach of the FMA occurred upon the 2013 termination of the HDG Entities, HSBC could not possibly have been the but-for cause. (HSBC Mem. at 4-5.) Although discovery will show the role HSBC had, if any, in the Funds' failure to pay the HDG Entities their termination fees in breach of the FMA, that is not the breach at issue in the tortious interference claim against HSBC.

Indeed, as pled in the Third-Party Complaint, HSBC was very much the proximate cause in the inability of the Funds to fulfill their obligations under the FMA

8

and pay their required fees to the Fund Manager. Because HSBC ceased raising capital, with intermittent exceptions, from 2006 until the present, the Funds could not develop new Fund properties, achieve the highest possible return for their investors, or compensate the HDG Entities as contractually obligated. Because of HSBC's intentional failures to fulfill its obligations, the Funds were unable to fulfill their duties of paying the HDG Entities for the investments made by an ongoing and functioning investment fund. As a result, HSBC was the but-for cause of the breach.

## CONCLUSION

For the foregoing reasons, the Court should deny the Third-Party Plaintiffs' motion to dismiss.

Dated: April 1, 2013  
       New York, New York

MINTZ LEVIN COHN FERRIS  
GLOVSKY AND POPEO, P.C.

By: _/s/ Francis J. Earley_  
Francis J. Earley  
John S. McMahon III  
Chrysler Center  
666 Third Avenue, 25th Floor  
New York, New York 10017  
(212) 935-3000  
FEarley@mintz.com  
TMcMahon@mintz.com

*Attorneys for Third-Party Plaintiffs HDG Mansur Investment Services, Inc., HDGM Advisory Services, Inc., and Harold D. Garrison*

14311490

9