Charles C. Platt
Jeremy Winer
Stephanie Shuler
Fiona J. Kaye
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD.,

        Plaintiffs-Counterclaim Defendants,

v.                                             Case No. 13 Civ 547 (CM)

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON

        Defendants-Counterclaim Plaintiffs.
-------------------------------------------------------------------x
HDG MANSUR INVESTMENT SERVICES, INC.,
and HDGM ADVISORY SERVICES, LLC,

        Third-Party Plaintiffs,

v.

HSBC SECURITIES (USA) INC.

        Third-Party Defendant.
-------------------------------------------------------------------x

**PLAINTIFFS GPIF-I EQUITY CO., LTD.'S AND
GPIF-I FINANCE CO., LTD.'S MEMORANDUM IN SUPPORT OF ENTRY OF A
<u>PARTIAL JUDGMENT UNDER FED. R. CIV. P. 54(b)</u>**

## TABLE OF CONTENTS

Background ..................................................................................................................1

Rule 54(b) Analysis .....................................................................................................1

   1.    Judicial Administrative Interests.........................................................................2

   2.    The Equities Involved.........................................................................................3

   3.    Alternative Relief................................................................................................6

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Curtiss-Wright Corp. v. General Electric Co.,*
   446 U.S. 1 (1980)..................................................................................................2, 3, 4, 6

*GPIF-I Equity Co., Ltd. et al. v. HDG Mansur Investment Services, Inc., et al.,*
   No. 13 Civ. 547 (CM), 2013 WL 3989041 (S.D.N.Y. August 1, 2013).........................1

*Lazard Freres & Co. v. Crown Sterling Management, Inc.,*
   901 F. Supp. 133 (S.D.N.Y. 1995) ..............................................................................2, 3, 4

*SEC v. Aragon Capital Management, LLC,*
   672 F. Supp.2d 421 (S.D.N.Y. 2009), *vacated in part on other grounds,*
   426 Fed. App'x 1 (2d Cir. 2011)....................................................................................4

*Pereira v. Cogan,*
   275 Bankr. Rptr. 472, 475 (S.D.N.Y. 2002) ..................................................................6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 54(b)..................................................................................1, 3, 6

Federal Rule of Civil Procedure 62(h)........................................................................................6

Plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd. (collectively, "plaintiffs" or the "Funds"), by and through their undersigned counsel, respectfully submit this memorandum of law pursuant to the Court's minute order dated August 14, 2013 directing plaintiffs to show why final judgment should be entered on their breach of contract claim now.

## Background

In its decision dated August 1, 2013, the Court granted plaintiffs' motion for partial summary judgment on their breach of contract claim. The Court ruled that defendants were "in material breach of the [Fund Management Agreements] by taking money to which they were not entitled...." That ruling was based on unambiguous language in the Agreements regarding the "additional financing fees" that defendants had taken. *GPIF-I Equity Co., Ltd. et al. v. HDG Mansur Investment Services, Inc., et al.*, No. 13 Civ. 547 (CM), 2013 WL 3989041 at *11 (S.D.N.Y. August 1, 2013). As a result, the Court determined that plaintiffs are entitled to damages in a large and liquidated amount – $5,818,682 plus pre-judgment and post-judgment interest – for the "additional financing fees" that were misappropriated.

Since the defendants have been adjudged to be liable as a matter of law for misappropriating millions of dollars of the Funds' money, the Funds have an obligation to protect their shareholders' right to recover that money, and to take every step possible to reduce any risk that the defendants may dissipate those assets before that recovery occurs. As a result, the Funds are respectfully requesting that the Court enter its partial summary judgment as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure to achieve that goal.

## Rule 54(b) Analysis

The Court has the discretion under Rule 54(b) to "direct entry of a final judgment as to one or more, but fewer than all, claims" so long as the Court "expressly determines that there is

no just reason for delay." Fed. R. Civ. P. 54(b); *see also Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980); *Lazard Freres & Co. v. Crown Sterling Management, Inc.*, 901 F. Supp. 133, 138 (S.D.N.Y. 1995). In determining whether there is no just reason for delay, and whether to enter final on plaintiffs' breach of contract claim, the Court "must take into account judicial administrative interests as well as the equities involved…." *Curtiss-Wright Corp.*, 446 U.S. at 8; *Lazard Freres & Co. Inc.*, 901 F. Supp. at 138.

  1. <u>Judicial Administrative Interests</u> – The judicial administrative interests to be considered include whether the breach of contract claim decided "is separable from the others remaining to be adjudicated," and whether the "nature of the [breach of contract] claim already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8; *Lazard Freres & Co. Inc.*, 901 F. Supp. At 138. Counterclaims that might result in a set-off are not inherently inseparable, even if they relate to the contract claim that was already determined. *Curtiss-Wright Corp.*, 446 U.S. at 8; *Lazard Freres & Co. Inc.*, 901 F. Supp. at 138.

  For example, in *Curtiss-Wright*, the plaintiff sued the defendant for the balance due on contracts already performed, and the defendant *counterclaimed* for amounts related to its "extraordinary efforts" in performing on the contracts. The Supreme Court held that the Second Circuit erroneously concluded that the possibility of a setoff required that the status quo be maintained, and thus ruled that judgment on the plaintiff's breach of contract claim should have been entered. *Id.* at 9. Similarly, in *Lazard Freres*, this Court (Cederbaum, J.) concluded that plaintiff Lazard was entitled to entry of partial summary judgment to recover fees under a contract where the contract language was unambiguous. The fact that defendants had raised counterclaims regarding Lazard's inadequate performance under the contract did not prevent a

54(b) judgment because they did not undermine any of the reasons for the partial summary judgment. *Id.* at 138.

The instant case is essentially identical. The Court has concluded that, based on unambiguous language of the Fund Management Agreements, the Funds are entitled to summary judgment on their distinct and undeniable breach of contract claim relating to defendants' misappropriation of $5.8 million in supposed "additional financing fees." As in *Lazard Freres*, nothing about the disposition of defendants' counterclaims for "termination fees" will change that result; the defendants' alleged right to termination fees are based on different provisions of the Fund Management Agreements. Accordingly, the defendants' counterclaims are clearly separable. Moreover, the nature of the Funds' breach of contract claim – which was based on the unambiguous terms of the Agreements regarding "additional financing fees" – was such that the Second Circuit will not have to decide the same issues more than once if there are subsequent appeals with respect to the separate "termination fees" provisions that are the subject of defendants' counterclaims.

  2. <u>The Equities Involved</u> – The Court should also consider the equities involved in determining whether to enter the partial summary judgment under Rule 54(b). Here, the equities strongly favor the plaintiffs. They are seeking entry of a judgment now to ensure, to the extent possible, that the Funds' shareholders are protected from defendants' misappropriation of their money. The amount they are owed is "liquidated and large," and depriving them of recovery would cause them significant prejudice. *Curtiss-Wright Corp.*, 446 U.S. at 11; *Lazard Freres & Co. Inc.*, 901 F. Supp. at 139. The fact that defendants may have counterclaims that act as "set offs" is *not* a sufficient reason to postpone that security for the Funds' shareholders. *Curtiss-Wright Corp.*, 446 U.S. at 12; *Lazard Freres & Co. Inc.*, 901 F. Supp. at 138-39.

The equities further favor the entry of partial summary judgment now because there is considerable evidence that defendants HDG Mansur Investment Services, Inc. and HDG Advisory Services, Inc. are in severe financial distress, and may not be able to satisfy any judgment in this case if it is further delayed. *Curtiss-Wright,* 446 U.S. at 12 (where the financial condition of the party liable on the partial judgment would impair the judgment beneficiary's ability to collect on the judgment, it weighs in favor of entering the judgment); *SEC v. Aragon Capital Management, LLC,* 672 F. Supp.2d 421, 453 (S.D.N.Y. 2009), *vacated in part on other grounds,* 426 Fed. App'x 1 (2d Cir. 2011) (the risk of dissipation of assets, and concern about the collectability of any judgment, are factors that can be considered). As shown by the accompanying declaration of Deborah Hazell, one of the Funds' directors:

(a)  Defendant Garrison stated to the Funds' board members that HDG Mansur Investment Services, Inc. and HDGM Advisory Services, LLC (together with Garrison "HDG") were experiencing difficulty meeting overhead expenses, and that HDG had taken the additional financing fees under the Fund Management Agreement because he was concerned that HDG would be terminated as fund manager and wanted to extract these fees while he was in control.

(b)  HDG Mansur Investment Services, Inc. and other HDG affiliates have been accused in a separate lawsuit of receiving fees to which they were not entitled in connection a real estate project in Florida and attempting to conceal those payments from auditors. Ex. A to the declaration, pars. 23-26.

(c)  Two HDG affiliates went into default on their leases for the HDG London offices, and advised that they could not comply with the payment terms of the leases "or any alternative payment plan," which has resulted in another lawsuit against defendant

4

HDG Mansur Investment Services for more than half of a million dollars. Ex. B to the declaration, pars. 58-68. The HDG defendants have admitted these allegations in the answer to the complaint. Ex. C to the declaration, pars. 58-68.

(d) An HDG affiliate, HDG Mansur Capital Group, LLC, has been sued in New York Supreme Court for defaulting on commission payments due on a sublease in New York City. Ex. D to the declaration, pars. 8-16.

(e) HDG was the developer of the Finzels Reach Project in Bristol, England that recently went into receivership because HDG defaulted on a loan. News reports state that HDG had "admitted financial difficulties." (www.bbc.co.uk/news/uk-england-bristol-22289999.)

(f) Mr. Garrison promised to pay back to the Funds $1,385,603.72 for expenses that he overcharged the Funds, but has not made those payments.

(g) In late 2012 and early 2013, HDG and its affiliates were terminated as the manager of two other real estate development projects.

(h) HDG has downsized its business operations significantly over the last 8 months, and reduced the number of employees by more than half.

(i) Ms. Hazell was advised by an attorney whose firm had previously represented the HDG affiliates that he had not been paid a substantial outstanding amount owed to him.

Given all these problems, the risk of further dissipation of assets, and the concern that defendants will be unable to pay any judgment, are significant. The litigation in this matter alone will cause an additional drain on the defendants' resources. The other three lawsuits and the loss

5

of business compounds the problem. To ensure that the shareholders are not further victimized, entry of partial summary judgment is required.

3. <u>Alternative Relief</u> – At a minimum, the interests of the Funds' shareholders should be protected by entry of the partial judgment pursuant to Rule 54(b) that would be subject to a stay, pursuant to Federal Rule of Civil Procedure 62(h). Defendants would receive that stay so long as they paid the judgment amount of $5,818,682 into Court, where it would be held in escrow pending entry of a final judgment on all claims. *Curtiss-Wright Corp.*, 446 U.S. at 13 n.3; *see also Pereira v. Cogan*, 275 Bankr. Rptr. 472, 475 (S.D.N.Y. 2002).

**Dated:** August 15, 2013
New York, New York

/s/ Charles C. Platt
_____

Charles C. Platt (NY Bar No. 1678325)
Jeremy Winer
Stephanie Shuler
Fiona Kaye
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Counsel for GPIF-I Equity Co., Ltd. And GPIF-I Finance Co., Ltd.*