UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD.,

             Plaintiffs-Counterclaim Defendants,

v.

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON

             Defendants-Counterclaim Plaintiffs.

------------------------------------------------------------------x

**Case No. 13 Civ 547 (CM)**

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY ON THEIR BREACH OF CONTRACT COUNTERCLAIM**

MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO, P.C.
Francis J. Earley
John S. McMahon III
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
FEarley@mintz.com
TMcMahon@mintz.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ................................................................................................... 4

I.    The Fund Management Agreement ............................................................ 4

      A.     Bases for Termination ....................................................... 4

      B.     Duties Upon Termination .................................................. 5

      C.     Survival Clause ................................................................. 6

II.    Termination of the HDG Entities as Fund Manager ................................. 6

III.    Current Stage of Litigation ....................................................................... 6

ARGUMENT ........................................................................................................ 7

I.    The FMA Specifically Requires The Funds to Pay a Termination Payment to the Fund Manager Upon Termination of the FMA for Breach of Contract ............................ 8

II.    There Was No "Material Breach" Amounting to Non-Performance Under the FMA That Would Excuse the Non-Breaching Party from Performance Because the HDG Entities Substantially Performed Under the FMA ............................ 13

III.    Plaintiffs' Agency Argument Ignores That the Contract Plainly Requires a Termination Payment Upon Termination for Breach of Fiduciary Duty ....................... 15

CONCLUSION .................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*4Kids Entm't, Inc. v. Upper Deck Co.*,
   797 F. Supp. 2d 236 (S.D.N.Y. 2011) ......................................................................8

*AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC.*,
   890 F. Supp. 2d 373 (S.D.N.Y. 2012) ......................................................................8

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   467 Fed. Appx. 4 (2d Cir. 2012) ..............................................................................7

*GPIF-I Equity Co. v. HDG Mansur Inv. Servs., Inc.*,
   No. 13 Civ. 547 (CM), 2013 WL 3989041 (S.D.N.Y. Aug. 1, 2013) ...........*passim*

*Legend Artists Mgmt., Inc. v. Blackmore*,
   273 A.D.2d 91 (1st Dep't 2000) .............................................................................15

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976) ..............................................................................3, 13

*McClellan v. Smith*,
   439 F.3d 137 (2d Cir. 2006) ....................................................................................7

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007) ......................................................................13-14, 15

*New Falls Corp. v. Lerner*,
   579 F. Supp. 2d 282 (D. Conn. 2008) ......................................................................8

*New York Times Co. v. FBI*,
   822 F. Supp. 2d 426 (S.D.N.Y. 2011) ......................................................................7

*Oppenheimer & Co. v. Oppenheim Appel, Dixon & Co.*,
   86 N.Y.2d 685 (1995) ...............................................................................................8

*Riviera Fin. of Tex., Inc. v. Capgemini US, LLC*,
   511 Fed. Appx. 92 (2d Cir. 2013) ..........................................................................15

*Stadt v. Fox News Network LLC*,
   719 F. Supp. 2d 312 (S.D.N.Y. 2010) ......................................................................7

*TNT (USA) Inc. v. DHL Express*,
   No. 09-cv-048 (JS)(ARL), 2012 WL 601452 (S.D.N.Y. Feb. 23, 2012) ................8

**STATUTES**

Fed. R. Civ. P. 56(a) ...................................................................................................7

Defendants-Counterclaim Plaintiffs HDG Mansur Investment Services, Inc. ("HDG Investment"), HDGM Advisory Services, LLC ("HDG Advisory" and, together with HDG Investment, the "HDG Entities"), and Harold D. Garrison ("Garrison" and, together with the HDG Entities, "Defendants") respectfully submit this Memorandum of Law, along with the Declaration of Harold D. Garrison, dated October 7, 2013 ("Garrison Decl."), and the exhibits attached thereto, in support of Defendants' opposition to the motion for summary judgment filed by plaintiffs GPIF-I Equity Co., Ltd. ("Equity Co.") and GPIF-I Finance Co., Ltd. ("Finance Co." and with Equity Co., the "Funds" or "Plaintiffs") on Defendants' counterclaims and in support of Defendants' cross-motion for partial summary judgment on liability on their breach of contract counterclaim.

## PRELIMINARY STATEMENT

Plaintiffs' motion is predicated on two assertions, both of which are wrong. *First*, Plaintiffs claim that "Defendants' material breach excuses the Funds' further performance under the [Fund Management] Agreements, so the Funds have no obligation to make termination payments to Defendants." (Pl. Br. at 1.)  In other words, Plaintiffs assert that because the Court awarded them partial summary judgment on their breach of contract claim, they are excused from any additional performance under the contract, including making the termination payment set forth in it.

Plaintiffs' assertion is incorrect.  It is plainly contradicted by the Fund Management Agreement ("FMA"), which required the Funds to pay a termination payment in the event that they terminated the Defendants as Fund Manager for breach of contract or for any other reason. And as this Court noted in its August 1, 2013 Decision and Order Granting Plaintiffs' Motion for Partial Summary Judgment, "[w]here the terms of an agreement are clear and unambiguous,

courts do not look beyond the four corners of the agreement." *GPIF-I Equity Co. v. HDG Mansur Inv. Servs., Inc.*, No. 13 Civ. 547 (CM), 2013 WL 3989041, at *5 (S.D.N.Y. Aug. 1, 2013) (the "Decision") (citation omitted).[1]

Plaintiffs do not mention the FMA's termination provision in their moving papers. This is no surprise: this provision mandates dismissal of Plaintiffs' motion. According to the FMA, the Funds owed a termination fee to the HDG Entities no matter why they ended the contract – whether they terminated for their own internal business reasons (referred to in the FMA as an "Elective Termination"); if they terminated because of a breach of contract committed by the Defendants (referred to in the FMA as an "Event of Default"); or if they terminated because of a fraud, breach of fiduciary duty or crime committed by the defendants (referred to in the FMA as a "Termination for Cause"). The <u>amount</u> of the termination payment varies depending on how the termination is characterized under the FMA, but there is no dispute that in every scenario <u>some</u> termination payment is owed. As a result, the plain language of the FMA supersedes the assertion on which Plaintiffs' motion for summary judgment rests.

In addition, the FMA contains a survival clause which states that upon termination for any reason both parties shall remain liable for all obligations and liabilities accrued and owed under the Agreement. This provision leaves no doubt that the HDG Entities remain entitled to monies already owed to them at the time of termination. Plaintiffs do not mention the survival clause in their moving papers. Again, this is no surprise: this clause also defeats Plaintiffs' motion.

---

[1]     As the Court noted in its Decision, Plaintiff HDG Investment entered into Fund Management Agreements with Defendants Equity Co. and Finance Co. respectively, which were identical in all material respects. (Decision at *2.) For ease of reference, we follow the Court's citation style and cite only the Fund Management Agreement between HDG Investment and Equity Co., attached as Ex. A to the Declaration of Deborah Hazell, dated September 16, 2013.

Lastly, Plaintiffs confuse a material breach of contract that excuses non-performance under New York law with the type of breach of contract alleged here. Under New York law, a material breach is "defined as one which . . . is so substantial as to defeat the purpose of the entire transaction." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976). Plaintiffs cannot plausibly claim that this occurred here. The HDG Entities and the Funds entered into the FMA in 2002 and there is no dispute that the HDG Entities performed services under the contract for more than ten years. Thus, there is no genuine dispute that the HDG Entities substantially performed under the FMA prior to being terminated. Therefore, even if the termination provision and survival clause in the FMA did not plainly require dismissal of Plaintiffs' motion, the motion would still be unsustainable because there was no material breach excusing non-performance under New York law.

*Second*, Plaintiffs assert that an "agent's breach of fiduciary obligation allows the principal to terminate its relationship with the agent in advance of the time set for termination in any contract between them and to withhold compensation payable during the period of the agent's disloyalty." But this claim too is plainly contradicted by the FMA, which explicitly provides that the Funds needed to pay a termination payment to the HDG Entities even if they terminated them for breach of fiduciary duty.

Although Defendants need more discovery before they can move for summary judgment on the exact amount of the termination payment they are owed, there is no genuine issue of material fact about the Funds' obligation to pay <u>something</u> to the HDG Entities. We therefore respectfully request that the Court deny Plaintiffs' motion and grant Defendants' cross-motion for partial summary judgment on liability on their breach of contract counterclaim.

3

## BACKGROUND

This memorandum discusses only the facts and events relevant to the instant motions. The Court's August 1, 2013 Decision contains a more detailed history of the relationship between the parties.

**I.**  **The Fund Management Agreement**

    **A.**  **Bases for Termination**

Section 6.2 of the FMA lists seven circumstances in which the Funds "shall have the right to Terminate this Agreement."  These circumstances include:

        1.  Termination for Event of Default

The Fund Manager may be terminated upon an Event of Default, which is defined as either Bankruptcy or Failure to Comply.  (FMA § 6.1.)  Failure to Comply means the "failure of either Party to comply with any provision of this Agreement if such failure is not cured within 30 days after notice thereof."  (FMA § 6.1.1.)  This is the applicable provision for termination based on the Fund Manager's breach of contract.  The effective date of termination under this provision "shall be the day following the last day upon which a cure could be effected."  (*Id.*)

        2.  Termination For Cause

The Fund Manager may be terminated For Cause, upon "(i) the commission of an act constituting a breach of fiduciary duty owed by the Fund Manager to the Fund Companies or gross negligence or willful misconduct by the Fund Manager in the performance of its duties hereunder or under any other Transaction Document; (ii) the commission of an act constituting fraud or dishonesty by the Fund Manager . . . ; or (iii) the commission by the Fund Manager of a misdemeanor involving moral turpitude or a felony."  (FMA § 6.2(b).)  The effective date of Termination under this provision "shall be the day set forth in the written notice to the Fund Manager from the Investment Committee or the Board of Directors."  (*Id.*)

3.      Elective Termination

The Funds may make an Elective Termination of the Fund Manager "only if there shall have been a unanimous vote of the Boards of Directors and the unanimous vote of the Investment Committee to effect a termination pursuant to this clause (d), in which event the effective date of Termination shall be the day set forth in the notice of such Termination." (FMA § 6.2(d).)

**B.      Duties Upon Termination**

Section 6.4.1 lists the Funds' duties upon termination, namely a payment to the Fund Manager of a certain amount which depends on which of Termination Events A through D, as defined in Section 6.2 of the FMA, applies. In relevant part, an Elective Termination constitutes a Termination Event A, a Termination for Event of Default constitutes a Termination Event B, and a Termination for Cause constitutes a Termination Event C.

A termination payment is due for **every** type of termination. It does not matter whether termination was grounded in an Elective Termination (Termination Event A), breach of contract (Termination Event B), or for cause (Termination Event C). Even if the Fund Manager were to have engaged in the most egregious conduct contemplated under the Termination for Cause provision – such as committing fraud, a crime involving moral turpitude or a felony during the course of the agreement – the FMA clearly states that the Fund Manager would be entitled to some termination payment (albeit a lesser amount). And the Fund Manager is all the more so entitled to a termination payment where the termination was rooted in breach of contract or was elective.

### C.     Survival Clause

Section 6.6 is the FMA's survival clause.  It reads:

> Upon Termination, both Parties *shall remain liable for all obligations and liabilities accrued and not fully performed and paid under this Agreement during the Term*, and the obligations and liabilities set forth in Sections 6.5 and 7 shall survive any Termination of this Agreement whether or not such obligations occurred during the Term.

(FMA § 6.6 (emphasis added).)  This clause provides without any limitation that after termination both parties remain liable for all monies already accrued and owed under the FMA.

## II.     Termination of the HDG Entities as Fund Manager

At the meeting of the Boards of Directors of the Funds (the "Boards") on December 27, 2012, the Boards voted to terminate the HDG Entities as Fund Manager, effective January 2, 2013.  (Garrison Decl. ¶ 4.)  On January 14, 2013, the Funds confirmed via letter that the HDG Entities were "terminated with effect on January 2, 2013."[2]  (Garrison Decl. ¶ 5.)  The HDG Entities continued to work with the Funds, at the Funds' request, for 30 days after the Effective Date of their termination to ensure a smooth transition for the Fund Manager, as required by Section 6.4.3 of the FMA, and were thanked by the Funds for their cooperation.[3]  (Garrison Decl. ¶ 14.)

To this date, the HDG Entities have not received any termination payments.  (Garrison Decl. ¶ 8.)

## III.     Current Stage of Litigation

On August 1, 2013, the Court granted partial summary judgment to Plaintiffs on their breach of contract claim in the amount of $5,818,682.  The Court held that Defendants'

---

[2] Paul Dawe's January 14, 2013 letter to Harold D. Garrison is attached as Exhibit 2 to the Garrison Decl.
[3] *See* Deborah Hazell email to Harold D. Garrison, *et al.*, dated January 10, 2013 and attached as Exhibit 3 to the Garrison Decl.

interpretation of Investment Financing Fees was incorrect and that Investment Financing Fees as defined in the contract could not be interpreted off a base that included the equity portion of the investment. The Court noted with respect to Defendants' counterclaims: "Of course, Defendants have a variety of claims against Plaintiffs, which they no doubt wish to offset. It is possible, now that the Court has ruled that Defendants were in material breach of the FMAs by taking money to which they were not entitled, that these claims can be resolved rather quickly. Or perhaps not." (Decision at *11.)

Plaintiffs have now moved to dismiss Defendants' counterclaims and Defendants have cross-moved for partial summary judgment on liability on their breach of contract counterclaim.

## ARGUMENT

"Summary judgment may only be granted where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *New York Times Co. v. FBI*, 822 F. Supp. 2d 426, 430 (S.D.N.Y. 2011) (citing Fed. R. Civ. P. 56(a)). "In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006). "In a contract dispute, generally, a motion for summary judgment may be granted only when the contract language is wholly unambiguous and conveys a definite meaning." *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed. Appx. 4, 7 (2d Cir. 2012) (internal citations omitted).

This Court has noted that "[t]o establish a breach of contract under New York law, a plaintiff must show (1) the existence of an agreement, (2) adequate performance of the contract by the claimant, (3) breach of contract by the accused, and (4) damages." Decision at *6 (citing *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010)). Courts within the

Second Circuit have granted summary judgment on breach of contract claims on liability alone.

*See, e.g., TNT (USA) Inc. v. DHL Express*, No. 09-cv-048 (JS)(ARL), 2012 WL 601452, at *5

(S.D.N.Y. Feb. 23, 2012) (granting summary judgment on liability in a breach of contract claim);

*4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 244 (S.D.N.Y. 2011) (same).[4]

## I.   The FMA Specifically Requires The Funds to Pay a Termination Payment to the Fund Manager Upon Termination of the FMA for Breach of Contract

"Perhaps the most fundamental principle of contract construction is that when parties set

down their agreement in a clear, complete document, their writing should as a rule be enforced

according to its terms." *AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC*, 890 F.

Supp. 2d 373, 387 (S.D.N.Y. 2012) (internal quotations omitted) (enforcing stipulated damages

provision since "such a clause is neither unconscionable nor contrary to public policy").

"Freedom of contract prevails in an arm's length transaction between sophisticated parties such

as these, and in the absence of countervailing public policy concerns there is no reason to relieve

them of the consequences of their bargain.  If they are dissatisfied with the consequences of their

agreement, the time to say so was at the bargaining table." *Oppenheimer & Co. v. Oppenheim

Appel, Dixon & Co.*, 86 N.Y.2d 685, 695 (1995) (internal quotations omitted).  Indeed, "[p]arties

choose to contract away rights that would otherwise be afforded to them in consideration for

other benefits all the time." *New Falls Corp. v. Lerner*, 579 F. Supp. 2d 282, 292 (D. Conn.

2008), *aff'd*, 352 Fed. Appx. 596 (2d Cir. 2009).

---

[4]     We typically would not move on a breach of contract claim for summary judgment on liability alone.  But here, Defendants' opposition to Plaintiffs' motion for summary judgment essentially constitutes a request for partial summary judgment on liability in Defendants' favor. In this context, we believe that a decision granting Defendants' cross-motion for partial summary judgment on liability on their breach of contract counterclaim will streamline the remaining issues in this case and facilitate an expedient resolution of this action.

Here, the plain language of the FMA provides that the Fund Manager was to receive some amount of termination payment regardless of why and what type of termination occurred. Whether there was an Elective Termination (Termination Event A), Termination for Event of Default (Termination Event B) or Termination for Cause (Termination Event C), the FMA unambiguously entitled the Fund Manager to receive a termination payment.

At the appropriate time, Defendants will demonstrate that the termination which occurred was an Elective Termination or, at worse, a Termination for Event of Default. Critically, although Plaintiffs will contend (wrongly we believe) that a Termination for Cause occurred, this determination has no bearing to whether Defendants were entitled to a termination payment. This is because even if there was a Termination for Cause (and Defendants vociferously deny that there was), Defendants were entitled to a termination payment. Again, there is no question that the HDG Entities were entitled to a termination payment in all scenarios. All that differs is the amount.

More specifically, even if there was a Termination for Cause (Termination Event C), the Funds still were required to pay the HDG Entities a termination payment:

> "In connection with the Termination Events hereinafter described, the Fund Companies shall pay or cause to be paid to the Fund Manager, in immediately available funds, on dates hereinafter set forth, an amount equal to . . . (c) **(No Severance)** for Termination Event C, an amount equal to the sum of (i) on the effective date of Termination, the Base Termination Payment *plus* (ii) on the Co-Investment Purchase Date, an amount equal to the Sponsor Co-Investment Payment of the HDG Mansur Sponsor."

(FMA § 6.4.1(c) (emphasis in original.)

As an initial matter, even Termination Event C required the Funds to pay to the HDG Entities "on the Co-Investment Purchase Date, an amount equal to the Sponsor Co-Investment Payment of the HDG Mansur Sponsor." (FMA § 6.4.1.(c).) GPIF Co-Investment, LLC was a

joint venture entered into by the Funds and the HDG Entities in 2002 in which third-party

defendant HSBC paid an 80 percent share and the HDG Entities paid a 20 percent share.

(Garrison Decl. ¶ 9.) This was money invested by the HDG Entities that they were plainly

entitled to have returned to them under the plain language of the FMA. (*Id.*) While the HDG

Entities need additional discovery to determine the precise amount of their investment as of the

Co-Investment Purchase Date (a date defined by the FMA), they note that the total value of their

share of GPIF Co-Investment, LLC was $1,657,000 as of September 2012 and believe that this

has only increased. (*Id.*). The FMA clearly provides that the HDG Entities were entitled to the

return of their own investment.

In addition, Schedule X (which defines the FMA's capitalized terms, see FMA § 1.1)

defines "Base Termination Payment" as "payment of the aggregate amount of all of [the]

Termination Payment Elements as of such date determination payable to such person."[5]

(Schedule X, "Base Termination Payment.") Schedule X states with respect to "Termination

Payment Elements":

> "*Termination Payment Elements*" means, as of any date of
> determination, with respect to any Termination, each of the
> following elements:
>
> . . .
>
> (b)     all unpaid Investment Disposition Fees as of the effective
> date of such Termination;
>
> . . .
>
> (e)     all unpaid Fund Manager Transactional Expenses to the
> effective date of such Termination;

---

[5] Schedule X is attached as Exhibit C to the Declaration of Deborah Hazell, dated September 16, 2013.

(f)      all unpaid Other Expenses due to the Fund Manager to the effective date of such Termination;

. . .

(j)      a pro rata portion of the Fund Administration Fee for the calendar quarter in which such Termination shall occur, determined from the first day of such calendar quarter to the effective date of such Termination based upon the Net Asset Value of all Property Investments and other assets of the Fund Companies (directly or indirectly, including through the Investment Entities) as at the effective date of such Termination;

. . .

(l) all other fees, costs and expenses to which the Fund Manager shall be entitled hereunder or under any other Transaction Document to the date of Termination or determination, as appropriate, and which have not been paid in full;

. . .

(n)      all unrealized financing fees in respect of any Anticipated Property Investment and any Property Investment with respect to which there has been material work performed and services rendered hereunder at the time of Termination and for which the Fund Manager would be entitled to a Financing Fee as contemplated by Section 5.5 of each of the Fund Management Agreements if such is [or was] consummated directly or indirectly by a Fund Company within 180 days next succeeding the date of Termination; and

(o)      all unrealized disposition fees in respect of any Property Investment with respect to which there has been material work performed and services rendered hereunder at the time of Termination and for which the Fund Manager would be entitled to a Disposition Fee as contemplated by Section 5.6 of each of the Fund Management Agreements if such disposition is [or was] consummated directly or indirectly by a Fund Company within 180 days next succeeding the date of Termination;

(Schedule X, "Termination Payment Elements.")

        There is no genuine issue of material fact as to whether the HDG Entities were entitled to

receive a payment for at least some of the elements listed above.  As an example, Termination

Payment Element (b) entitled the HDG Entities to receive all unpaid Investment Disposition Fees as of the Effective Date of the termination.  There are properties that were sold prior to the effective date of termination for which the HDG Entities did not receive their full Investment Disposition Fee pursuant to the FMA.  For instance, the EG Hemel property located in the United Kingdom was sold on December 20, 2012 for £6,000,000.  The HDG Entities have not been paid the full amount of the Investment Disposition Fee owed to them as a result of this sale and still are owed $41,655.50.  (Garrison Decl. ¶ 10.)  As another example, Termination Payment Element (j) entitled the HDG Entities to a "pro rata portion of the Fund Administration Fee for the calendar quarter in which such Termination shall occur."  The "Fund Administration Fee" was a fee paid to the HDG Entities every calendar quarter as a payment for serving as Fund Manager pursuant to a formula set forth in the FMA and Schedule X.  (*Id.* ¶ 11.)  Based on historical payments and discovery to date, Defendants estimate this amount to be at least $100,000.  (*Id.*)

We emphasize that these there are only examples of fees owed to the HDG Entities pursuant to the Termination Payment Elements set forth in Schedule X even if there was a Termination for Cause.  The HDG Entities, at the appropriate time, after additional discovery, will provide the Court with a complete breakdown of the fees owed to the HDG Entities under each of the Termination Payment Elements listed above.  The HDG Entities also will demonstrate that an Elective Termination (or at worst a Termination for Event of Default) occurred and that the HDG Entities are entitled to even more fees than those set forth in Termination Event C.  These above examples demonstrate that there were at least some fees owed to the HDG Entities under the FMA even if there would have been a Termination for

Cause. The Funds have breached the FMA by not making these required payments to Defendants.

Indeed, the Funds and the HDG Entities, all sophisticated parties, negotiated the FMA at arms' length to detail explicitly the exact impact that termination for breach of contract, or more egregious misconduct by the Fund Manager, would have on the Fund Manager's termination payments. (Garrison Decl. ¶ 2.) And to avoid any doubt, the parties included in the FMA a survival clause, guaranteeing that all liabilities and obligations would remain in effect upon termination regardless of the grounds upon which the agreement was terminated. (*Id.*) Thus, these sophisticated parties mutually agreed to create their own plan for exactly how the Fund's termination of the Fund Manager for every possible basis, including misconduct, would affect the termination payment. The Funds' disappointment at the result is not a basis to rewrite the contract.

## II.   There Was No "Material Breach" Amounting to Non-Performance Under the FMA That Would Excuse the Non-Breaching Party from Performance Because the HDG Entities Substantially Performed Under the FMA

Initially, we reiterate that it is wholly irrelevant whether the HDG Entities committed a material breach of the FMA. Even if they did, the FMA plainly required the Funds to pay a termination payment when the basis for their termination was the Fund Manager's breach of contract without any limitations as to what type of breach occurred. The termination provision and the survival clause obviate the need for an analysis as to the type of breach committed.

That said, the HDG Entities did not commit a "material breach" of contract which would excuse the Funds from performance. Under New York law, a material breach is "defined as one which . . . is so substantial as to defeat the purpose of the entire transaction." *Lipsky*, 551 F.2d at 895. Put differently, a material breach is "synonymous" with one party "substantially fail[ing] to

perform its side of the bargain." *Merrill Lynch & Co. v. Allegheny Energy, Inc.,* 500 F.3d 171, 186 (2d Cir. 2007). The materiality of the breach essentially makes the circumstance as though the breaching party never performed and therefore the non-breaching party has no obligations under the contract.

Here, there is no genuine dispute of material fact as to whether the HDG Entities substantially performed under the FMA. The FMA was executed in 2002 and Plaintiffs served as Fund Manager for more than ten years and performed extensively with very tangible achievements before they were terminated. (Garrison Decl. ¶ 13.) During their ten-plus years as Fund Manager of the HSBC Amanah Global Properties Income Fund, the HDG Entities managed 125 buildings totaling more than 11 million square feet and worth over $2 billion throughout the US and Europe; and the HDG Entities negotiated and executed over 1.5 million square ft. of leasing, $3 billion of re-financings and $1 billion of dispositions, all which required strict adherence to a very technical *Shariah*-compliant processes. (*Id.*) In short, the HDG Entities indisputably substantially performed for a prolonged period of time under the FMA. They even substantially performed during a 30-day transition period after the effective date of their termination and were thanked for their cooperation by the Funds. (Garrison Decl. ¶ 14 and Ex. 3.)

Plaintiffs claim that this Court "has already concluded" that Defendants were in material breach of the FMA. (Pl. Br. at 8.) Plaintiffs presumably are relying on the following language in the Court's Decision:

> It is possible, now that the Court has ruled that Defendants were in material breach of the FMAs by taking money to which they were not entitled, that these claims can be resolved rather quickly. Or perhaps not.

14

(Decision at *11.)  We respectfully suggest that the Court's language of "material breach" referred to the Court's perception of the seriousness of the breach rather than a factual finding that the Defendants never performed under the FMA.  We suggest this because (i) the Court has not yet had the opportunity to receive briefing on whether Defendants materially performed under the FMA so there was no basis in the record for the Court to rule upon this; and (ii) there is no genuine dispute of material fact as to whether the HDG Entities did substantially perform under the FMA given the prolonged span of their performance.  We therefore respectfully suggest that the Court did not intend to refer to a "material breach" as one synonymous with a substantial failure to perform under New York law, which is the only basis for non-performance on the grounds of the other side's breach of contract.[6]

Because the HDG Entities substantially performed under the FMA and the Funds have breached the contract by not paying any termination payment, the HDG Entities are entitled to partial summary judgment on liability on their breach of contract claim.

## III.   Plaintiffs' Agency Argument Ignores That the Contract Plainly Requires a Termination Payment Upon Termination for Breach of Fiduciary Duty

At the tail end of their brief, Plaintiffs claim that an "agent's breach of fiduciary obligation allows the principal to terminate its relationship with the agent in advance of the time

---

[6]    Plaintiffs cite *Merrill Lynch,* 500 F.3d at 187 and *Riviera Fin. of Tex., Inc. v. Capgemini US, LLC,* 511 Fed. Appx. 92, 95 (2d Cir. 2013) to support their material breach argument but in both cases the material breach was determined to amount, or have the potential to amount, to substantial failure to perform under New York law.  See *Merrill Lynch,* 500 F.3d at 187 ("[I]f Merrill Lynch breached one or more warranties and the cumulative effect of such breaches was material, it did not substantially perform its side of the deal"); *Riviera Fin.,* 511 Fed. Appx. at 95 (purpose of contract was frustrated by the breach).  And a third case cited by Plaintiffs, *Legend Artists Mgmt., Inc. v. Blackmore,* 273 A.D.2d 91, 92 (1st Dep't 2000) held only that a material breach afforded defendants relief from paying future commissions.  It did not refer at all to extinguishing payment obligations or discuss the criteria for a finding of a material breach. There also is nothing in the decisions indicating that a termination provision or survival clause existed in the contracts at issue in these cases.

set for termination in any contract between them and to withhold compensation payable during the period of the agent's disloyalty." (Pl. Br. at 5.)

Plaintiff's argument is meritless. The FMA explicitly spells out what termination payment the Fund Manager would receive were it to be terminated for breach of fiduciary duty. Under the FMA, a breach of fiduciary duty is an explicit basis for the Funds to terminate the Fund Manager for Cause. (FMA § 6.2(b)(i).) As noted above, a termination payment still is due even where there has been a Termination for Cause. Because the contract specifically provides for this, there is no basis for Defendants to argue that a breach of fiduciary duty excuses the Fund from paying a termination payment. Plaintiffs' claim adds nothing to support its argument. And in any event, there has been no finding that Defendants have breached any fiduciary duty (and Defendants will argue vociferously that they did not) or that the damages requested as part of the termination payment were all accrued during any alleged period of disloyalty (as they were not).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for partial summary judgment on liability on their breach of contract counterclaim.

Dated: October 7, 2013
    New York, New York

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.


By: _____
Francis J. Earley
John S. McMahon III
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
(212) 935-3000
FEarley@mintz.com
TMcMahon@mintz.com

*Attorneys for Defendants HDG Mansur*
*Investment Services, Inc., HDGM Advisory*
*Services, Inc., and Harold D. Garrison*