UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GPIF-I EQUITY CO., LTD. and                    :
GPIF-I FINANCE CO., LTD.,                       :
                                                :
                 Plaintiffs,                    :
                                                :
v.                                              :        **Case No. 13 Civ 547 (CM)**
                                                :
HDG MANSUR INVESTMENT SERVICES, INC.,          :
HDGM ADVISORY SERVICES, LLC, and               :
HAROLD D. GARRISON                              :
                                                :
                 Defendants.                    :
-----------------------------------------------------------x

**DEFENDANTS HDG MANSUR INVESTMENT SERVICES,
INC., HDGM ADVISORY SERVICES, LLC, AND HAROLD
D. GARRISON'S COUNTERSTATEMENT OF MATERIAL
FACTS PURSUANT TO LOCAL RULE 56.1**

Pursuant to Local Rule 56.1, defendants HDG Mansur Investment Services, Inc., HDGM

Advisory Services, LLC, and Harold D. Garrison (collectively "Defendants") submit the

following Counterstatement of Material Facts in response to the Statement of Material Facts filed

by plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd. (collectively "Plaintiffs") in

support of their motion, and in support of Defendants' cross-motion for summary judgment on

partial summary judgment on liability on their breach of contract counterclaim.  As for

Defendants' Counterstatement of Material Facts, Defendants respond as follows:

**STATEMENT OF MATERIAL FACTS**

1.      Plaintiffs Equity Co. and Finance Co. are real estate investment funds that invest in a

diversified portfolio of real estate properties.

**DEFENDANTS' RESPONSE TO PARAGRAPH 1.**

Defendants admit the allegations in paragraph 1.

2.      Defendant HDG Mansur Investment Services, Inc. ("HDG Investment") is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in Indiana.

**DEFENDANTS' RESPONSE TO PARAGRAPH 2.**

Defendants admit the allegations in paragraph 2.

3.      Defendant HDGM Advisory Services, LLC ("HDG Advisory and, together with HDG Investment, the "HDG Entities") is a limited liability company organized and existing under the laws of the State of Indiana with its principal place of business in Indiana.  HDG Advisory is registered with the U.S. Securities and Exchange Commission as an investment adviser.

**DEFENDANTS' RESPONSE TO PARAGRAPH 3.**

Defendants admit the allegations in paragraph 3, except that, as of January 22, 2013, HDG Advisory is no longer registered as an investment adviser.

4.      Harold D. Garrison is the Chairman and CEO of the HDG Entities.

**DEFENDANTS' RESPONSE TO PARAGRAPH 4.**

Defendants admit the allegations in paragraph 4.

5.      Around September 2002, HDG Investment entered into a Fund Management Agreement with Equity Co. *See* Declaration of Deborah Hazell in Support of Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims ("Fifth Hazell Decl.") ¶ 2 & Exs. A, C. Around

September 2002, HDG Investment entered into a substantially identical Fund Management

Agreements with Finance Co. *See id.* ¶ 2 & Exs. B, C. The Fund Management Agreements are

referred to herein collectively as the "Agreements." The Agreements are identical in relevant

respects, so citations herein will be only to the Equity Agreement found at Exhibit A to the Fifth

Hazell Declaration and the definitions thereto (Exhibit C).

**DEFENDANTS' RESPONSE TO PARAGRAPH 5.**

 Defendants admit the allegations in paragraph 5.

6. The Agreements provided that HDG Investment would act as Fund Manager, agent, and

fiduciary to the Funds, and HDG Investment acted in that capacity until on or around March 30,

2012. Fifth Hazell Decl. ¶ 3 & Ex. A § 2.4.

**DEFENDANTS' RESPONSE TO PARAGRAPH 6.**

 Defendants admit that the Fund Management Agreements (the "FMA") provided that

HDG Investment would serve as Fund Manager and agent to the Funds, but deny that the FMA

stated that HDG Investment would act as a fiduciary. (*See* FMA.)

7. On or around March 30, 2012, HDG Investment assigned all of its rights, duties and

obligations under the Agreements to HDGM Advisory. On or after that date, HDGM Advisory

acted as Fund Manager, agent, and fiduciary to the Funds. Fifth Hazell Decl. ¶ 3 & Ex. D.

**DEFENDANTS' RESPONSE TO PARAGRAPH 7.**

 Defendants admit that HDG Advisory was assigned all of the rights, duties and

obligations of HDG Investment under the FMA, but deny that the FMA stated that HDG

Investment would act as a fiduciary. (*See* FMA.).

8.      On December 27, 2012, the Funds' boards resolved to terminate the Agreements,

effective as of January 2, 2013, after concluding that Defendants had paid themselves, from the

Funds' assets, at least $5,818,682 to which they were not entitled and without proper

presentation to and authorization of the boards. Fifth Hazell Decl. ¶ 4.

**DEFENDANTS' RESPONSE TO PARAGRAPH 8.**

        Defendants admit that the Funds' boards resolved to terminate the Agreements on

December 27, 2012, effective as of January 2, 2013, but deny that the Funds' boards stated a

reason for the termination.  (Garrison Decl. Ex. 1 (Minutes of December 27, 2012 Boards

Meeting).)

9.      On January 24, 2013, the Funds brought this action to recover the more than $5.8 million

that Defendants had misappropriated. *See* Dkt. No. 1. The Funds alleged, among other things, that

Defendants breached the Agreements by taking Fund assets to which they were not entitled and

by refusing to return those assets when the Funds demanded they do so. *See id.*

**DEFENDANTS' RESPONSE TO PARAGRAPH 9.**

        Defendants note that the citation to the pleadings in this action is improper because

pleadings are not proper evidence for summary judgment.  Every statement of fact by a movant

must be followed by citation to evidence which would be admissible.  *See* L.R. 56.1(d), *U.S.

Information Sys., Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 3*, 2006 WL

2136249, at *3 (S.D.N.Y. Aug. 1, 2006).  Notwithstanding this, Defendants admit that the Funds

brought this action and made the allegations described in paragraph 9.

10.     On February 5, 2013, the Funds moved for partial summary judgment on their breach of

contract claim. *See* Dkt. No. 18. They argued that Defendants had no contractual right to take the

misappropriated money based on the plain language of the Agreements governing fees for management of the Funds, and that Defendants' alleged justification for taking the money relied on a misinterpretation of those fee provisions. *See* Dkt. No. 19.

## DEFENDANTS' RESPONSE TO PARAGRAPH 10.

Defendants note that the citation to the Fund's motion is improper because a motion is not proper evidence for summary judgment. Every statement of fact by a movant must be followed by citation to evidence which would be admissible. *See* L.R. 56.1(d), *U.S. Information Sys., Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 3*, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006). Notwithstanding this, Defendants admit that the Funds made the motion and the arguments described in paragraph 10.

11.     On February 15, 2013, Defendants filed an answer and counterclaims. *See* Dkt. No. 22. In their counterclaims, Defendants alleged that they had fully performed all the services required by the Agreements and thus were entitled to termination fees under sections 6.2 and 6.4 of the Agreements. *See id.* Based on these allegations, Defendants asserted claims for relief for breach of contract and for an accounting of the termination fees purportedly owed to them under the Agreements. *See id.*

## DEFENDANTS' RESPONSE TO PARAGRAPH 11.

Defendants note that the citation to the pleadings in this action is improper because pleadings are not proper evidence for summary judgment. Every statement of fact by a movant must be followed by citation to evidence which would be admissible. *See* L.R. 56.1(d), *U.S. Information Sys., Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 3*, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006). Notwithstanding this, Defendants admit that they filed

counterclaims for breach of contract and an accounting for termination fees based on Sections 6.2 and 6.4 of the FMA.

12.     On August 1, 2013, the Court granted the Funds' motion for partial summary judgment on their breach of contract claim. *See* Dkt. No. 34. In its decision, the Court ruled that Defendants were "in material breach of the [Fund Management Agreements] by taking money to which they were not entitled...." based on unambiguous language in the Agreements. *GPIF-I Equity Co.*, 2013 WL 3989041, at *11. As a result, the Court determined that plaintiffs are entitled to damages of $5,818,682 representing the misappropriated funds, plus pre-judgment and post-judgment interest. *Id.*

**DEFENDANTS' RESPONSE TO PARAGRAPH 12.**

Defendants note that the citation to a prior decision in this action is improper because a prior decision is not proper evidence for summary judgment. Every statement of fact by a movant must be followed by citation to evidence which would be admissible. *See* L.R. 56.1(d), *U.S. Information Sys., Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 3*, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006). Notwithstanding this, Defendants admit that this Court made the ruling and quotation described in paragraph 12.

13.     On August 14, 2013, Defendants served document requests and interrogatories on the Funds, and have advised that multiple depositions and experts will be required as well to prepare for trial.

**DEFENDANTS' RESPONSE TO PARAGRAPH 13.**

Defendants note that the citation to Defendants' document requests and interrogatories in this action is improper because document requests and interrogatories are not proper evidence for

6

summary judgment. Every statement of fact by a movant must be followed by citation to evidence which would be admissible. *See* L.R. 56.1(d), *U.S. Information Sys., Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 3*, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006). Notwithstanding this, Defendants admit that Defendants served document requests and interrogatories on the Funds and have advised the Funds that multiple depositions will be needed. Defendants object to the statement regarding Defendants' position on experts because it does not cite to or rely upon evidence as required by L.R. 56(1) and deny that they have advised Plaintiffs that multiple experts will be required to prepare for trial. Defendants' position is that multiple experts may be needed, but the question of whether and how many experts will be needed is unclear at this time.

## ADDITIONAL MATERIAL FACTS

### Provisions in the FMA

14.    The Funds and the HDG Entities, all sophisticated parties, negotiated the FMA at arms' length. (Garrison Decl. ¶ 2.)

15.    Section 6 of the FMA discusses the circumstances under which the Funds may terminate the HDG Entities as Fund Manager and the parties' duties upon termination.

16.    Section 6.2 of the FMA lists seven circumstances in which the Funds "shall have the right to Terminate this Agreement."

17.    According to the FMA, the Fund Manager may be terminated upon an Event of Default, which is defined to include either Bankruptcy or Failure to Comply. Section 6.1.1 defines Failure to Comply as "*[t]he failure of either Party to comply with any provision of this Agreement* if such failure is not cured within 30 days after notice thereof." (FMA § 6.1.1

(emphasis added).)  The effective date of termination under this provision "shall be the day following the last day upon which a cure could be effected."  (*Id.*)

18.   According to the FMA, the Fund Manager may be terminated For Cause, upon "(i) the commission of an act constituting a breach of fiduciary duty … or gross negligence or willful misconduct by the Fund Manager; … (ii) the commission of an act constituting fraud or dishonesty by the Fund Manager; … or (iii) the commission by the Fund Manager of a misdemeanor involving moral turpitude or a felony."  (FMA § 6.2(b).)

19.   According to the FMA, the Funds may make an Elective Termination of the Fund Manager "only if there shall have been a unanimous vote of the Boards of Directors and the unanimous vote of the Investment Committee to effect a termination pursuant to this clause (d), in which event the effective date of Termination shall be the day set forth in the notice of such Termination."  (FMA § 6.2(d).)

20.   Section 6.4.1 of the FMA lists the Funds' duties upon termination, namely a payment to the Fund Manager of a certain amount which depends on which of Termination Events A through D, as defined in Section 6.2 of the FMA, applies.  In relevant part, an Elective Termination constitutes a Termination Event A, a Termination for Event of Default constitutes a Termination Event B, and a termination For Cause constitutes a Termination Event C.

21.   A termination payment is due for each of Termination Payments A through C.  (FMA § 6.4.1.)

22.   Each of the Termination Events requires the Funds to return to the HDG Entities funds relating to their investment in GPIF Co-Investment, LLC.  FMA § 6.4.1(a)-(c).)  GPIF Co-Investment, LLC was a joint venture entered into by the Funds and the HDG Entities in 2002 in which third-party defendant HSBC paid an 80 percent share and the HDG Entities paid a 20

percent share.  (Garrison Decl. ¶ 9.)  These were monies invested by the HDG Entities and they were entitled to have their own monies returned under the FMA at the time of termination regardless of why the termination occurred.  (*Id.*)  The total value of GPIF Co-Investment, LLC was $1,657,000 as of September 2012.  (*Id.*)

23.     Each of the Termination Events requires the Funds to pay the HDG Entities, on the effective date of Termination, an amount equal to "the Base Termination Payment."  (FMA § 6.4.1(a)-(c).)  The "Base Termination Payment" is defined as including, among other things, various fees already accrued and owed to the Fund Manager, including a "pro rata share of the Fund Administration Fee for the calendar quarter in which such Termination shall occur" (Schedule X, Base Termination Payment, Termination Payment Element (j)).  This is a fee paid to the HDG Entities every calendar quarter as a payment for serving as Fund Manager pursuant to a formula set forth in the FMA.  (Garrison Decl. ¶ 11.)

24.     The "Base Termination Payment" includes fees owed on properties that were sold prior to the effective date of termination for which the HDG Entities did not receive their full Investment Disposition Fee pursuant to the FMA.  (Schedule X, Base Termination Payment, Termination Payment Element (b).)  For instance, the EG Hemel property located in the United Kingdom was sold on December 20, 2012 for £6,000,000.  (Garrison Decl. ¶ 10.)  (The HDG Entities have not been paid the full amount of the Investment Disposition Fee due to them for this property.  (*Id.*)

25.     Section 6.6 of the FMA is titled "Survival."  It reads:

> Upon Termination, both Parties *shall remain liable for all obligations and liabilities accrued and not fully performed and paid under this Agreement during the Term*, and the obligations and liabilities set forth in Sections 6.5 and 7 shall survive any Termination of this Agreement whether or not such obligations occurred during the Term.

(FMA § 6.6 (emphasis added).)

**Termination**

26.     At the meeting of the Boards of Directors of the Funds (the "Boards") on December 27, 2012, the Boards voted to terminate the HDG Entities as Fund Manager, effective January 2, 2013.  (Garrison Decl. ¶ 4.)  On January 14, 2013, the Funds confirmed via letter that the HDG Entities were "terminated with effect on January 2, 2013."[1]  (Garrison Decl. ¶ 5.)

27.     The HDG Entities continued to work with the Funds, at the Funds' request, for 30 days after the Effective Date of their termination to ensure a smooth transition for the Fund Manager, as required by Section 6.4.3 of the FMA, and were thanked by the Funds for their cooperation.[2]  (Garrison Decl. ¶ 14.)

28.     To this date, the HDG Entities have not received any termination payments.  (Garrison Decl. ¶ 8.)

**Additional Background**

29.     During their ten-plus years as Fund Manager of the HSBC Amanah Global Properties Income Fund, the HDG Mansur entities managed 125 buildings totaling more than 11 million square feet and worth over $2 billion throughout the US and Europe; HDG Mansur entities

---

[1] Paul Dawe's January 14, 2013 letter to Harold D. Garrison is attached as Exhibit 2 to the Garrison Decl.

[2] *See* Deborah Hazell email to Harold D. Garrison, *et al.*,, dated January 10, 2013 and attached as Exhibit 3 to the Garrison Decl.

negotiated and executed over 1.5 million sq. ft. of leasing, $3 billion of re-financings and $1

billion of dispositions, all which required strict adherence to *Shariah*-compliant processes.

(Garrison Decl. ¶ 13.)

    Dated: New York, New York
           October 7, 2013

                                    Respectfully submitted,

                                    MINTZ LEVIN COHEN FERRIS
                                    GLOVSKY AND POPEO, P.C.


                                    *Francis Earley*
                                    Francis J. Earley
                                    John S. McMahon III
                                    MINTZ LEVIN COHEN FERRIS
                                    GLOVSKY AND POPEO, P.C.
                                    Chrysler Center
                                    666 Third Avenue
                                    New York, New York 10017
                                    (212) 935-3000
                                    (212) 983-3115 (Fax)
                                    *Attorneys for Defendants*