UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
GPIF-I EQUITY CO., LTD. and                           :
GPIF-I FINANCE CO., LTD.,                             :
                                                      :
      Plaintiffs-Counterclaim Defendants,           :
v.                                                    :   Case No. 13 Civ 547 (CM)
                                                      :
HDG MANSUR INVESTMENT SERVICES, INC.,                 :
HDGM ADVISORY SERVICES, LLC, and                      :
HAROLD D. GARRISON                                    :
                                                      :
      Defendants-Counterclaim Plaintiffs.            :
------------------------------------------------------------------ x


**GPIF-I EQUITY CO., LTD. AND GPIF-I FINANCE CO., LTD.'S
MEMORANDUM OF LAW IN FURTHER SUPPORT OF SUMMARY JUDGMENT
ON DEFENDANTS' COUNTERCLAIMS AND IN OPPOSITION TO
<u>DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**


WILMER CUTLER PICKERING
 HALE AND DORR LLP

Charles C. Platt
Jeremy S. Winer
Stephanie Shuler
Fiona J. Kaye
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    A.    The Court Has Already Found That Defendants Materially Breached the Fund Management Agreement. .................................................................................... 2

    B.    A Party's Material Breach of Contract Excuses the Non-Breaching Party's Performance Under the Contract, so the Contract Provisions That Defendants Seek to Enforce Are Irrelevant. .................................................................................... 4

    C.    The Funds Have Asserted Claims and Defenses That Provide Additional Bases for Denying Defendants' Motion for Summary Judgment. ..................................................... 6

CONCLUSION ............................................................................................................................ 8

# TABLE OF AUTHORITIES

## CASES

*Abacus Federal Savings Bank v. ADT Security Services, Inc.*,
 967 N.E.2d 666 (N.Y. 2012) ..................................................................................................6

*Acme American Repairs, Inc. v. Katzenberg*,
 No. 03 Civ. 4740, 2012 WL 3307426 (E.D.N.Y. Aug. 13, 2012) ............................................6

*Banc of America Securities LLC v. Solow Building Co. II, L.L.C.*,
 47 A.D.3d 239 (1st Dep't 2007) ...............................................................................................6

*Donovan v. Ficus Investments, Inc.*,
 No. 602715/2007, 2008 WL 4073639 (N.Y. Sup. Ct. Aug. 1, 2008) .......................................4

*F. & M. Schaefer Corp. v. Electronic Data Systems Corp.*,
 430 F. Supp. 988 (S.D.N.Y. 1977), *aff'd*, 614 F.2d 1286 (2d Cir. 1979). ................................7

*GPIF-Equity Co., Ltd. v. HDG Mansur Investment Services, Inc.*,
 No. 13 Civ. 647, 2013 WL 3989041 (S.D.N.Y. Aug. 1, 2013) ...................................... passim

*Lipsky v. Commonwealth United Corp.*,
 551 F.2d 887 (2d Cir. 1976) .....................................................................................................2

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
 500 F.3d 171 (2d Cir. 2007) .....................................................................................................5

*Official Committee of Unsecured Creditors of Verestar, Inc. v. American Tower Corp.
 (In re Verestar, Inc.)*,
 343 B.R. 444 (Bankr. S.D.N.Y. 2006) ......................................................................................6

*Southland Corp. v. Froelich*,
 41 F. Supp. 2d 227 (E.D.N.Y. 1999) .....................................................................................2, 3

## OTHER AUTHORITIES

Williston on Contracts § 63:3 ......................................................................................................2

Plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd. (the "Funds") respectfully submit this memorandum of law in further support of their motion for summary judgment and in opposition to the motion of HDG Investment Services, Inc. and HDG Advisory Services, LLC ("Defendants") for partial summary judgment.

## PRELIMINARY STATEMENT

Defendants admit that there is a pure question of law for the Court to decide: whether a "material breach" of the Fund Management Agreements ("FMAs" or "Agreements") by Defendants excuses any further performance by the Funds under the Agreements, including the payment of any termination fees that are sought in Defendants' counterclaims.

The Court should decide this question of law in the Funds' favor. There is no genuine dispute as to any material fact with respect to whether Defendants were in "material breach" of the Agreements. The Court has already found as a matter of law that Defendants were in material breach when they paid themselves more than $5.8 million in Fund assets to which they were not entitled. And there is no dispute that, under well-established law in New York, a material breach of contract by one party excuses any further performance by the other party under that contract.

Defendants' only response—other than to re-raise the settled question of whether they materially breached the Agreements—is to say that the established law on material breach should not apply here because the Agreements supposedly provide for the Funds to have continuing duties to perform *regardless* of Defendants' conduct. That argument, however, is inconsistent with the law on material breach, is unsupported by the Agreements, and would, if adopted, lead to a result that is contrary to public policy and manifestly unfair.

# ARGUMENT

### A. The Court Has Already Found That Defendants Materially Breached the Fund Management Agreement.

Defendants half-heartedly suggest in their Opposition that "there was no basis in the record" for the Court's finding of a material breach. Opp. Br. at 15.[1] Presumably, Defendants are referring to "the record" underlying the Court's decision dated August 1, 2013, in which the Court concluded that "Defendants were in material breach of the FMA by taking money to which they were not entitled." SJ Decision at *11.[2]

That conclusion is now law of the case, and Defendants cannot challenge in this motion the adequacy of "the record" supporting that earlier conclusion. Even if they could, the Court's decision that there was a "material breach" is well-supported.

A "material breach" of a contract is, as Defendants acknowledge, "one which . . . is so substantial as to defeat the purpose of the entire transaction." Opp. Br. at 3 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976)); *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 246 (E.D.N.Y. 1999) ("material breach" is one that goes to "the root of the matter or essence of the contract"); Williston on Contracts § 63:3 (a breach is material where the non-breaching party was "deprived of the benefit which he reasonably expected," and where "the behavior of the party failing to perform or to offer to perform" does not "comport[] with standards of good faith and fair dealing").

---

[1] Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Partial Summary Judgment on Liability of Their Breach of Contract Counterclaim [ECF No. 51]

[2] "SJ Decision" refers to *GPIF-Equity Co., Ltd. v. HDG Mansur Inv. Servs., Inc.*, No. 13 Civ. 647, 2013 WL 3989041 (S.D.N.Y. Aug. 1, 2013).

In *Southland*, for example, the court found a material breach where the defendant franchisee falsely underreported sales data in order to reduce the amount of money it would owe under its franchise agreement. 41 F. Supp. 2d at 231-32. The court concluded that the franchisee's "after-the-fact explanations" for the underreporting were "not particularly persuasive," and that the breach went to "the root of the matter or essence of the contract" with the franchisor. *Id.* at 247. "[T]he nature of the breaches," the court remarked, "are such that the relationship between [the parties] has been altered irrevocably and cannot be revived," and thus the breach was material. *Id.*

That was the clearly the case here. The FMA plainly provides for Defendants to invest, manage, and protect the Funds' assets, and to act in the best interests of the Funds while doing so. *See, e.g.*, FMA §§ 2.1, 2.3, 3, 4.1, 4.2, 4.3, 4.4, 4.5, and 4.6 (Sept. 16, 2013 Hazell Decl. Ex. A) [Dkt. No. 44]. Indeed, Defendants have admitted that they owed fiduciary and contractual duties to manage the Funds' assets for the benefit of the Funds and their respective shareholders. Defs.' Answer ¶ 2 [Dkt. No. 22].[3] In 2012, when they were supposed to be "manag[ing] the Funds' assets for the benefit of the Funds and their respective shareholders," Defendants instead helped themselves to over $5.8 million in Fund assets based on "[a] new reading of the FMAs" that "makes no sense at all," and by ignoring FMA provisions that "could not be clearer." SJ Decision at *4, *6, *9. When the Funds disputed Defendants' claimed entitlement to the money, Defendants refused to return the money or even to place it in escrow pending resolution of the dispute, forcing the Funds to initiate costly litigation. *See* Defs.' Answer ¶ 26. In short, the

---

[3] In their Rule 56.1 statement, Defendants "deny that the FMA stated that HDG Investment would act as a fiduciary." Defs' Counterstatement of Material Facts ¶ 6 [Dkt. No. 53]. But they have previously acknowledged that they did in fact owe fiduciary duties to the Funds. S*ee* Defs.' Answer ¶ 2 [Dkt. No. 22] (admitting that "the HDG Entities owed fiduciary and contractual duties to manage the Funds' assets for the benefit of the Funds and their respective shareholders").

- 3 -

Defendants violated the "root" or "essence" of the FMAs and "altered irrevocably" the parties' relationship when they misappropriated assets they were supposed to be protecting. *See Donovan v. Ficus Inv., Inc.*, No. 602715/2007, 2008 WL 4073639, at *10 (N.Y. Sup. Ct. Aug. 1, 2008) (breach of contract involving "misappropriation of [] investments" would "meet th[e] standard" for material breach under New York law).

It makes no difference whether, in the years prior to their misappropriation of Fund assets, Defendants performed under the Agreements. Opp. Br. at 14. Defendants have acknowledged that they have already paid themselves for the services they performed during the previous ten years. *See* Defs.' Counterclaim Compl. ¶ 20 [Dkt. No. 22] ("For over ten years, the HDG Entities provided all services required by the FMA and the HDG Entities paid themselves, pursuant to the terms of the FMA, for all fees and expenses incurred while managing the Funds"). Rather, the amounts at issue on their counterclaim relate to supposed payments due "upon their termination as Fund Manager," *Id.* ¶ 56—a termination that followed Defendants' material breach of the Agreements.[4]

> **B. A Party's Material Breach of Contract Excuses the Non-Breaching Party's Performance Under the Contract, so the Contract Provisions That Defendants Seek to Enforce Are Irrelevant.**

Defendants acknowledge that, if the Court properly found that a material breach of the FMAs occurred, that would "excuse[] non-performance under New York law." Opp. Br. at 3. However, they argue that this well-established rule should not apply because the FMAs supposedly provided for the Funds to have continuing duties to perform *even if* there was a

---

[4] To the extent that Defendants seek payment of the "Sponsor Co-Investment Payment of the HDG Mansur Sponsor," Opp. Br. at 9-10, the HDG Mansur Sponsor is HDG Capital Group, LLC, which is not a party to this lawsuit. *See* Sept. 16, 2013 Hazell Decl. Ex. C at 7 [Dkt. No. 44]; *see also* Oct. 21, 2013 Hazell Decl. ¶¶ 2-3 & Ex. A.

- 4 -

material breach. Opp. Br. at 9. Defendants cite no legal authority for this argument, and it fails in any event for at least three reasons.

*First*, Defendants' proposed exception would eviscerate the rule. Under New York law, *all* of the Funds' alleged duties to perform under the FMA are excused, including duties relating to the termination process under Section 6.2, and the calculation of a termination fee under 6.4, which Defendants cite in support of their position. *See, e.g.*, *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186-87 (2d Cir. 2007) ("performance under a contract is excused" where the agreement between the parties "turned out to be substantially different from what the parties had bargained for"). A rule that excused the non-breaching party's future performance under a contract would be meaningless if the Court first had to consult the contract to determine whether it excused performance in the event of a material breach.

*Second*, nothing in those Agreements provides that Defendants are entitled to termination payments in the event of a material breach. The provision Defendants cite (Opp. Br. at 4)—which governs an "event of default"—contemplates a breach that can be cured. *See* FMA § 6.1.1 (event of default includes a failure "to comply with any provision of this Agreement" that "is not cured within 30 days after notice"). It does not apply to a breach of contract, like the one here, that cannot be cured. After wrongfully taking (and refusing to return or place in escrow) over $5.8 million from the Funds, there is nothing that Defendants could have done (or apparently were willing to do) to "cure" their breach.

*Third*, even if the FMA were to be read as Defendants interpret it—to provide that Defendants "would be entitled to some termination payment" under the FMA even if they had engaged in "egregious conduct" such as "committing fraud, a crime involving moral turpitude or a felony" (Opp. Br. at 5)—it would be unenforceable. As a matter of New York law, courts will

not enforce a contract provision that allows a party to avoid the consequences of its own intentional misconduct.  *See generally Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*, 47 A.D.3d 239, 244 (1st Dep't 2007) ("Enforcement of such a provision is precluded when the misconduct for which it would grant immunity smacks of intentional wrongdoing") (citation omitted); *Abacus Fed. Savings Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666, 669 (N.Y. 2012) ("it is New York's public policy that a party cannot 'insulate itself from damages caused by grossly negligent conduct,' and thus "exculpatory clauses and liquidated damages clauses in contracts are not enforceable against allegations of gross negligence") (citation omitted).  Here, Defendants' interpretation of the FMAs would result in their being paid fees that they claimed to have "earned" as fund manager during a year in which they misappropriated more than $5.8 million from the Funds that they were tasked with managing, a truly perverse result.

   **C.** **The Funds Have Asserted Claims and Defenses That Provide Additional Bases for Denying Defendants' Motion for Summary Judgment.**

Even if the material breach rule did not apply here as a matter of law, the Funds have raised factual defenses that preclude Defendants' cross-motion for partial summary judgment, which argues that at least some amount of money is due to them as termination payments under the FMAs as a matter of law.  Opp. Br. at 9-13.

Defendants' counterclaim is barred, for example, by the doctrine of *in pari delicto,* which precludes Defendants from recovering where the damages they seek—payments arising out of their termination as fund manager—were brought about by their own wrongdoing.  *See Acme Am. Repairs, Inc. v. Katzenberg*, No. 03 Civ. 4740, 2012 WL 3307426, at *1 (E.D.N.Y. Aug. 13, 2012) (noting that *in pari delicto* defense is applicable to claims for breach of contract); *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343

B.R. 444, 480 (Bankr. S.D.N.Y. 2006) (dismissing breach-of-contract claim, noting that "the *in pari delicto* defense has been applied to bar relief in contract as well as tort").

Likewise, Defendants cannot prevail on their counterclaims because Defendants' repayment of the $5.8 million that they wrongfully took from the Funds is an implied condition precedent to their receiving any termination payments (assuming such payments were required after Defendants' material breach). That is, even if Defendants' material breach did not preclude their receipt of termination payments pursuant to the FMA, the fact-finder at trial can fairly imply that Defendants would not be entitled to receive any termination payments under the FMA unless and until they returned millions of dollars that they had misappropriated from the Funds, and expenses that they still owe the Funds. *See, e.g.*, *F. & M. Schaefer Corp. v. Electronic Data Sys. Corp.*, 430 F. Supp. 988, 992 (S.D.N.Y. 1977) (although contract called for computer system to be transferred to plaintiff upon termination of contract, "the court finds that the [ ] contract contains an implied condition precedent that requires [plaintiff] to pay all monthly charges [of which $1.3 million remained unpaid] before it would be entitled to get the system at the termination of the agreement"), *aff'd*, 614 F.2d 1286 (2d Cir. 1979).

These defenses raise genuine disputes of material facts that prevent judgment as a matter of law on Defendants' counterclaim. Specifically, at trial, the Funds will present admissible evidence, already in the record in this case, that Defendants' wrongdoing included breaches of fiduciary duties to the Funds and fraudulently taking millions of dollars in Fund assets, which they concealed from the Funds and then tried to cover-up. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be terminated as fund manager, and refused the Funds' request to

place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6]. Defendants have denied these allegations and claim to have factual defenses in response, thus these factual disputes will be among the issues to be resolved at the upcoming trial.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Funds' Motion for Summary Judgment on Defendants' Counterclaims and supporting papers, the Funds respectfully request that the Court grant summary judgment on Defendants' counterclaims and deny Defendants' motion for partial summary judgment on its counterclaim for breach of contract.

**Dated:** October 21, 2013
New York, New York

    /s/ Charles C. Platt_____

Charles C. Platt (NY Bar No. 1678325)
Jeremy S. Winer
Stephanie Shuler
Fiona J. Kaye
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

*Counsel for GPIF-I Equity Co., Ltd. And GPIF-I Finance Co., Ltd.*

- 8 -