UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD.,
                                                Plaintiffs,

-against-

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON

                                               Defendants.
----------------------------------------------------------------X

Case No. 13-00547 (CM)


# GPIF-I EQUITY CO., LTD. AND GPIF-I FINANCE CO., LTD.'S
# RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 56.1 STATEMENT


WILMER CUTLER PICKERING
 HALE AND DORR LLP

Charles C. Platt
Jeremy S. Winer
Stephanie Shuler
Fiona J. Kaye
7 World Trade Center
250 Greenwich Street
New York, New York 10007

Pursuant to Rule 56.1 of this Court's Local and Civil Rules, and for purposes of this motion only, Plaintiffs GPIF-I Equity Co., Ltd. ("Equity Co.") and GPIF Finance Co., Ltd. ("Finance Co." and, together with Equity Co., the "Funds") respectfully submit the following response in opposition to Defendants' Rule 56.1 statement of material facts in support of their motion for summary judgment on their breach-of-contract claim.[1]

## ADDITIONAL MATERIAL FACTS

**Provisions in the FMA**

14.     The Funds and the HDG Entities, all sophisticated parties, negotiated the FMA at arms' length.  (Garrison Decl. ¶ 2.)

**THE FUNDS' RESPONSE TO PARAGRAPH 14.**

The Funds do not dispute the facts stated in Paragraph 14 of Defendants' Rule 56.1 statement.

15.     Section 6 of the FMA discusses the circumstances under which the Funds may terminate the HDG Entities as Fund Manager and the parties' duties upon termination.

**THE FUNDS' RESPONSE TO PARAGRAPH 15.**

The Funds do not dispute that Section 6 of the FMA provides for circumstances under which the Funds may terminate the HDG Entities as Fund Manager or that Section 6 of the FMA discusses the parties' duties, pursuant to the FMA, upon termination, but dispute that Section 6 precludes or otherwise limits termination of the contract following a material breach.  *See* FMA § 6.4

---

[1] Defendants filed a "Counterstatement of Material Facts," which contains both their response to the statement of material facts that the Funds filed in support of their motion for summary judgment (paragraphs 1-13), as well as "Additional Material Facts" in support of their own motion for summary judgment (paragraphs 14-29).  *See* Dkt. Nos. 52 and 53.  The Funds' response responds only to the "Additional Material Facts" set forth in paragraphs 14-29 of Defendants' Rule 56.1 statement.

16. Section 6.2 of the FMA lists seven circumstances in which the Funds "shall have the right to Terminate this Agreement."

**<u>THE FUNDS' RESPONSE TO PARAGRAPH 16.</u>**

The Funds do not dispute that Section 6.2 of the FMA lists at least seven circumstances in which the Funds "shall have the right to Terminate this Agreement," but deny that Section 6.2 precludes or otherwise limits termination of the contract following a material breach. *See* FMA § 6.2.

17. According to the FMA, the Fund Manager may be terminated upon an Event of Default, which is defined to include either Bankruptcy or Failure to Comply. Section 6.1.1 defines Failure to Comply as "*[t]he failure of either Party to comply with any provision of this Agreement* if such failure is not cured within 30 days after notice thereof." (FMA § 6.1.1 (emphasis added).) The effective date of termination under this provision "shall be the day following the last day upon which a cure could be effected." (*Id.*)

**<u>THE FUNDS' RESPONSE TO PARAGRAPH 17.</u>**

Paragraph 17 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond. To the extent a response is required, the Funds do not dispute that the FMA provides that the Fund Manager may be terminated upon an Event of Default, that the effective date of termination under Section 6.1.1 of the FMA "shall be the day following the last day upon which a cure could be effected," or that the additional language quoted in Paragraph 17 of Defendants' Rule 56.1 statement appears in the FMA. However, the Funds do dispute that this provision governs, or even addresses, a material breach of the contract. *See* FMA § 6.1.

18.     According to the FMA, the Fund Manager may be terminated For Cause, upon "(i) the commission of an act constituting a breach of fiduciary duty . . . or gross negligence or willful misconduct by the Fund Manager; . . . (ii) the commission of an act constituting fraud or dishonesty by the Fund Manager; . . . (iii) the commission by the Fund Manager of a misdemeanor involving moral turpitude or a felony."  (FMA § 6.2(b).)

**THE FUNDS' RESPONSE TO PARAGRAPH 18.**

Paragraph 18 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond.  To the extent a response is required, the Funds do not dispute the facts stated in Paragraph 18 of Defendants' Rule 56.1 statement, except the Funds do dispute that this provision governs, or even addresses, a material breach of the contract.  *See* FMA § 6.2.

19.     According to the FMA, the Funds may make an Elective Termination of the Fund Manager "only if there shall have been a unanimous vote of the Boards of Directors and the unanimous vote of the Investment Committee to effect a termination pursuant to this clause (d), in which event the effective date of Termination shall be the day set forth in the notice of such Termination."  (FMA § 6.2(d).)

**THE FUNDS' RESPONSE TO PARAGRAPH 19.**

Paragraph 19 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond.  To the extent a response is required, the Funds do not dispute that an Elective Termination of the Fund Manager pursuant to the FMA requires, *inter alia*, that there be a unanimous vote of the Boards of Directors and a unanimous vote of the Investment Committee, and do not dispute that the effective date of such a Termination shall be the day set forth in the notice of such Termination.  However, the Funds do dispute that this provision governs, or even addresses, a material breach of the contract.  *See* FMA § 6.2.

20. Section 6.4.1 of the FMA lists the Funds' duties upon termination, namely a payment to the Fund Manager of a certain amount which depends on which of Termination Events A through D, as defined in Section 6.2 of the FMA, applies. In relevant part, an Elective Termination constitutes a Termination Event A, a Termination for Event of Default constitutes a Termination Event B, and a termination For Cause constitutes a Termination Event C.

**THE FUNDS' RESPONSE TO PARAGRAPH 20.**

Paragraph 20 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond. To the extent a response is required, the Funds do not dispute that Section 6.4.1 of the FMA lists certain of the Funds' duties upon termination of the FMA, but do dispute that the Funds owe any such duties to Defendants or that Defendants otherwise can enforce the FMA under this Section in the event of a material breach of contract. *See* FMA § 6.4. The Funds also dispute, based on Defendants' material breach of the FMA and the admissible evidence of breach of fiduciary duty and fraud by the Defendants that they expect to present at trial, that any termination payment would be due under this Section. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be terminated as fund manager, and refused the Funds' request to place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6].

21. A termination payment is due for each of Termination Payments A through C. (FMA § 6.4.1.)

**THE FUNDS' RESPONSE TO PARAGRAPH 21.**

Paragraph 21 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond. To the extent a response is required, the Funds dispute that any termination payments are due to Defendants, or that Defendants otherwise can enforce the FMA, due to Defendants' material breach of the FMA and based on the admissible evidence of breach of fiduciary duty and fraud by the Defendants that the Funds expect to present at trial. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be terminated as fund manager, and refused the Funds' request to place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6].

22.  Each of the Termination Events requires the Funds to return to the HDG Entities funds relating to their investment in GPIF Co-Investment, LLC.  FMA § 6.4.1(a)-(c).)  GPIF Co-Investment, LLC was a joint venture entered into by the Funds and the HDG Entities in 2002 in which third-party defendant HSBC paid an 80 percent share and the HDG Entities paid a 20 percent share.  (Garrison Decl. ¶ 9.)  These were monies invested by the HDG Entities and they were entitled to have their own monies returned under the FMA at the time of termination regardless of why the termination occurred.  (*Id.*)  The total value of GPIF Co-Investment, LLC was $1,657,000 as of September 2012.  (*Id.*)

**THE FUNDS' RESPONSE TO PARAGRAPH 22.**

Paragraph 22 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond. To the extent a response is required, the Funds dispute that any termination payments are due to Defendants, or that Defendants otherwise can enforce the FMA,

due to Defendants' material breach of the FMA and based on the admissible evidence of breach of fiduciary duty and fraud by the Defendants that the Funds expect to present at trial. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be terminated as fund manager, and refused the Funds' request to place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6]. The Funds also dispute that the "total value of GPIF Co-Investment, LLC was $1,657,000 as of September 2012," that GPIF Co-Investment, LLC was a joint venture entered into by the Funds and the HDG Entities in 2002, that HSBC Securities (USA) Inc. paid an 80 percent share or that either of the HDG Entities that are parties to this lawsuit paid a 20 percent share. *See* Oct. 21, 2013 Hazell Declaration ¶¶ 2-3 & Ex. A.

   23. Each of the Termination Events requires the Funds to pay the HDG Entities, on the effective date of Termination, an amount equal to "the Base Termination Payment." (FMA § 6.4.1(a)-(c).) The "Base Termination Payment" is defined as including, among other things, various fees already accrued and owed to the Fund Manager, including a "pro rata share of the Fund Administration Fee for the calendar quarter in which such Termination shall occur" (Schedule X, Base Termination Payment, Termination Payment Element (j)). This is a fee paid to the HDG Entities every calendar quarter as a payment for serving as Fund Manager pursuant to a formula set forth in the FMA. (Garrison Decl. ¶ 11.)

**THE FUNDS' RESPONSE TO PARAGRAPH 23.**

  Paragraph 23 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond. To the extent a response is required, the Funds dispute that any termination payments are due to Defendants, or that Defendants otherwise can enforce the FMA,

7

due to Defendants' material breach of the FMA and based on the admissible evidence of breach of fiduciary duty and fraud by the Defendants that the Funds expect to present at trial. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be terminated as fund manager, and refused the Funds' request to place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6].

24. The "Base Termination Payment" includes fees owed on properties that were sold prior to the effective date of termination for which the HDG Entities did not receive their full Investment Disposition Fee pursuant to the FMA. (Schedule X, Base Termination Payment, Termination Payment Element (b).) For instance, the EG Hemel property located in the United Kingdom was sold on December 20, 2012 for £6,000,000. (Garrison Decl. ¶ 10.) (The HDG Entities have not been paid the full amount of the Investment Disposition Fee due to them for this property. (*Id.*)

**THE FUNDS' RESPONSE TO PARAGRAPH 24.**

Paragraph 24 of Defendants' Rule 56.1 statement contains legal conclusions to which the Funds need not respond. To the extent a response is required, the Funds dispute that any termination payments or Investment Disposition Fees are due to Defendants, or that Defendants otherwise can enforce the FMA, due to Defendants' material breach of the FMA and based on the admissible evidence of breach of fiduciary duty and fraud by the Defendants that the Funds expect to present at trial. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be

terminated as fund manager, and refused the Funds' request to place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6]. The Funds do not dispute that the EG Hemel property located in the United Kingdom was sold on December 20, 2012 for £6,000,000.

    25.    Section 6.6 of the FMA is titled "Survival." It reads:

> Upon Termination, both Parties *shall remain liable for all obligations and liabilities accrued and not fully performed and paid under this Agreement during the Term*, and the obligations and liabilities set forh in Sections 6.5 and 7 shall survive any Termination of this Agreement whether or not such obligations occurred during the Term.

(FMA § 6.6 (emphasis added).)

**THE FUNDS' RESPONSE TO PARAGRAPH 25.**

    The Funds do not dispute that the language that Defendants quote in Paragraph 25 of their Rule 56.1 statement appears in Section 6.6 of the FMA. However, the Funds do dispute that this provision governs, or even addresses, a material breach of the contract. *See* FMA 6.6. The Funds dispute that this provision could be used to support any termination payments based on the admissible evidence of breach of fiduciary duty and fraud by the Defendants that the Funds expect to present at trial. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be terminated as fund manager, and refused the Funds' request to place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6].

**Termination**

    26.    At the meeting of the Boards of Directors of the Funds (the "Boards") on December 27, 2012, the Boards voted to terminate the HDG Entities as Fund Manager, effective

January 2, 2013.  (Garrison Decl. ¶ 4.)  On January 14, 2013, the Funds confirmed via letter that the HDG Entities were "terminated with effect on January 2, 2013."  (Garrison Decl. ¶ 5.)

**THE FUNDS' RESPONSE TO PARAGRAPH 26.**

The Funds do not dispute the facts stated in Paragraph 26 of Defendants' Rule 56.1 statement.

27. The HDG Entities continued to work with the Funds, at the Funds' request, for 30 days after the Effective Date of their termination to ensure a smooth transition for the Fund Manager, as required by Section 6.4.3 of the FMA, and were thanked by the Funds for their cooperation.  (Garrison Decl. ¶ 14.)

**THE FUNDS' RESPONSE TO PARAGRAPH 27.**

The Funds do not dispute that certain employees of the HDG Entities worked with the Funds, at the Funds' request, to assist in the transition to a new fund manager, and do not dispute that Deborah Hazell, a member of the Boards of Directors of the Funds, sent an email to Douglas Etter of the HDG Entities in which she thanked Mr. Etter for assisting the Funds in their transition to a new fund manager.

28. To this date, the HDG Entities have not received any termination payments. (Garrison Decl. ¶ 8.)

**THE FUNDS' RESPONSE TO PARAGRAPH 28.**

The Funds do not dispute that they have not paid Defendants any "termination payments" that Defendants contend they are entitled to receive pursuant to the FMA.

**Additional Background**

29. During their ten-plus years as Fund Manager of the HSBC Amanah Global Properties Income Fund, the HDG Mansur entities managed 125 buildings totaling more than 11

million square feet and worth over $2 billion throughout the US and Europe; HDG Mansur entities negotiated and executed over 1.5 million sq. ft. of leasing, $3 billion of re-financings and $1 billion of dispositions, all which required strict adherence to *Shariah*-compliant processes. (Garrison Decl. ¶ 13.)

**THE FUNDS' RESPONSE TO PARAGRAPH 29.**

The Funds do not dispute the facts stated in Paragraph 29 of Defendants' Rule 56.1 statement and further state that Defendants have acknowledged that for over ten years, Defendants paid themselves all fees and expenses incurred while serving as fund manager for the Funds.  However, the Funds do dispute that this fact has any relevance to the counterclaims asserted by Defendants.  The Funds also dispute that these facts could support any termination payments to Defendants, or any enforcement of the FMA, based on the admissible evidence of breach of fiduciary duty and fraud by the Defendants that the Funds expect to present at trial. *See, e.g.*, Jan. 24, 2013 Hazell Decl. ¶¶ 11-13 (noting that Defendants engaged in improper accounting practices designed to conceal their misappropriation of Fund assets, claimed to have taken disputed fees because they were concerned that they would be terminated as fund manager, and refused the Funds' request to place disputed fees in escrow pending resolution of the parties' dispute) [Dkt No. 6].

| | |
|---|---|
| Dated: New York, New York<br>October 21, 2013 | WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br><br>By:  \_/c/ Charles C. Platt\_\_\_\_\_<br>     Charles C. Platt<br>     Jeremy S. Winer<br>     Stephanie Shuler<br>     Fiona J. Kaye<br>  7 World Trade Center<br>  250 Greenwich Street<br>  New York, New York 10007<br>  Tel: (212) 230-8800<br>  Fax: (212) 230-8888<br><br>  *Attorneys for Plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd.* |

12