UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GPIF-I EQUITY CO., LTD. and                          :
GPIF-I FINANCE CO., LTD.,                            :
                                                     :
      Plaintiffs-Counterclaim Defendants,  :
                                                     :
v.                                                   :   **Case No. 13 Civ 547 (CM)**
                                                     :
HDG MANSUR INVESTMENT SERVICES, INC.,                :
HDGM ADVISORY SERVICES, LLC, and                     :
HAROLD D. GARRISON                                   :
                                                     :
      Defendants-Counterclaim Plaintiffs.    :
------------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY
ON THEIR BREACH OF CONTRACT COUNTERCLAIM**

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Francis J. Earley
John S. McMahon III
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
FEarley@mintz.com
TMcMahon@mintz.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 1

    1.    Plaintiffs Fail to Refute Defendants' Argument that the Plain Language of the FMA's Termination Provision and Survival Clause Must Be Enforced ........... 1

    2.    There Was No "Material Breach" Because Defendants Substantially Performed ................................................................................................................. 6

    3.    There Are No Genuine Issues of Material Fact ....................................................... 8

CONCLUSION .................................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*,
    47 A.D.3d 239 (1st Dep't 2007) ...................................................................................5

*Ginett v. Computer Task Group*,
    962 F.2d 1085 (2d Cir. 1992) ......................................................................................9

*Hadden v. Consolidated Edison Co.*,
    34 N.Y.2d 88 (1974) ..........................................................................................4, 6, 7

*Hilgendorff v. Hilgendorff*,
    241 A.D.2d 481 (2d Dep't 1997) ................................................................................9

*In re Leasing Consultants Inc.*,
    592 F.2d 103 (2d Cir. 1979) ......................................................................................9

*In re Stillwater Capital Partners Inc. Litig.*,
    851 F. Supp. 2d 556 (S.D.N.Y. 2012) .........................................................................8

*Metro. Switch Bd. Mfg. Co., Inc. v. B & G Elec. Contrs., Div. of B & G Indus., Inc.*,
    96 A.D.3d 725 (2d Dep't 2012) ..................................................................................3

*Prod. Res. Group v. Martin Prof'l.*,
    907 F. Supp. 2d 401 (S.D.N.Y. 2012) .........................................................................3

*Refinement Int'l Co. v. Eastbourne N.V.*,
    25 F.3d 105 (2d Cir. 1994) ........................................................................................2

*Riviera Fin. of Tex., Inc. v. Capgemini US, LLC*,
    511 Fed. Appx. 92 (2d Cir. 2012) ..............................................................................6

*Sammy v. First Am. Tit. Ins. Co. of N.Y.*,
    2012 N.Y. Misc. LEXIS 3550 (N.Y. Sup. Ct. July 9, 2012) .......................................9

*SBIW, Inc. v. GE*,
    2013 WL 5338525 (S.D.N.Y. Sept. 24, 2013) ...........................................................3

*Summit Props. Int'l, LLC v. LPGA*,
    2010 WL 2382405 (S.D.N.Y. June 14, 2010) ...................................................2, 3, 6

*Westminster Sec. Corp. v. Petrocom Energy Ltd.*,
    456 Fed. Appx. 42 (2d Cir. 2012) ..............................................................................3

Defendants-Counterclaim Plaintiffs HDG Mansur Investment Services, Inc. ("HDG Investment"), HDGM Advisory Services, LLC (together with HDG Investment, the "HDG Entities"), and Harold D. Garrison (together with the HDG Entities, "Defendants") respectfully submit this Reply Memorandum of Law, along with the Supplemental Declaration of Harold D. Garrison, dated October 30, 2013 ("Supp. Garrison Decl."), the Declaration of John S. McMahon III, dated October 30, 2013 ("McMahon Decl."), and the exhibits attached thereto, in support of their cross-motion for partial summary judgment on liability on their breach of contract counterclaim against Plaintiffs-Counterclaim Defendants GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd. (collectively, the "Funds" or "Plaintiffs").

## PRELIMINARY STATEMENT

The termination provision and survival clause in the Fund Management Agreement ("FMA") plainly require the Funds to pay a termination payment to Defendants regardless of why they were terminated. In addition, Defendants did not commit a "material breach" of the FMA because they substantially performed under it. In their opposition, Plaintiffs attempt to refute both of these points. We explain below why Plaintiffs' attempt is unavailing.

## ARGUMENT

1. <u>Plaintiffs Fail to Refute Defendants' Argument that the Plain Language of the FMA's Termination Provision and Survival Clause Must Be Enforced</u>

Defendants demonstrated in their moving brief that the FMA plainly calls for them to receive a termination payment even if they were terminated for material breach or any other reason. Defendants noted that the FMA was a contractual agreement freely entered into by two sophisticated parties and that the contract's plain language trumps any rule that might otherwise apply. Plaintiffs raise a series of futile arguments that fail to refute this.

1

*First*, Plaintiffs claim that a "rule that excused the non-breaching party's future performance under a contract would be meaningless if the Court first had to consult the contract to determine whether it excused performance in the event of a material breach." (Opp. Br. at 5.) Plaintiffs' assertion is incorrect.

As an initial matter, there are many "rules" that do not apply when two sophisticated parties contractually agree otherwise. For instance, in *Refinement Int'l Co. v. Eastbourne N.V.*, 25 F.3d 105 (2d Cir. 1994), the court rejected the plaintiff's argument that a "default rule" under New York contract law entitled it to exercise offset despite a contractual provision to the contrary, holding:

> It is not, and could not plausibly be, contended that New York law provides a default rule that prevails over an explicit contractual provision that bars offset.
>
> . . . As the New York Court of Appeals has stated: "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."

*Id*. at 108 (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990)). The mere fact that parties can contract around default rules – which requires courts to look at a contract before applying them – does not render default rules meaningless.

More specifically, courts uphold termination provisions that call for a breaching party to receive a termination payment if they are terminated for a material breach of contract, notwithstanding this general rule. *See, e.g.*, *Summit Props. Int'l, LLC v. LPGA*, 2010 WL 2382405 (S.D.N.Y. June 14, 2010). In *Summit*, the non-breaching party argued that it was excused from making a post-termination payment called for under a contract after it terminated the contract following the other side's material breach. The court disagreed, explaining that the plain language of the contract was controlling:

2

> If the meaning of a contract is clear on its face, "a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 570, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002).
>
> The Tail provision applies following "expiration or termination" of the Agreement. . . .
>
> The clear language of the contract contemplates that termination will include termination for breaches of the Agreement. This interpretation of the Agreement is consistent with the overall intent of the parties . . .

*Id*. at *8-9. The court there granted the breaching party's motion for partial summary judgment in its entirety. *Id*. at *9.

Similarly here, the termination provision in the FMA was agreed to by two sophisticated parties and must be enforced regardless of whether there was a material breach. This also is true of the survival clause, which is "presumptively enforceable." *Prod. Res. Group v. Martin Prof'l.*, 907 F. Supp. 2d 401, 411 (S.D.N.Y. 2012); *see also Westminster Sec. Corp. v. Petrocom Energy Ltd.*, 456 Fed. Appx. 42, 43 (2d Cir. 2012) (affirming a District Court's decision to uphold an arbitration award because "the survival clause extended the tail provision in the event of termination or expiration").

Lastly, even where the default rule applies (*i.e.*, in the absence of a contractual provision to the contrary and where there was a material breach), the breaching party still is entitled to be paid for work that it completed prior to the termination of the contract. *See, e.g.*, *SBIW, Inc. v. GE*, 2013 WL 5338525, at *12 (S.D.N.Y. Sept. 24, 2013) (holding that the breaching party was "entitled to be paid for work reflected in purchase orders that it did complete"); *Metro. Switch Bd. Mfg. Co., Inc. v. B & G Elec. Contrs., Div. of B & G Indus., Inc.*, 96 A.D.3d 725, 726 (2d Dep't 2012) (holding that the breaching party was entitled to "set off, against the [non-breaching party's] recovery, the unpaid balance of what was due to it under the contract"). As Defendants

3

showed in their moving papers, the termination payments due to them include the return of their co-investment and payment for dispositions on which they materially performed and are due and owing under the contract. (Moving Br. at 12, Garrison Decl. ¶ 10.) It would result in a windfall for Plaintiffs and be contrary to New York law if they were able to avoid returning to Defendants the value of their co-investment and payment for services already owed. *See Hadden v. Consolidated Edison Co.*, 34 N.Y.2d 88, 96 (1974) ("Con Edison has received the benefit of his 37 years of employment, and to excuse its obligation to pay pension benefits at this point, on the basis of a breach of constructive condition, would create both forfeiture and unjust enrichment. . . . In so stating, we do not condone his actions or disregard the fact that his breach was willful.").

*Second*, Plaintiffs claim that nothing in the Agreement entitles Defendants to a termination payment in the event of a material breach because the contract's Event of Default provision "contemplates a breach that can be cured." (Opp. Br. at 5.) This argument is contrary to the plain language of the agreement. Defendants demonstrated in their moving brief that the FMA specifically lays out every conceivable scenario in which the Fund Manager may be terminated (grouped in Termination Event A, Termination Event B, or Termination Event C) and lays out exactly what the termination payment should be. (Moving Br. at 9-11.) Plaintiffs do not even attempt to refute this, and they cannot plausibly try to do so.

*Third*, Plaintiffs say that (i) Defendants "interpret" the contract to give them the right to receive a termination payment even if they were to commit fraud, breach a fiduciary duty, or commit a misdemeanor of moral turpitude or a felony; and (ii) that even if the contract says this, "courts will not enforce a contract provision that allows a party to avoid the consequences of its own intentional misconduct." (Opp. Br. at 5-6.)

4

Contrary to Plaintiffs' argument, there is nothing at all "interpretative" about Defendants' reading – this is exactly what the contract says. Section 6.2(b) of the FMA provides that the Fund Manager may be terminated For Cause, upon "(i) the commission of an act constituting a breach of fiduciary duty owed by the Fund Manager to the Fund Companies or gross negligence or willful misconduct by the Fund Manager in the performance of its duties hereunder or under any other Transaction Document; (ii) the commission of an act constituting fraud or dishonesty by the Fund Manager . . . ; or (iii) the commission by the Fund Manager of a misdemeanor involving moral turpitude or a felony." (FMA § 6.2(b).)  And the FMA still requires Plaintiffs to pay a termination payment to Defendants where a Termination For Cause occurs. (Moving Br. at 10-11.)  This is the FMA's explicit language to which both parties agreed.

Moreover, the rule to which Plaintiffs refer does not apply here. That rule relates to the enforceability of limitations of liabilities provisions in contracts. *See, e.g.*, *Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*, 47 A.D.3d 239, 245 (1st Dep't 2007) ("The common business practice of limiting liability by restricting or barring recovery by means of an exculpatory provision, although disfavored by the law and closely scrutinized by the courts is accorded judicial recognition where it does not offend public policy.").  In other words, the rule applies where a party attempts to contractually immunize itself from liability for intentional misconduct. But here, Defendants did not do this:  Plaintiffs sued Defendants for an alleged breach of contract and this Court has granted partial summary judgment to the Funds on their $5.8 million breach of contract claim.  So, not only were Defendants not immunized, they were successfully sued on the basis of their alleged misconduct.

Notably, this rule does not, as Plaintiffs argue, relate to whether one party to an agreement can commit its own breach of a different provision and use the other party's breach as

5

a basis to immunize itself from liability.  Indeed, courts enforce termination provisions and survival clauses even when the breaching party is seeking enforcement of them, negating the principle that Plaintiffs incorrectly say applies here.  *See, e.g.*, *Summit Props.,* 2010 WL 2382405 at *9 (granting partial summary judgment to the breaching party on its claim for post-termination payments).

        2.        <u>There Was No "Material Breach" Because Defendants Substantially Performed</u>

Plaintiffs assert that Defendants committed a "material breach" which would excuse their non-performance under New York law but provide no analysis of the factors used by New York courts to evaluate whether a breaching party has substantially performed.  These factors include "the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance." *Riviera Fin. of Tex., Inc. v. Capgemini US, LLC*, 511 Fed. Appx. 92, 95 (2d Cir. 2012) (internal quotation marks omitted).

Defendants demonstrated in their moving brief that the HDG Entities substantially performed under the FMA because they performed as Fund Manager over a prolonged period of time with significant results.  Plaintiffs do not dispute that during the HDG Entities' ten-plus years as Fund Manager, they managed 125 buildings totaling more than 11 million square feet and worth over $2 billion throughout the US and Europe, and negotiated and executed over 1.5 million square feet of leasing, $3 billion of re-financings and $1 billion of dispositions.  (Pls.' Response to Defs.' 56.1 Statement ¶ 29.)  A breach of contract by the HDG Entities in Year 11 of the FMA would not diminish the fact that they performed successfully for a lengthy period of time and therefore "substantially performed" pursuant to the agreement.  *See, e.g.*, *Hadden*, 34

N.Y.2d at 97 (1974) ("Weighing the factors involved we find that Hadden's performance has been substantial . . . . The value of Hadden's performance to Con Edison over the course of nearly four decades is not substantially impaired by his disloyalty in some of those later years. In so stating, we do not condone his actions or disregard the fact that his breach was willful.").

Plaintiffs now claim that "it makes no difference whether, in years prior to their misappropriation of Fund assets, Defendants performed under the Agreements." (Opp. Br. at 4.) But that is plainly incorrect: the extent to which a party has substantially performed under a contract is *precisely the assessment* that a court must make to determine whether there was a "material breach" under New York law that excuses non-performance under that contract. Here, Plaintiffs do not dispute the fact that Defendants performed under the contract for more than ten years and offer no argument as to why this would not constitute substantial performance under the contract.

Plaintiffs also state that Defendants have already "paid themselves for the services they performed during the previous ten years." (Opp. Br. at 4.) Plaintiffs do not discuss how this relates to whether the HDG Entities substantially performed under the contract; in fact, this further confirms that Defendants did substantially perform.

In addition, contrary to Plaintiffs' implication, Defendants' damages under the termination provision do not relate only to work performed in the last year before they were terminated. As Defendants demonstrated in their moving brief, part of the termination payment they are owed is the return of their investment in Co-Investment, LLC, which Defendants most recently estimated to be worth $1,657,000. (Moving Br. at 10; Garrison Decl. ¶ 9.) Plaintiffs attempt to justify their refusal to return to the HDG Entities the value of their investment in Co-Investment, LLC by stating: "To the extent that Defendants seek payment of the 'Sponsor Co-

7

Investment Payment of the HDG Mansur Sponsor,' the HDG Mansur Sponsor is HDG Capital Group, LLC, which is not a party to this lawsuit." (Opp. Br. at 4 n.4.) But this fact is a red herring and completely irrelevant: the FMA specifically requires Plaintiffs to pay *to Defendant HDG Investment* (the HDG Entity which was the party to the agreement) "an amount equal to the Sponsor Co-Investment Payment of the HDG Mansur Sponsor" upon termination for any reason. (FMA ¶ 6.4.) As a result, HDG Investment both has standing to seek this payment and is entitled to receive it.

Moreover, as noted in their moving brief, Defendants continued to perform under the FMA during a 30-day transition period after the effective date of their termination and were thanked for their cooperation by the Plaintiffs. (Moving Br. at 14; Garrison Decl. ¶ 14 and Ex. 3.) Defendants cooperated pursuant to the Plaintiffs' request under Section 6.4 of the FMA, which is the section of the FMA discussing termination. (Suppl. Garrison Decl. ¶ 2.) This section established a 30-day cooperation period following termination and also set forth the termination payment for every possible termination event. (FMA ¶ 6.4.3.) New York law does not permit a party "to continue with the contract, continue to receive benefits from it, and thereafter bring an action for rescission or total breach." *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 570 (S.D.N.Y. 2012). The fact that Plaintiffs demanded and received benefits under Section 6.4 of the FMA following their termination of the HDG Entities as Fund Manager undercuts their argument that the termination payment requirement of the very same section should not be enforced.

    3.    <u>There Are No Genuine Issues of Material Fact</u>

At the beginning of their opposition, Plaintiffs acknowledge that the instant motion involves a legal dispute that can be resolved as a matter of law. (Opp. Br. at 1.) However,

Plaintiffs then raise two arguments for why there is an issue of fact that precludes summary judgment.

First, Plaintiffs raise *in pari delicto*. But *in pari delicto* does not cover just any kind of wrongdoing. If it did, then any actionable counterclaim based on a contract would be enough to defend from a breach of contract suit. Rather, *in pari delicto* applies only where parties acted together in contracts that were illegal or had wrongful intent, such as "the highwayman who sued his partner for an accounting of the profits of the robbery they committed together." *Sammy v. First Am. Tit. Ins. Co. of N.Y.*, 2012 N.Y. Misc. LEXIS 3550, at *8 (N.Y. Sup. Ct. July 9, 2012)[1] (*quoting Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004)). In other words, it is a "doctrine [that] denies judicial relief, in the form of either enforcement or rescission, to parties to illegal contracts." *In re Leasing Consultants Inc.*, 592 F.2d 103, 110 (2d Cir. 1979). It is not a proper defense to the breach of contract claim here because a contract which "is lawful on its face and which does not contemplate or necessarily entail unlawful conduct in its performance is enforceable by the promise even though he engages in unlawful activity in the agreement's performance." *Hilgendorff v. Hilgendorff*, 241 A.D.2d 481, 481-82 (2d Dep't 1997).

Second, Plaintiffs contend that "Defendants' repayment of the $5.8 million that they wrongfully took from the Funds is an implied condition precedent to their receiving any termination payments (assuming such payments were required after Defendants' material breach)." (Opp. at 7.) But this principle has no relevance here because "conditions are not favored under New York law, and in the absence of unambiguous language, a condition will not be read into an agreement." *Ginett v. Computer Task Group*, 962 F.2d 1085, 1099-1100 (2d Cir.

---

[1] Pursuant to Judge Colleen McMahon's Individual Practices and Procedures, a copy of this case is attached as Exhibit 1 to the McMahon Decl.

9

1992). There is nothing that indicates that the Funds' obligation to pay termination fees under the FMA is predicated on any implied condition, and the essence of contractual interpretation is not to read anything into the contract that is not expressly written.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' cross-motion for partial summary judgment on liability on their breach of contract counterclaim.

Dated: October 30, 2013　　　　　　MINTZ LEVIN COHN FERRIS
　　　　　New York, New York　　　　　GLOVSKY AND POPEO, P.C.

By: _____
Francis J. Earley
John S. McMahon III
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
(212) 935-3000
FEarley@mintz.com
TMcMahon@mintz.com

*Attorneys for Defendants HDG Mansur Investment Services, Inc., HDGM Advisory Services, Inc., and Harold D. Garrison*

10