# MINTZ LEVIN

Francis J. Earley | 212 692 6230 | fearley@mintz.com

Chrysler Center
666 Third Avenue
New York, NY 10017
212-935-3000
212-983-3115 fax
www.mintz.com

November 15, 2013

**VIA ECF**

Honorable Andrew J. Peck
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *GPIF-I Equity Co., Ltd., et al. v. HDG Mansur Investment Services, Inc., et al.*,
Case No. 13 Civ. 547 (CM)

Dear Judge Peck:

On behalf of Defendants in the above-captioned action, we submit this letter brief to address Plaintiffs' incorrect designation of privilege for a number of documents where Jeffrey Haroldson appears as either sender or recipient on Plaintiffs' privilege log. The time period in question is just over one month, and during this time – December 17, 2012 through January 31, 2013 – Mr. Haroldson was an employee of HDG Mansur Capital Group, LLC ("HDG"). The documents that have been produced by both parties confirm that Mr. Haroldson was an employee for HDG during this time period and in that capacity only performed certain services for the Funds.

At no time prior to January 31, 2013 was Mr. Haroldson legal counsel for the Funds. But even if he was, as Your Honor pointed out on November 1, 2013 regarding Mr. Haroldson, "while that may retain privilege to the outside world…it would not appear that there is a basis for withholding that document from the defense." (Nov. 1 Tr. 27:17-20, excerpt in relevant part attached as Ex. 1.)

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON | ISRAEL

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Page 2

## BACKGROUND

In January 2012, Mr. Haroldson signed an Employment Agreement (the "Agreement") with HDG to continue his services as an executive for the company. (*See* HDG-GPIF0244306, attached hereto as Ex. 2.) Pursuant to this Agreement, Mr. Haroldson performed a number of services both for HDG and for the Funds, notably as a member of the GPIF Investment Committee and as a member of the HDGM Investment Committee. Mr. Haroldson's relationship to the Funds was exclusively through his employment with HDG as expressed in the Agreement:

> The Executive shall consult with and take direction from the Chairman prior to making any communications to anyone outside the Company in any way related to GPIF.

(Agreement § 2.2.)

In August 2012, HDG and Mr. Haroldson executed an amendment to the Agreement ("Amended Agreement") to expand his role with HDG. In addition to the responsibilities listed in Schedule A of the Agreement, Mr. Haroldson agreed to take over for Gail Burlant and provide certain "GPIF Legal Services." Importantly, the Amended Agreement explicitly left section 2.2 of the Agreement in effect such that Mr. Haroldson was required to continue to consult with the Chairman of HDG regarding his communications with and about the Funds.

> <u>Additional Duties.</u> *In addition to the other duties assigned to the Executive pursuant to Section 2 of the Agreement*, including those set out in Exhibit A thereto, the Executive shall assume responsibility for performing the GPIF Legal Services.

(Amended Agreement § 1 (emphasis added), attached as Ex. 3.)

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Page 3

## ARGUMENT

Both the Agreement and Amended Agreement emphasized that Mr. Haroldson's relationship with the Funds existed solely as a representative of the Fund Manager and executive of HDG. For Plaintiffs now to argue that Mr. Haroldson afforded the Funds an exclusive privilege (that excludes HDG) is disingenuous on a number of levels. First, as outlined above, Mr. Haroldson was an employee of HDG and in that role only did he perform GPIF Legal Services. Second -- and dispositive -- members of the Boards of Directors for the Funds recognized this fact and communicated it to each other, and therefore had no reasonable expectation that communications with Mr. Haroldson were confidential, at least not from HDG.

It is well-established that an "expectation of privacy or confidentiality" is necessary for the attorney-client privilege to apply. *See, e.g., United States v. Kerik*, 531 F. Supp. 2d 610, 617 (S.D.N.Y. 2008); *Long v. Marubeni Am. Corp.*, 2006 U.S. Dist. LEXIS 76594 (S.D.N.Y. Oct. 19, 2006). As *Long* held:

> Although the Court finds that 15 of the e-mail messages noted in the plaintiffs' privilege log are attorney-client communications or attorney-client-related communications, as explained above, for the reasons that follow, the Court is not persuaded that the plaintiffs have established that these communications were confidential. *Confidentiality is an aspect of a communication that must be shown to exist to bring the communication within the attorney-client communication privilege.* When the confidentiality element is not shown to exist, the assertion of the attorney-client privilege to safeguard a communication from disclosure, is improper.

Id. at *7-8. In *Long*, the court found that the communications at issue were properly regarded as attorney-client communications, but still ordered their production because there was no expectation of privacy.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Page 4

Here, Plaintiffs could not have had a reasonable expectation of confidentiality with respect to their communications with Mr. Haroldson during the relevant time period. Mr. Haroldson was employed by and an executive at HDG at that time, the very company with which Plaintiffs were in conflict. As the New York Court of Appeals stated in *People v. Osorio*, 75 N.Y.2d 80 (1989), "the conflicting interests of the parties' would negate any reasonable expectation of confidentiality." *Id.* at 84. It simply would be nonsensical for Plaintiffs to believe that their conversations with Mr. Haroldson could be entitled to confidentiality during the time period at issue.

Moreover, contemporaneous documents demonstrate that Plaintiffs in fact did not have an expectation of privacy with respect to their communications with Mr. Haroldson. For example, on February 15, 2013, GPIF Director Guillermo Konecny emailed GPIF Director Deborah Hazell with respect to Mr. Haroldson:

> As a lawyer indirectly servicing the Fund, HDGM never gave the Fund the opportunity to opine on Jeff. While we approved the Gail recharge at the time, and we were of course aware of Jeff, we did not have a say on his compensation, services, basis for the recharge, etc. Also as a lawyer, Jeff was the main signatory of the previous Fund Management Agreement with HDGM, which proved quite demanding in many aspects...As far as we are aware, Jeff was employed by HDGM up until the end of January...

(GPIF_0149643, attached as Ex. 4).[1]

This document demonstrates that there was no expectation of privilege between the Funds and Mr. Haroldson on two levels. First, Mr. Konecny explicitly acknowledged Mr. Haroldson's conflicting position as an executive of HDG "up until the end of January." And

---

[1] Plaintiffs originally designated this document as "Highly Confidential, For Professionals' Eyes Only," but have since agreed to allow this document to be quoted and attached herein without additional redactions.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Page 5

second, Mr. Konecny complains that Defendants never had the opportunity "to opine on Jeff" and "did not have a say on his compensation, services or basis for recharge." These observations are completely incongruous with the notion that Plaintiffs reasonably believed that their communications with Mr. Haroldson were entitled to confidentiality vis-à-vis HDG during the time period he was an HDG executive.

In sum, Mr. Haroldson was never an attorney for the GPIF Funds and only communicated with the Funds as an executive for HDG. In addition, Plaintiffs could not have had a reasonable expectation of privacy with respect to their communications with Mr. Haroldson, and contemporaneous documents demonstrate that they did not. For these reasons, Defendants respectfully request that this Court compel Plaintiffs to turn over all emails sent to or from Mr. Haroldson from December 17, 2012 through January 31, 2013.

Respectfully,

Francis J. Earley

cc: All Counsel of Record (via ECF)