UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD,

        Plaintiffs-Counterclaim Defendants,

   -against-                                   No. 13 Civ. 547 (CM)

HDG MANSUR INVESTMENT SERVICES, INC,
ET AL.,

        Defendants-Counterclaim Plaintiffs.
----------------------------------------------------------------x

**MEMORANDUM ORDER DENYING PLAINTIFFS' MOTION AND DEFENDANTS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT RELATING TO THE COUNTERCLAIMS AND DENYING DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED.R. CIV. P. 54(B)**

McMahon, J.:

      Plaintiffs, having obtained summary judgment in their favor on one of the five claims pleaded in their complaint against Defendants, moved last summer for entry of a partial judgment pursuant to Fed. R. Civ. P. 54(b) prior to adjudication of their other claims and of Defendants' counterclaims. (There is also a pending third-party action relating to the counterclaims, but that action – which asserts that the third party tortiously interfered with the contract between Plaintiffs and Defendants – has no relevance to this motion).

      At the outset, I apologize to the parties. I wrote a decision denying this motion last August, but it was never docketed, and I did not realize that until I got a letter from Plaintiffs earlier this week, asking for a ruling.

      Since the Rule 54(b) motion was made, Plaintiffs have moved for summary judgment dismissing Defendants' counterclaims, and Defendants have cross-moved for partial summary judgment in their favor on one of the two counterclaims. It behooves me to decide those motions now, before addressing the matter of interlocutory appeal.

      The cross motions for summary judgment relating to the counterclaims are denied. Plaintiffs' motion for the entry of judgment pursuant to Fed. R. Civ. P. 54(b) is also denied.

1

## Statement of Additional Material Facts

The reader's familiarity with the court's decision of August 1, 2013, granting Plaintiffs' motion for summary judgment on their Second Cause of Action, is assumed. *GPIF-Equity Co., Ltd. v. HDG Mansur Investment Services, Inc.*, No. 13 Civ. 647 (CM), 2013 WL 3989041 (S.D.N.Y. Aug. 1, 2013). I will not recount the undisputed facts stated in that opinion. I simply incorporate them by reference.

The following additional facts relevant to the instant motions are undisputed.

At their meeting on December 12, 2012, the Boards of Directors of the Plaintiff Funds voted to terminate the Defendants as Fund Manager, effective January 2, 2013. On January 14, 2013, the Funds sent a letter confirming that the HDG Entities had been terminated as Fund Manager, as of January 2, 2013.

The Fund Management Agreements ("FMAs") list seven reasons why the Funds "shall have the right to Terminate this Agreement." The first four are as follows:

(a) The Fund Manager could be terminated upon the occurrence and continuation of an Event of Default, which is defined as either (1) bankruptcy of either party, or (2) failure of either Party to comply with any provision of this Agreement if such failure is not cured within 30 days after notice thereof. (FMA, Sec. 6.1) Termination for Event of Default became effective on the date set forth in the notice of termination.

(b) The Fund Manager could be terminated For Cause upon "(i) the commission of an act constituting a breach of fiduciary duty….or gross negligence or willful misconduct by the Fund Manager in the performance of its duties…..(ii) the commission of an act constituting fraud or dishonesty by the Fund Manager…" or (iii) the commission by the Fund Manager of a misdemeanor involving moral turpitude or a felony." The effective date of Termination under this provision "shall be the day set forth in the written notice to the Fund Manager from the Investment Committee or the Board of Directors." (FMA Sec. 6.2(b))

(c) The Fund Manager could be terminated for failure to perform if certain performance benchmarks were not met.

(d) The Fund Manager could be terminated at the election of the Board "only if there shall have been a unanimous vote of the Boards of Directors and the unanimous vote of the Investment Committee to effect a termination pursuant to this clause (d), in which event the effective date of Termination shall be the day set forth in the notice of such Termination). (FMA Sec. 6.2(d)).

In its resolutions terminating the Fund Managers, the Boards did not indicate pursuant to which of these clauses they were proceeding, and the resolution was passed "without prejudice to

the issue as to whether such termination is consensual or for cause, which issue is yet to be determined." (Garrison Declaration Ex. 1, p. 4).

At the same meeting, the Boards retained counsel to advise whether there was cause to terminate the FMAs.

Section 6.4.1 of the FMAs is entitled "Duties Upon Termination."

Upon a Termination for an Event of Default under Sec. 6.2(a) or Performance Event under Sec. 6.2(c) (a "Termination Event B"), the Fund Manager is contractually entitled to Partial Severance consisting of the Base Termination Payment, the Fund Manager Partial severance Amount, and something called the Sponsor Co-Investment Payment.

Upon a for Cause under Sec. 6.2(b) (Termination Event C), the Fund Manager is contractually entitled to payment of the Base Termination Payment and the Sponsor co-Investment Payment, but no severance at all.

Upon an Elective Termination under Sec. 6.2(d) (Termination Event A), the Fund Manager is contractually entitled to the Base Termination Payment plus the Fund Manager Full Severance Amount plus the Sponsor Co-Investment Payment.

Base Termination Payment is defined as "payment of the aggregate amount of all Termination Payment Elements as of such date determination payable to such person" (Schedule X, "Base Termination Payment," and includes certain unpaid fees and reimbursement for expenses incurred as of the effective date of such Termination." (Hazell Decl., Ex. C).

Section 6.6 of the FMAs is a survival provision. It states:

> Upon Termination, both Parties shall remain liable for all obligations and Liabilities accrued and not fully performed and paid under this Agreement During the Term, and the obligations and liabilities set for in Section 6.5 and 7 shall survive any Termination of this Agreement whether or not such obligations occurred during the Term.

### Defendants' Counterclaims

Defendants assert two counterclaims. The first is for breach of contract, because Plaintiffs have failed and refused to make any payment in accordance with whatever type of Termination Event occurred. The second is for an accounting, presumably so that the termination payment – which includes as one element something called the Sponsor Co-Investment Payment – can be properly calculated.

Plaintiffs move for summary judgment dismissing the counterclaims, on the ground that Defendants' adjudicated material breach excuses them from performing any obligation under the terminated FMAs – even those that, by the terms of the contract, survived termination.

Defendants cross-move for summary judgment of liability on its counterclaim for breach of contract; they admit that a trial will be necessary to calculate the amount due, because it has not yet been determined why the contract was breached. But they insist that something is due, no matter why the contract was terminated. In effect, Defendants seek a declaration that they are due something no matter why the contract was terminated – although they have not brought a counterclaim for declaratory judgment.

## Conclusions of Law

The usual rules relating to summary judgment are set forth in the court's August 1, 2013 decision; they are equally applicable here.

*(1) The Cross Motions for Partial Summary Judgment are Denied*

The Court has already determined that Defendants committed a material breach of the FMAs by helping themselves to over $5 million in "fees" to which they were not entitled, based on their novel, belated, and entirely baseless re-interpretation of the relevant provision of the FMA. That finding is incorporated into this decision.

Plaintiffs argue that Defendants cannot recover on their counterclaims as a matter of law, because their material breach excuses Plaintiffs from any further performance under the contracts. Defendants say not so because the contract expressly provides otherwise. Both parties rely on well settled propositions of contract law that ordinarily do not come into conflict.

The usual rule is that a material breach of contract by one party excuses any non-performance by the other, thereby effectively terminating the contract. *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F. 3d 171, 186 (2d Cir. 2007); *Tyco Int'l, Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 564 (S.D.N.Y. 2010); Restatement (Third) of Agency §§ 8.01(d)(1) and (d)(2). In *Merrill Lynch*, for example, a dispute arose concerning Merrill's sale of an energy commodities trading business to Allegheny. Merrill had the right to a "put" in a specified amount if certain conditions were not fulfilled. They were not fulfilled, but Allegheny refused to honor the put. Merrill then sued Allegheny for breach of contract, while Allegheny counterclaimed alleging that Merrill had materially breached the contract first. The Second Circuit, reversing a grant of summary judgment in Merrill's favor, held that if Merrill had materially breached the contract by making material omissions and misrepresentations in connection with financial information it had agreed to provide to Allegheny, such breach would excuse Allegheny's non-performance under the put provision. *See Merrill Lynch*, 500 F.3d at 186-187.

Defendants counter that this is a "default rule," and that where, as here, sophisticated parties have expressly undertaken to define their duties and liabilities to one another in the event of termination – even termination for cause or for breach of contract – no court can read their expressed intent out of their agreement. Defendants rely on an equally settled principle of contract law, which is that when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its own terms. *AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC*, 890 F. Supp. 2d 373, 387 (S.D.N.Y. 2012).

4

Here, the parties (all sophisticated on both sides of the transaction) expressly provided that termination fees in varying amounts would be paid to Defendants if the FMAs were terminated by the Funds. The fees owed varied according to the cause of termination; among the possible causes for termination specifically identified were (1) failure of either Party to comply with any provision of this Agreement (*i.e.*, breach of contract), or (2) cause, to include any breach of fiduciary duty, willful misconduct, or fraud or dishonesty. But in all events some type of fee was due and owing – if only return of money denominated as Sponsor Co-Investment payment, together with various unpaid fees and expenses incurred as of the effective date of the Termination. The contracts further provided that those provisions survived termination.

Plaintiffs' motion for summary judgment dismissing the counterclaims must be denied. The contract between the parties is as plainly written as any the Court has ever reviewed. The parties anticipated that the contract might be terminated for any number of reasons, including for breach of contract and for cause – with cause defined to include the commission of a misdemeanor involving moral turpitude or a felony. They recognized that, at the moment of termination, the Fund Managers might have performed services and/or incurred expenses for which they had not yet been paid or reimbursed. They specifically provided that the Fund Managers would be entitled to payment or reimbursement for such services rendered or expenses advanced in the event of termination– *in all instances, even if the contracts were terminated for cause.*[1]

The parties also anticipated that the Fund Managers would co-invest their own money with the Funds, and recognized that they would be entitled to unwind those investments and get their money back if the contracts were terminated – *even if they were terminated for cause.*

Defendants represent that at a minimum they seek by their breach of contract counterclaim to recover these amounts. They are correct that their claim for these amounts was not extinguished by their breach of contract. Plaintiffs and Defendants are commercially sophisticated parties; they are bound by the bargain they made, which excludes the application of what would otherwise be a default rule.

If this result was not satisfactory to Plaintiffs, they should have said so when the FMAs were being negotiated – otherwise, "Parties choose to contract away rights that would otherwise be afforded to them in consideration for other benefits all the time." *New Falls Corp. v. Lerner*, 579 F. Supp. 2d 282, 292 (D. Conn. 2008), *aff'd* 352 Fed. App'x 596 (2d Cir. 2009). This case is not unlike *Summit Props, Int'l, LLC v. LPGA*, 07 Civ. 10407 (LBS), 2010 WL 2382405 at * 8-9 (S.D.N.Y. June 14, 2010), where the non-breaching party argued that it was excused from making a post-termination payment called for under a contract after it terminated the contract following a material breach by the contraparty. Ruling for the party entitled to the post-termination payment, my colleague Judge Swain held, "The clear language of the contract contemplates that termination will include termination for breaches of the Agreement. This interpretation is consistent with the overall intent of the parties...."

---

[1] Of course, any unpaid fees would have to be calculated in accordance with the terms of the FMAs—not in accordance with Defendants' belatedly dreamed-up recalculation.

Furthermore, these aspects of what the parties refer to as a "termination fee" (the refund of co-invested monies and payment for services rendered but as yet uncompensated) do nothing more than square the parties in their commercial relationship *ex ante*. To this extent, the "termination fee" provisions of the FMAs are not just commercially reasonable; they are no more than a recognition of what the law requires. It would violate New York public policy to allow Plaintiffs not to pay HDG for services rendered and to keep HDG's own co-invested funds simply because Defendants materially breached their management contract. Such a windfall recovery for Plaintiffs would be in the nature of punitive damages, which New York does not permit for breach of contract. *See, e.g., Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (N.Y. 1994). New York also disfavors penal forfeitures, which is what allowing Plaintiffs to keep Defendants' co-invested funds would work. *See, e.g., Fifty States Mgt. Corp. v. Pioneer Auto Parks*, 46 N.Y.2d 573, 576-77 (N.Y. 1979).

In addition to recovering monies they might be owed, the parties also expressly agreed, for whatever reason, that the Fund Managers might be entitled to a severance payment – with both entitlement and amount a function of the reason why the contract was terminated. The parties agreed that if the contract were terminated for cause there would be no severance; that if it were terminated for breach there might be some severance; and that if it were terminated consensually there would be full severance. There is absolutely no reason in law or in logic why a court will not enforce that aspect of their bargain, either.

Plaintiffs argue that New York law will not enforce termination provisions that effectively allow a party to avoid the consequences of its own intentional misconduct. *Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*, 47 A.D. 3d 239, 244 (1st Dept. 2007); *Abacus Fed. Savings Bank v. ADT Sec. Services, Inc.*, 18 N.Y.3d 675, 683 (N.Y. 2012).[2] But as Defendants correctly note, the rule of *Solow* and *Abacus* relates to clauses that purport to exculpate a party in advance for intentional misconduct or gross negligence. New York courts have no difficulty enforcing contract clauses that, for example, survive the termination of a contract, even if the contract has been breached. *Summit Props. Int'l, LLC v. LPGA, supra*.

Furthermore, it is not quite correct to say that enforcing the parties' stated bargain will allow HDG to avoid the consequences of its own intentional misconduct. HDG has been fired from a lucrative position. Should it be found that the termination was for cause – something that is a very real possibility, given the definition of "cause" in the FMAs – Defendants can recover nothing at all by way of a severance payment. Only if it is found that the contract was terminated for some reason other than cause would Defendants be arguably entitled to any "severance" portion of their termination fee.

Finally, there is something incongruous about Plaintiffs' moving to dismiss the counterclaims on the ground that they have established a breach of contract by Defendants, which ended their obligations under the contract. As a matter of historical fact, Plaintiffs terminated the contracts, and not because they had been breached. They terminated the contracts

---

[2] Plaintiffs make this argument with respect to the entirety of Defendants' breach of contract claim, but it is severable and should be made as to the only aspect of that claim that represents a "bonus" or reward of some sort, as opposed to payment of compensation earned or a refund of Defendants' own property.

either on consent or for cause – and asked their attorneys to decide whether there was in fact "cause" to terminate. Breach of contract is not "cause" under the terms of the FMAs, and the Boards of the Funds did not specify breach of contract as a possible basis for terminating the contracts.

Defendants cross-move for summary judgment of liability on their breach of contract counterclaim, with the amount owed to be determined after discovery. That motion, too, is denied. Defendants have not brought an action for a declaratory judgment although that is, in effect, what they here seek – a declaration that Plaintiffs are liable for something. They admit that it has not yet been determined why the FMAs were terminated Also, Plaintiffs have asserted an *in pari delicto* defense to the breach of contract counterclaim that raises a number of disputed factual issues.[3] Everything remains to be tried.

For these reasons, the cross motions for partial summary judgment are DENIED.

### (2) The Motion for Entry of Interlocutory Partial Judgment Per Fed. R. Civ. P. 54(b) Is Denied

Rule 54(b) partial judgments are disfavored in Federal practice. Nonetheless, a district court has discretion to direct entry of final judgment as to one or more, but fewer than all, claims, as long as the court expressly determines that there is no just reason for delay in doing so. *See* FED. R. CIV. P. 54(b). A court confronted with a Rule 54(b) motion must take into account judicial administrative interests as well as the equities involved. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980).

In this case, Plaintiffs have prevailed on their claim that Defendants, their investment manager and related entities, misappropriated $5.8 million from their accounts in breach of the investment advisory agreement that binds both sides. Plaintiffs want final judgment entered on that claim because they are concerned that Defendants are having financial difficulties and may be unable to satisfy any judgment – or, I assume, may go into bankruptcy before Plaintiffs can become judgment (and hence, secured) creditors. Plaintiffs have assembled evidence that Defendants have made representations concerning the precariousness of their financial condition and are the subject of other litigation – in the Delaware Court of Chancery, the Southern District of Indiana, and the Supreme Court, New York County – including litigation over a lease in which it has been asserted that they are not paying their rent. In a letter received this week, they point the court to yet another default by HDG on some project. (Docket #84)

Plaintiffs have asserted four other claims. None of those claims has been withdrawn in light of Plaintiffs' victory on the motion for partial summary judgment. In their First Claim for Relief, Plaintiffs seek effective rescission of the contract under the Investment Advisory Act,

---

[3] The Court is less than impressed with the suggestion that repayment of the stolen money is an implied condition to recovery of termination fees.

together with a refund of all fees previously paid to Defendants. (This claim may well be the only basis for federal jurisdiction). In their Third and Fourth Claims (which are actually the Third, Fourth, and Fifth Claims), they allege breach of fiduciary duty against the defendant corporations and against their principal, Harold M. Garrison, as well as fraud.

Defendants' counterclaims, obviously, remain pending. If Defendants manage to convince the trier of fact that the termination of the FMAs was consensual, they believe they are entitled to $20.3 million in unpaid fees and post-termination payments – three times the amount owed to Plaintiffs on their breach of contract claim.

In the August 1 decision granting Plaintiffs' motion for partial summary judgment, this Court signaled that it did not intend to enter a partial judgment. Nonetheless, Plaintiffs have asked me to do so.

In an exercise of my discretion, I decline Plaintiffs' invitation.

In deciding whether this is the rare case that justifies a Rule 54(b) judgment, I must first consider judicial administrative interests – specifically, whether the Plaintiffs' breach of contract claim is separable from the other claims that remain to be adjudicated. *Curtiss-Wright Corp.*, *supra.*, 446 U.S. at 1. Obviously it is not.

The judgment in Plaintiffs' favor is not separable from the remaining claims in Plaintiffs' complaint, every one of which grows out of Plaintiffs' breach of contract claim. Plaintiffs have not withdrawn their other claims (including most notably their claim for a refund of ten years' worth of management fees already paid), despite having succeeded on their breach of contract claim. As long as Plaintiffs' other claims remain to be litigated, there is no judicial administrative interest (especially in the Court of Appeals) in the entry of a partial judgment. I note that there is no pending motion addressed to those claims.

Because the pendency of Plaintiffs' other claims for relief means there is no judicial administrative interest in the entry of a partial judgment, there is no need to assess whether the pendency of the counterclaims, with the possibility of setoff, also dooms the Rule 54(b) motion. However, the answer is obvious.

Because judicial administrative interests are not served by entry of a premature judgment, there is no reason to dwell on the equities. These, I admit, favor Plaintiffs, who have been the victims of what appears to this court to be a massive theft on the flimsiest of pretexts by an investment advisor, whose motives for suddenly reinterpreting the parties' contracts are rendered suspect by coincident financial difficulties. The possibility of set-off is not in and of itself sufficient reason to postpone giving the Funds' shareholders security for their loss. However, where, as here, the issues already decided and those that remain to be decided are inextricably intertwined, Rule 54(b) partial judgment is, in my opinion, unwise and inappropriate.

The Clerk should remove the motions at Docket Nos. 37, 41, and 48, all of which are DENIED, from the Court's list of open motions.

Dated: December 20, 2013

_____
U.S.D.J.

BY ECF TO ALL COUNSEL