UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

GPIF-I EQUITY CO., LTD., and
GFIP-I FINANCE CO., LTD,

    Plaintiffs,

  -against-                                      13 Civ. 547 (CM)

HDG MANSUR INVESTMENT SERVICES, INC
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON,

    Defendants-Counterclaim Plaintiffs.

---------------------------------------------------------------x

HDG MANSUR INVESTMENT SERVICES, INC.,
and HDGM ADVISORY SERVICES, LLC,

    Third-Party Plaintiffs,

  -against-

HSBC SECURITIES (USA) INC.,

    Third-Party Defendant.

---------------------------------------------------------------x

DECISION AND ORDER GRANTING MOTION TO DISMISS THE
THIRD-PARTY COMPLAINT AGAINST HSBC SECURITIES (USA) INC.

McMahon, J.:

    Third-Party Defendant moves to dismiss the lone claim against it, for tortious interference with contract. The Third-Party Complaint is dismissed, without prejudice, but as noted below, if it is to be repleaded, the Third-Party Plaintiff will have to commence a new action – because it has admitted that its claim against HSBC (to the extent any viable claim

1

exists) does not meet the criteria for assertion of a third-party complaint by a defending party. FED. R. CIV. P. 14.

The court assumes the reader's familiarity with its decision granting summary judgment to Plaintiffs on their Second Cause of Action. *GPIF-Equity Co., Ltd. v. HDG Mansur Investment Services, Inc.*, No. 13 Civ. 647 (CM), 2013 WL 3989041 (S.D.N.Y. Aug. 1, 2013). That decision explains the genesis of Plaintiffs' lawsuit against the Defendants. Briefly, Defendants served as fund managers for two funds geared toward investors who were interested in investing in accordance with Islamic law. After a decade of collecting management fees in accordance with one interpretation of the parties' two Fund Management Agreements ("FMAs"), Defendants – who were arguably in financial difficulty – concluded that they were actually entitled to a significantly greater amount than they had been paid, and helped themselves to over $5.8 million in additional fees (including fees for years that were beyond the applicable statute of limitations) without notifying Plaintiffs. When Plaintiffs learned of this, their boards terminated the Defendants' FMAs – either consensually or for cause, according to the termination resolution – and sued for the return of the $5.8 million. Defendants counterclaimed, alleging that Plaintiffs owed them well in excess of $5.8 million in termination payments under the FMAs. In two prior opinions, the court granted Plaintiffs summary judgment on their breach of contract claim and denied their subsequent motion for summary judgment dismissing the counterclaims. Plaintiffs and Defendants are presently litigating over whether Plaintiffs owe Defendants any money as a result of the termination of the FMAs – amounts that would be offset against the $5.8 million to which this court has already ruled Plaintiffs indubitably entitled.

When they filed their counterclaims, Defendants also filed what they styled a "Third-Party Complaint" against HSBC Securities (USA), Inc., alleging that HSBC – which served as

"Placement Agents" for the Funds – had induced Plaintiffs to breach the FMAs. One would assume that the breach in question was the breach that was the subject of the counterclaims – *i.e.*, Plaintiffs' alleged breach of their obligation to pay various fees to Defendants upon the termination of the FMAs.

Not so, apparently.

In their brief opposing the instant motion to dismiss, Defendants admit that the breach asserted in their counterclaims "is not the breach at issue in the tortious interference claim against HSBC." (Opp. Br. at 8.) Instead, Defendants contend that HSBC induced Plaintiffs to breach the FMA by failing to enter into a sufficient number of transactions, which resulted in a failure to generate sufficient fee income for Defendants. (Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint, Docket No. 22, ¶¶ 63-67.) They allege (albeit on information and belief) that HSBC (1) was aware that Defendants had FMAs with Plaintiffs, (2) was familiar with the payment structure for fees contained in the FMAs, and (3) interfered with "the payment structures in the Fund Management Agreements" by failing to raise sufficient capital on behalf of the Funds. More specifically, the Third-Party Complaint alleges that HSBC's "primary duty and obligation" under its Distribution Agreement with the Funds (an agreement to which Defendants are not alleged to be a party) was to market the Funds to potential investors for the purpose of raising capital. Beginning in 2006, Defendants allege, HSBC began to breach its obligations under the Distribution Agreement. This negatively impacted the Funds' performance and limited the number of transactions that the Funds could invest in – which in turn caused Defendants, in their capacity as Fund Manager, to collect less in fees that would otherwise have been the case. (Docket No. at ¶¶ 40-49.)

According to Defendants, this constitutes tortious interference with the FMAs.

3

HSBC moves to dismiss this Third-Party Complaint for failure to state a claim.

The Third-Party Complaint against HSBC indeed fails to state a claim – any sort of claim, let alone a claim for tortious interference with contract. Moreover, the claim Defendants now describe – the one they are trying to plead but have failed to plead – is not properly pleaded as a third-party complaint. It introduces into this litigation a whole new controversy, entirely unrelated to the issue in suit – which is limited to the termination of the FMAs (a termination not alleged to have been procured by HSBC) and who as between Plaintiffs and Defendants is owed money as a result. The tortious interference claim against HSBC does not, as required by Fed. R. Civ. P.14 (a)(1), assert a claim by Defendants against "a nonparty who is or may be liable to [them] for all or part of the claim [of Plaintiffs] against [Defendants]." Therefore, while Defendants are free to try to replead their claim against HSBC, they cannot do so in this action. If they want to sue HSBC for interfering with their ability to maximize their potential fee income by breaching its obligations as Placement Agent – a claim for interference with prospective business advantage – impleader is not the answer; Defendants need to bring a wholly separate lawsuit.

**Discussion**

A motion to dismiss for failure to state a claim is governed by the familiar standards of Rule 12(b)(6). "In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the 'two-pronged approach' suggested by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 425 (S.D.N.Y 2012). First, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Second, "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Iqbal*, 129 S. Ct. at 1950. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Count III of the Counterclaims and Third-Party Complaint – the only claim asserted against HSBC – is styled "tortious interference with contract." It will be analyzed against the standards applicable to such a claim.

### 1) The Third-Party Complaint Fails to State a Claim for Tortious Interference with Contract

The elements of a claim for tortious interference with contract under New York law are well settled:

It is axiomatic that a claim for tortious interference has not been properly pleaded unless the plaintiff alleges that a contract was breached. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990). Nowhere in the Third-Party Complaint do Defendants allege that the Plaintiffs breached the FMAs – except by failing to pay them termination fees. But Defendants candidly admit that this alleged breach was not induced by HSBC!

Instead, Defendants allege (reading generously) that because HSBC failed to raise sufficient capital, the Plaintiff Funds were unable to enter into as many transactions as Defendants anticipated, thereby generating less in fee income for Defendants.

5

The problem with this allegation is that it is utterly unsupported by any plausible allegation of fact. Defendants do not allege that the FMAs – the contracts with which HSBC allegedly interfered – required the Funds to enter into a certain minimum number of transactions, or to generate any specified minimum amount of fee income for Defendants. While I have not gone back to the FMAs (with which I became familiar some months ago), I do not recall that they contained any minimum fee provision, or any clause requiring the Funds to make some specific number of investments. Absent such a provision, Plaintiffs cannot possibly have breached the FMAs by paying Defendants less than they hoped to earn, and no claim for tortious interference lies.

Of course, what this Court remembers does not matter; what matters is what the Third-Party Complaint says – or in this case does not say. The Third-Party Complaint does not specifically allege that Plaintiffs breached the FMAs, and it does not identify any provision of the FMAs that was allegedly breached as a result of HSBC's interference. All it alleges is that Plaintiffs would have paid more in fees to Defendants if HSBC had lived up to its purported obligation to generate more capital. That is not a properly pleaded claim for tortious interference with contract. For that reason, the Third-Party Complaint must be dismissed.[1]

If Defendants were proceeding *pro se*, instead of being represented by counsel, this Court would be required to ferret out some sort of claim that might arguably be intended by the Third-Party Complaint. The most logical candidate is a claim for interference with prospective business advantage, in that HSBC's purported failure to raise sufficient capital for the Funds resulted in a diminution of the amount of fee income that Defendants could have expected (rather

---

[1] Defendants cannot cure a pleading defect by including new allegations in their Opposition brief; claimants are not entitled to amend their complaint through statements made in motion papers. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). But even if the rule were otherwise, Defendants' Opposition brief – while indubitably "augmenting" their utterly deficient pleading – does not allege that Plaintiffs breached any obligation imposed on them by the FMAs.

6

than an amount to which they were contractually entitled). However, no such claim is adequately pleaded, either.

The motion to dismiss the Third-Party Complaint for failure to state a claim is, therefore, granted.

### 2) Leave to Replead is Denied Because HSBC Cannot Be Impleaded on the Claim Contemplated

If Defendants believe that they have a claim for interference – or any claim against HSBC arising from the latter's breach of some obligation to raise capital for the Plaintiff Funds – nothing in this decision, which is addressed solely to the face of the Third-Party Complaint, precludes them from asserting it in a proper pleading. However, the Court will not grant leave to replead such a claim in this lawsuit – because the claim Defendants want to bring is not a proper third-party claim under Fed. R. Civ. P. 14, which governs Third-Party Practice.

Fed. R. Civ. P. 14, known as the impleader rule, allows a defending party (like Defendants) to bring a third party into a lawsuit, but only in limited circumstances. Rule 14(a)(1) provides:

> **(a) When a Defending Party May Bring in a Third Party.**
>
> (1) *Timing of the Summons and Complaint*. A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.

Impleader is a form of pleading reserved for derivative claims – "claims over," as they were traditionally known. The claim asserted in the Third-Party Complaint, however it is styled, is not a "claim over" against the HSBC; that is, Defendants do not contend that HSBC is liable to them for all or part of the $5.8 million that Defendants illegally took from the Plaintiff Funds. The

7

only nexus between Defendants' assertion that HSBC somehow prevented them from earning more in fees and the claims asserted against Defendants by Plaintiffs is that the Third-Party Claim, like the claims pleaded in the Complaint, involves the business of the Plaintiff Funds and Defendants, the Fund Managers. That is not enough of a nexus to qualify the Third-Party Claim for inclusion in this lawsuit. The purported Third-Party Claim introduces an entire new controversy into the case, not relating to the termination of the FMAs (which is all the Complaint and the Counterclaims are about), but to the conduct of the business for some years prior to the termination of the FMAs. Contrary to Defendants' belief, not every claim relating to the business of the Plaintiff Funds can be litigated in this action.

So if Defendants want to pursue some sort of claim for underpaid commissions against HSBC, they cannot amend file an Amended Third-Party Complaint; they need to start an entirely new lawsuit (which, by the way, would not qualify as "related" to the instant action under the Local Rules of the Southern District of New York, because it does not arise out of the same transaction or occurrence – the termination of the FMAs – as this action does). The Third-Party Complaint is dismissed without prejudice in case Defendants want to try to concoct some sort of viable claim of interference against HSBC; it will, however, cost them another filing fee.[2]

---

[2] In case Defendants are not aware of it, the statute of limitations for an interference claim is three years – C.P.L.R. 214(4), see *Greenberg v. Svane, Inc.*, 36 A.D. 3d 1094, 1099 (3d Dep't 2007) (tortious interference with contract); *Besicorp Ltd. v. Kahn*, 98 N.Y.2d 601 (2002) (tortious interference with prospective contractual relations) – so allegations going back to 2006, as asserted in the now-dismissed Third-Party Complaint, are unlikely to be actionable.

8

The Clerk of the Court is directed to dismiss the Third-Party Complaint, to discontinue this action permanently as to Third-Party Defendant HSBC Securities (USA) Inc., and to close the motion at Docket No. 27 on the court's list of active motions.

Dated: January 10, 2014

_____
United States District Judge

BY ECF TO ALL COUNSEL