UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GPIF-I EQUITY CO., LTD. and
GPIF-I FINANCE CO., LTD.,

          Plaintiffs-Counterclaim Defendants,

v.                                                       Case No. 13 Civ 547 (CM)

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON

          Defendants-Counterclaim Plaintiffs.
-----------------------------------------------------------------x

### DEFENDANTS' STATEMENT OF THE ELEMENTS AND SUMMARY OF THE FACTS FOR EACH COUNTERCLAIM AND DEFENSE

Defendants-Counterclaim Plaintiffs HDG Mansur Investment Services, Inc. ("HDG Investment"), HDGM Advisory Services, LLC ("HDG Advisory" and, together with HDG Investment, the "HDG Entities"), and Harold D. Garrison ("Garrison" and, together with the HDG Entities, "Defendants") respectfully submit this Statement of the Elements and Summary of the Facts for Each Counterclaim and Defense, as directed in Section V(B)(ii) of the Individual Practices and Procedures of Judge Colleen McMahon.

**I.  Defenses To Plaintiffs' Remaining Claims**

    **A.  First Claim for Relief: Violation of the Investment Advisers Act ("IAA") Against All Defendants**

        **1.  Elements of the Claim**

"[T]o establish a rescission claim under § 215 of the IAA, Plaintiffs must prove that they entered into a contract for investment advisory services with an investment adviser, and that the contract violated any provision of the IAA, including § 206, which prohibits fraud or deceit." *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 332 (S.D.N.Y. 2012) (internal citations omitted). To

qualify as an investment adviser under the IAA, a fund must "for compensation, engage[] in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing or selling securities." IAA § 202(a)(11).

The "sole private remedy available" under the Investment Advisers Act ("IAA") is for rescission of the contract. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1033 (2d Cir. 1992) (citing *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 19 (1979)). Under Section 215 of the IAA, this remedy is only available for "contracts whose formation or performance would violate the act," thereby making the contract void. *Kahn*, 970 F.2d at 1033 (citing *Transamerica*, 444 U.S. at 19). Actions for rescission accrue when the contract is executed. *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 399396, at *6-7 (S.D.N.Y. Feb. 21, 2006) (citing Kahn, 970 F.3d at 1042). The defense of laches applies where there is "proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Oneida Indian Nation v. County of Oneida*, 617 F.3d 114, 127 (2d Cir. 2010).

### 2. Summary of Facts in Support of Defenses

Plaintiffs are a true real estate fund and do not invest in any securities as they are defined by the IAA, and Defendants therefore do not qualify as an investment adviser as it is defined by the IAA. In addition, Defendants did not defraud any client or engage in any act practice or cause of business which was fraudulent, deceptive, or manipulative. The HDG Entities received prepaid fees on budgeted transactions during the course of 2012, consistent with Sections 5.5 and 5.6 of the FMA, and consistent with their practice in prior years. This practice was disclosed to the Boards of Directors of the Funds and the auditors in 2010 and 2011 and both times it was approved.

At the same time, the HDG Entities believed that they were entitled to receive $5.8 million that was due as payment on historically underpaid financing fees, which belief they consistently communicated to Plaintiffs during 2012. In December 2012, Mr. Garrison made a final determination that the fees should be treated and accounted for as underpaid financing fees rather than prepayments on transactions that were still being worked on and anticipated to close. Defendants came to this conclusion based on a good faith interpretation of the FMA, which was an interpretation that even non-HDG members of the Investment Committee acknowledged was consistent with the language of the FMA. This interpretation has since been ruled to be incorrect, but it was not part of any fraudulent scheme giving rise to a cause of action under the IAA.

In addition, there is no private right of action to seek any remedy other than rescission under the FMA, and there is no basis to void the agreement. It is not an illegal contract. It was entered into by two sophisticated parties and performed upon by both parties for upwards of ten years. And Plaintiffs themselves have successfully sued for recovery on the FMA, a wholly inconsistent remedy with seeking to void the FMA in their FMA claim. In addition, Plaintiffs' claim is barred by the equitable doctrine of laches because it was not brought until more than ten years after the date the allegedly void Fund Management Agreement was executed in 2002 and after more than ten years of performance thereunder by the HDG Entities.

**B.   Third Claim for Relief: Breach of Fiduciary Duty Against the HDG Entities**

   **1.   Elements of the Claim**

"To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 305-306 (S.D.N.Y. 2010*), aff'd*, 438 F.

3

App'x 45 (2d Cir. 2011) (internal citations omitted). Where "a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract." *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co.*, 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008)

### 2. Summary of Facts in Support of Defenses

Plaintiffs seek the same $5.8 million in damages that they have been awarded in a judgment for their breach of contract claim. And Plaintiffs do not allege the existence of any fiduciary duty outside of the existence of the very same contract that the Court has ruled the HDG Entities breached.

The HDG Entities' role as a fiduciary is strictly limited to their responsibilities under the FMA. Section 4 of the FMA states:

> In performing services pursuant to this Agreement, the Fund Manager shall act in a manner it believes in good faith to be in the best interests of Equity Co. and the Fund and with the care an ordinarily prudent institutional real estate advisor in a like position would exercise under similar circumstances.

(TX-1 § 4.0). At all times, the HDG entities believed in good faith that they were acting consistently with the FMA. The HDG Entities received prepaid fees on budgeted transactions during the course of 2012, consistent with Sections 5.5 and 5.6 of the FMA, and consistent with their practice in prior years. This practice was disclosed to the Boards of Directors of the Funds and the auditors in 2010 and 2011 and both times it was approved. At the same time, the HDG Entities believed that they were entitled to receive $5.8 million that was due as payment on historically underpaid financing fees, which belief they communicated to Plaintiffs during 2012. In December 2012, Mr. Garrison made a final determination that the fees should be treated and accounted for as underpaid financing fees rather than as prepayments on transactions that had been worked on and were anticipated to close. Defendants came to this conclusion based on a

4

good faith interpretation of the FMA, which was an interpretation that even non-HDG members of the Investment Committee acknowledged was consistent with the language of the FMA. This interpretation has since been ruled to be incorrect, but it was an interpretation that the HDG Entities in good faith believed was correct.

### C.     Fourth Claim for Relief: Aiding and Abetting Breach of Fiduciary Duty Against Mr. Garrison

#### 1.     Elements of the Claim

"Under New York law, there are three elements to a claim for aiding and abetting a breach of fiduciary duty. The first element is a breach by a fiduciary of obligations to another, of which the aider and abettor had actual knowledge. The second element is that the defendant knowingly induced or participated in the breach; and the third element is that plaintiff suffered damage as a result of the breach." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 49 (2d Cir. 2005) (internal citations and quotation marks omitted). In addition, a defendant to a claim of aiding and abetting breach of fiduciary duty cannot be the same party who committed the breach of fiduciary duty.

#### 2.     Summary of Facts in Support of Defenses

The HDG Entities did not breach their fiduciary duty to the Funds (see summary above in support of defense), thus Mr. Garrison cannot have aided and abetted that breach. In addition, Mr. Garrison is not a third party for the purposes of aiding and abetting this alleged breach of fiduciary duty because at all times he made decisions in his corporate role at the HDG Entities and never in his individual or personal capacity. And he never made any decisions or took any actions that would support a breach of any fiduciary duty, as set forth above.

### D. Fifth Claim for Relief: Fraud Against All Defendants

#### 1. Elements of the Claim

"Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). New York State law holds that where the alleged fraud is indistinguishable from the breach of contract, no fraud cause of action arises. *Rafter v. Liddle*, 704 F. Supp. 2d 370, 376 (S.D.N.Y. 2010). A plaintiff cannot plead a fraud claim based on the same facts that underlie a breach of contract claim unless the plaintiff "(i) demonstrates a legal duty separate from the duty to perform under the contract; (ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Druyan v. Jagger*, 508 F. Supp. 2d 228, 239 (S.D.N.Y. 2007) (McMahon, J.).

#### 2. Summary of Facts in Support of Defenses

Plaintiffs predicate their fraud claim on the same facts as those in their breach of contract claim. Defendants, as fund manager, have no outside relationship with Plaintiffs but for that created by the FMA so there is no legal right separate from their duty to perform under the contract. Defendants did not make any fraudulent misrepresentations that are collateral to or extraneous to the contract. At all times, Mr. Garrison acted in his capacity as an officer of the HDG Entities. There are no "special damages." Plaintiffs in their Complaint seek an identical $5.8 million in damages as those awarded on their breach of contract claim.

In addition, the elements of a fraud claim are not all met. In particular:

a) No Misrepresentation or Omission of Material Fact

The FMA is explicit with regard to its reporting requirements of the Fund Manager, and Defendants had no obligation to report or seek Board approval prior to receiving payments for disposition or financing transactions. The Board of Directors never passed a resolution to change these reporting requirements. The FMA expressly authorized Defendants to receive fees prior to a disposition or financing transaction's closing. There was no obligation to report the taking of fees outside the context of established reporting procedures.

b) No "Intent to Defraud"

There was no intent to defraud. The HDG Entities believed that the prepaid fees were properly taken on anticipated transactions during the course of the year, consistent with the FMA and sanctioned in prior years by the Board and the auditors. At the same time, the HDG Entities believed that they were entitled to receive $5.8 million that was due as payment on historically underpaid financing fees. In December 2012, Mr. Garrison made a final determination that the fees should be treated and accounted for as underpaid financing fees rather than prepayments. At the end of 2012, when certain transactions did not close, Defendants did not return the $5.8 million of pre-paid fees believing that they were still owed this amount as underpaid financing fees. Defendants came to this conclusion based on a good faith interpretation of the FMA, which non-HDG members of the Investment Committee of the Fund admitted was consistent with the language of the FMA. This interpretation has since been ruled to be incorrect, but it did not reflect any intent to defraud.

## II. Defenses Applicable To All Of Plaintiffs Remaining Claims

### A. Setoff

#### 1. Elements of the Claim

A "setoff claim is effectively a permissive counterclaim." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 336 (2d Cir. 2005). "Fed R. Civ. P. 8(c) provides that a responsive pleading 'must affirmatively state any avoidance or affirmative defense,' which would include setoff. The fact that setoff is not among the affirmative defenses specifically listed in the rule does not mean that it need not be pleaded under Rule 8(c)." *Nouveau Indus. Inc. v. Liberty Mut. Ins. Co.*, No. 08 Civ. 10408 (CM), 2011 WL 10901796, at *10 (S.D.N.Y. Sept. 7, 2011) (McMahon, J.).

#### 2. Summary of Facts in Support of Defenses

Defendants' setoff claim is that any recovery by Plaintiffs for their breach of contract claim (or any other claim) should be offset by the amount of termination fees that Plaintiffs were obligated to pay to the HDG Entities—but have not paid—upon termination of the FMA. This setoff defense is substantively identical to Defendants' counterclaim for breach of contract, and it is addressed more fully below.

## III. DEFENDANTS' COUNTERCLAIMS

### A. Breach of Contract

#### 1. Elements of the Claim

To establish a breach of contract claim under New York law, a plaintiff must show (i) the existence of a contract; (ii) breach of the contract by the defendant; and (iii) damages suffered as a result of the breach. *See, e.g., Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 345 (S.D.N.Y. 2009).

8

### 2.   Summary of Facts in Support of Claim

    a)    The Existence of a Contract

A contract exists: on or around September 20, 2012 Plaintiffs and Defendant HDG Mansur Investment Services, Inc. entered into the Fund Management Agreements. In March, 2012, HDG Mansur Investment Services, Inc. assigned all of its rights and liabilities under the FMA to HDGM Advisory Services, LLC. Both parties performed fully under this contract for 10 plus years.

Plaintiffs have breached the agreement: Plaintiffs' termination of the HDG Entities as fund manager triggered contractual termination payments that were owed to the HDG Entities. Plaintiffs have failed to pay any of these fees owed to the HDG Entities per the Fund Management Agreement. They include a severance fee, disposition and financing fees for properties that closed prior to Termination and within 180 days of Termination, leasing transaction fees, legal costs reimbursement fees, other costs and expense reimbursements, the Co-Investment Payment, a Fund Administration Fee, and a Direct Fund Expense payment.

As a result of this breach, the HDG Entities have been damaged in an amount approximating $8.8 million.

Dated: January 13, 2014  
      New York, New York

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: /s/ Francis Earley  
Francis J. Earley  
John S. McMahon III  
Chrysler Center  
666 Third Avenue, 25th Floor  
New York, New York 10017  
(212) 935-3000  
FEarley@mintz.com  
TMcMahon@mintz.com

*Attorneys for Defendants HDG Mansur Investment Services, Inc., HDGM Advisory Services, Inc., and Harold D. Garrison*