UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GPIF-I EQUITY CO., LTD. and                              :
GPIF-I FINANCE CO., LTD.,                                :
                                                         :
       Plaintiffs-Counterclaim Defendants,       :
v.                                                       :   Case No. 13 Civ 547 (CM)
                                                         :
HDG MANSUR INVESTMENT SERVICES, INC.,                    :
HDGM ADVISORY SERVICES, LLC, and                         :
HAROLD D. GARRISON                                       :
                                                         :
       Defendants-Counterclaim Plaintiffs.       :
-----------------------------------------------------------------x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR CROSS MOTION
FOR SUMMARY JUDGMENT ON THEIR FIDUCIARY DUTY CLAIMS**

WILMER CUTLER PICKERING
 HALE AND DORR LLP

Charles C. Platt
Jeremy S. Winer
Stephanie D. Shuler
Fiona J. Kaye
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT........................................................................................................................2

    A.    The Fund Managers Owed Fiduciary Duties to the Funds That Existed Independent of the Parties' Fund Management Agreement. ..................................2

    B.    The Fund Managers Breached Their Fiduciary Duties to the Funds. .......................5

    C.    Neither the Existence of the FMA Nor the Fund Managers' Breach of It Immunizes the Fund Managers from a Finding That They Also Breached Their Fiduciary Duties to the Funds. ................................................................................7

    D.    Garrison Aided and Abetted the Fund Managers' Breach of Fiduciary Duties.......9

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

## CASES

*Balta v. Ayco Co.*,
   626 F. Supp. 2d 347 (W.D.N.Y. 2009) .................................................................................5

*Banco de la Republica de Colombia v. Bank of N.Y. Mellon*,
   No. 10 Civ. 536, 2013 WL 3871419 (S.D.N.Y. July 26, 2013) ...........................................3, 4

*Bullmore v. Banc of Am. Sec. LLC*,
   485 F. Supp. 2d 464 (S.D.N.Y. 2007) ...................................................................................3

*Fillmore East BS Finance Subsidiary LLC v. Capmark Bank,*
   No. 11 Civ. 4491, 2013 WL 1294519 (S.D.N.Y. Mar. 30, 2013) ............................................5

*Fillmore East BS Finance Subsidiary LLC v. Capmark Bank*,
   No. 13-707, 2014 WL 67665 (2d Cir. Jan. 9, 2014) ..............................................................5

*Garber v. Stevens*,
   941 N.Y.S.2d 127 (App. Div. 2012) ......................................................................................7

*Grund v. Delaware Charter Guarantee & Trust Co.*,
   788 F. Supp. 2d 226 (S.D.N.Y. 2011) ...................................................................................4

*Howe v. Bank of N.Y. Mellon*,
   783 F. Supp. 2d 466 (S.D.N.Y. 2011) ...................................................................................7

*Krys v. Butt*,
   486 F. App'x 153 (2d Cir. 2012) ...........................................................................................9

*MashreqBank, PSC v. ING Group N.V.*,
   No. 13 Civ. 2318, 2013 WL 5780824 (S.D.N.Y. Oct. 25, 2013) ............................................4

*NLRB v. Consolidated Bus Transit, Inc.*,
   577 F.3d 467 (2d Cir. 2009) .................................................................................................4

*Neilson v. Union Bank of California*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...............................................................................10

*Rajeev Sindhawni, M.D., PLLC v. Coe Business Service, Inc.*,
   861 N.Y.S.2d 705 (App. Div. 2008) ......................................................................................9

*United States v. Chestman*,
   947 F.2d 551 (2d Cir. 1991) .................................................................................................3

## OTHER AUTHORITIES

*Black's Law Dictionary* (5th ed. 1979)..................................................................................3

3 *Fletcher Cyc. Corp.* § 837.50 (2013)..................................................................................9

Case 1:13-cv-00547-CM   Document 108   Filed 02/05/14   Page 4 of 14

GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd. (the "Funds") respectfully submit this reply memorandum of law in further support of their cross-motion for summary judgment against defendants HDG Mansur Investment Services Inc., HDGM Advisory Services, Inc., (collectively, the "Fund Managers") and Harold D. Garrison ("Garrison," and together with the Fund Managers, the "Defendants").

## PRELIMINARY STATEMENT

The Fund Managers do not dispute that they managed the Funds and their assets, that they exercised discretionary authority over the Funds' assets, and that they used this authority unilaterally to "prepay" themselves more than $5.8 million in "fees." The Fund Managers also cannot dispute that they benefited at the Funds' expense from these payments, that the payments were not disclosed to (much less approved by) the Funds' Boards, and that the Fund Managers manufactured a completely different rationale for these "fees" when confronted by the Funds' Boards about these "prepayments." Finally, there is no dispute that Garrison knowingly directed the payments, while acting on behalf of his different businesses. These facts, and the many others not in genuine dispute, require summary judgment that the Fund Managers breached their fiduciary duties to the Funds, and that Garrison aided and abetted that breach.

Instead of confronting these dispositive facts, Defendants' opposition creates a series of diversions. They argue that, regardless of the well-settled common law fiduciary duties imposed on fund managers generally, their responsibilities were limited to those imposed by the parties' Fund Management Agreement ("FMA"). But Defendants *admitted* in their Answer that they owed the Funds fiduciary duties under the common law and Investment Advisers Act. They cannot disavow those admissions to defeat summary judgment.

Defendants further argue that their "massive theft" was justified because they accounted for their misappropriation of $5.8 million throughout 2012 as "prepayments" of fees for future

1

"budgeted" transactions. This argument fails because it completely contradicts the sworn statements submitted by Defendants to this Court last year, which averred that the money was taken as "underpayments" for financing fees on past transactions. This argument is also irrelevant: regardless of how Defendants characterize the payments now, the quarterly reports they submitted to the Funds' Boards throughout 2012 misrepresented that the Fund Managers were *not* paying themselves millions of dollars when in fact they were.

Defendants insist that what the Court has called a "massive theft under the flimsiest of pretexts" amounts to nothing more than a breach of contract. The undisputed evidence shows instead that the Fund Managers' disloyalty, self-dealing, imprudence, and dishonesty is separate and distinct from their breach of the FMA, and resulted in additional damages to the Funds. In these circumstances, New York law permits the Funds to sue Defendants in contract *and* in tort. Any other rule would allow fiduciaries to escape tort liability—and avoid a judicial finding that they breached fiduciary duties to their clients—merely by claiming (as the Fund Managers do here) that regardless of their misconduct, they can be liable only for breach of contract.

Finally, Defendants argue that Garrison cannot have aided and abetted the Fund Managers' misconduct solely because he was the Fund Managers' CEO. But corporate officers of fiduciaries such as investment advisors may not escape tort liability when they knowingly direct the misconduct that breaches the advisors' fiduciary duties to clients.

## ARGUMENT

### A. The Fund Managers Owed Fiduciary Duties to the Funds That Existed Independent of the Parties' Fund Management Agreement.

"New York courts consistently hold that investment advisors who have substantial discretion over the investment of their clients' funds owe their clients a common law fiduciary

2

duty." *Banco de la Republica de Colombia v. Bank of N.Y. Mellon*, No. 10 Civ. 536, 2013 WL 3871419, at *11 (S.D.N.Y. July 26, 2013) (citing cases).  As the Second Circuit has explained:

> One acts in a 'fiduciary capacity' when 'the business he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.'

*United States v. Chestman*, 947 F.2d 551, 568-69 (2d Cir. 1991) (quoting *Black's Law Dictionary* 564 (5th ed. 1979)); *see also id.* at 569 ("Because the fiduciary obtains access to [someone else's] property to serve the ends of the fiduciary relationship, he *becomes duty-bound not to appropriate the property for his own use*") (emphasis added).  As a matter of law, this fiduciary duty exists independent of the parties' investment advisory contract, even if the duty arises out of the relationship created by the parties' contract.  *See Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 471 (S.D.N.Y. 2007).

It is not surprising, then, that Defendants admitted—at least earlier in the case[1]—that they owed the Funds fiduciary duties under the common law and the Investment Advisers Act.  Defs. Answ. ¶ 40 (admitting allegation that they owed fiduciary duties to the Funds "under the common law and the Investment Advisers Act" by virtue of the "investment advisory services that the [Fund Managers] provided to the Funds" and the "trust and confidence that the Funds placed in the [Fund Managers]") [Dkt. No. 22]; *see also id.* ¶¶ 2, 43.  Those admissions are binding on Defendants as judicial admissions, precluding their recent about-face.  *See NLRB v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 474 (2d Cir. 2009) ("[f]acts admitted in an answer, as in

---

[1] Incredibly, Defendants now deny having made such an admission.  *Compare* Defs. Counterstatement at 2 (Defendants deny having "admitted that they owed fiduciary duties to the Funds under the common law and the Investment Advisers Act") [Dkt. No. 107], *with* Answ. ¶ 40 (Defendants admit that they "owed fiduciary duties under the common law and the Investment Advisers Act to the Funds and the Funds' shareholders") [Dkt. No. 22].

3

any pleading, are judicial admissions that bind the defendant throughout [the] litigation") (citations omitted); *see also Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 249 (S.D.N.Y. 2011) ("the extent to which Defendants owed fiduciary duties to Plaintiffs" is a "question[] of fact").

Defendants' admission that they owed independent fiduciary duties to the Funds follows logically from the nature of their engagement as fund manager. As the Fund Managers have themselves stated, they had broad authority and discretion over the Funds' assets, including the "express authority to pay themselves" out of the Funds' coffers. Defs. Opp. to Pls. Mot. for Preliminary Injunction at 1-2 [Dkt. No. 8]. Indeed, according to Defendants, the Fund Managers could "withdraw funds to pay themselves *without seeking approval from the Plaintiffs or the Boards of Directors*," and "did so repeatedly throughout the life of the FMA." *Id.* at 6 (emphasis added). Courts have repeatedly found fiduciary duties in these circumstances. *See, e.g.*, *Banco de la Republica de Colombia*, 2013 WL 3871419, at *11-12.

The cases cited by Defendants (Opp. at 7-8) are easily distinguishable. In *MashreqBank, PSC v. ING Group N.V.*, No. 13 Civ. 2318, 2013 WL 5780824 (S.D.N.Y. Oct. 25, 2013), the plaintiff—unlike the Funds—did not allege that the defendant owed any duties independent of the parties' contract. *Compare id.* at *5 ("the Complaint does not allege a fiduciary duty apart from the [the parties' investment management agreement]"), *with* Compl. ¶ 40 (alleging that the Fund Managers owed fiduciary duties "under the common law and the Investment Advisers Act"). In *Fillmore East BS Finance Subsidiary LLC v. Capmark Bank*, No. 13-707, 2014 WL 67665 (2d Cir. Jan. 9, 2014), the Second Circuit affirmed the dismissal of fiduciary duty claims brought by a bank against its co-lender on a loan. As the trial court in that case remarked, "[B]anks who participate in loans together are not fiduciaries," and thus "any fiduciary duties

4

between banks participating in a loan must be created by unequivocal language in the [loan] participation agreement." No. 11 Civ. 4491, 2013 WL 1294519, at *14 (S.D.N.Y. Mar. 30, 2013) (citations omitted). The District Court concluded that such language did not appear in the parties' agreement, and the Second Circuit agreed. Finally, in *Balta v. Ayco Co.*, 626 F. Supp. 2d 347, 360-61 (W.D.N.Y. 2009), the court dismissed a plaintiff's fiduciary duty claim against his investment adviser on the basis that the plaintiff had alleged no more than that the adviser had given bad advice concerning what stocks to purchase and sell, and that this alleged misconduct was covered by the plaintiff's contract claim. *Id.* at 361 (plaintiff's claim "boils down to Defendant's failure to provide good investment advice, which was its primary obligation under the [parties'] contract"). Here, by contrast, the evidence shows not just that the Fund Managers failed to perform under the FMA. It shows as well that the Funds engaged in disloyalty, self-dealing, imprudence and dishonesty when they repeatedly took the Funds' money to meet the cash needs of Garrison's businesses while simultaneously claiming that this misconduct was permissible under the FMA.

### B. The Fund Managers Breached Their Fiduciary Duties to the Funds.

There can be no reasonable dispute that the Fund Managers breached their fiduciary duties to the Funds. They put their own interests ahead of the shareholders when they paid themselves $5.8 million from the Funds' assets. They affirmatively misrepresented to the Funds' Boards that they were *not* receiving those payments. After they were confronted, they offered conflicting stories to the Funds' Boards and auditors as to why they took the money. And they refused to return the money or even to place it in escrow.

Instead of confronting these undisputed facts, Defendants argue they took the money not as "underpayments" for past transactions, but rather as "prepayments" for future "budgeted" transactions. This re-write of their story should be rejected because it is directly contradicted by

Defendants' earlier sworn statements to the Court, and by what Defendants told the Funds' Boards when their theft was discovered.

Even if the $5.8 million were taken as "prepayments," those payments were never justified because Defendants had not yet earned them *and never did earn them*. There is no contemporaneous evidence that the payments were made anywhere near to an expected closing of a transaction. Indeed, the evidence shows that the Fund Managers took the money throughout 2012 whenever they needed cash, and even took the money when their Director of Accounting concluded that they had "overdrawn" fees, and that they were taking fees with respect to transactions that had a "zero probability of closing." Jan. 13, 2014 Decl. of Jeremy Winer ("Winer Decl.") Ex. 9 [Dkt. No. 98]; *see also id.* Ex. 14 ("we have been paid on a number of sales that are not closing"). The Fund Managers' Director of Accounting was so concerned about his personal exposure, he asked the CFO to memorialize a conversation in which Garrison admitted that the decision to prepay fees was "100% on him and he will take the hit." *Id.* Ex. 23 (noting that Garrison "understands that we will NOT get through the audit with these remaining as prepaid").

In the face of this evidence, Defendants claim that Mr. Garrison "believed (and still believes)" that the Fund Managers could prepay themselves fees. Opp. at 22. But that argument is belied by Garrison's explanation of the payments when the Funds' Boards discovered them in 2012. Instead of saying that the money had been taken as prepaid fees—as one would have

6

expected him to do if such prepayments really were authorized by the FMA—Garrison claimed that the fees had been taken as "underpayments" for past transactions. *Id.* Ex. 26 at 3.[2]

Defendants' new "prepayment" story is further undercut by their concealment of these payments from the Funds' Boards throughout 2012. There was no reason to hide these fees if, as Defendants now argue, they were proper under the FMA and had been approved by the Funds' Boards.

### C. Neither the Existence of the FMA Nor the Fund Managers' Breach of It Immunizes the Fund Managers from a Finding That They Also Breached Their Fiduciary Duties to the Funds.

A claim for breach of fiduciary duty can proceed along with a contract claim where, as here, the fiduciary duty exists independent of the parties' contract. *See* Opening Br. at 8-11. This is especially true where the fiduciary duty claim involves "allegations [that] are separate and distinct from the allegations of breach of contract." *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 484 (S.D.N.Y. 2011) (although both claims "arise[] out of the same facts," fiduciary duty claim not duplicative of contract claim because it raises "separate and distinct" allegations regarding misrepresentations made by defendants); *see also Garber v. Stevens*, 941 N.Y.S.2d 127, 129 (App. Div. 2012) (affirming grant of summary judgment to limited partners on breach of contract *and* fiduciary duty claims against general partners who, in violation of the

---

[2] Defendants claim that non-HDG members of the Funds' Investment Committee "agreed that the HDG Entities' interpretation of 'financing fees' had merit." Opp. at 4 (citing HDG 56.1 ¶ 47). This flatly misstates the record. The only evidence Defendants cite shows the opposite. In an email exchange between investment committee members Edward Glover and Richard DeZego, Glover says that if he "were a judge and saw that a fee was already being charged on the purchase price as well as the third party financing," he "would find it pretty difficult to accept that a fee should also be paid on internal equity." Earley Decl. Ex. 20. This is exactly the conclusion the Court reached when it held that Defendants' proffered interpretation of the FMA was "entirely baseless." Aug. 1, 2013 Decision at *15 ("It makes no sense at all that [the Fund Managers] would be paid a 'financing fee' calculated off a base that includes the Plaintiff Funds' equity in the Property Investments, which [the Fund Managers] neither raised nor arranged") [Dkt. No. 34].

parties' partnership agreement *and* their fiduciary duties, refinanced partnership properties and paid themselves fees out of the partnership's coffers).

As described above, the Fund Managers owed fiduciary duties to the Funds that existed independent of the parties' FMA, and for this reason alone the Funds' fiduciary duty claim against the Fund Managers is not duplicative of their contract claim.  Moreover, the claim can proceed for the additional reason that it alleges misconduct by the Fund Managers that is separate and distinct from the misconduct underlying the contract claim, and which resulted in additional damages to the Funds.

To prevail on their contract claim, the Funds needed only to show that the Fund Managers had taken $5,818,682 that they were not entitled to take as "Financing Fees" under the contract—the only explanation that the Fund Managers offered for taking the money.  For their fiduciary duty claims against the Fund Managers and Garrison, however, the Funds have shown, in addition, that the Fund Managers and Garrison: placed their own financial interests ahead of those of their clients; acted imprudently by taking money from the Funds despite directions from the Funds' Boards not to do so without approval; dishonestly concealed their misappropriation of this money throughout 2012; lied about the reason for the payments even when confronted in late 2012 and early 2013; and refused to place any of the disputed assets in escrow to protect the Funds and their shareholders should the Court conclude (as it already has) that the Fund Managers were not entitled to take the money.  These breaches of fiduciary duty resulted in damages beyond those caused by the contract claim.  These include, for example, insurance and transition fees that the Funds had to incur as a result of discovering that their fund manager had not made a mere good-faith error, but in fact had engaged in fraud and other acts of self-dealing. Pls. St. ¶ 38 [Dkt. No. 100].

### D. Garrison Aided and Abetted the Fund Managers' Breach of Fiduciary Duties.

Absent special circumstances, an officer of a corporation does not personally owe fiduciary duties to the corporation's clients, and thus cannot be liable to the clients for a primary breach of fiduciary duty.  *See, e.g.*, *Krys v. Butt*, 486 F. App'x 153, 156 (2d Cir. 2012).[3]  It therefore makes sense that an officer who actively participates in the corporation's breach of *its* fiduciary duties to its clients—like Garrison here—can be liable for *aiding and abetting* the corporation's breach.  *See id.* at 157 (noting that "beyond direct liability for one's own actions, New York law recognizes a cause of action for aiding and abetting another's breach of fiduciary duty").  Any other rule would run contrary to the principle that corporate officers who participate in tortious conduct cannot escape liability by hiding behind the corporate entity.  *See Rajeev Sindhawni, M.D., PLLC v. Coe Bus. Serv., Inc.*, 861 N.Y.S.2d 705, 709 (App. Div. 2008) ("A corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced") (citation omitted).

Defendants, however, argue that it "defies case law and common sense" that Garrison could be liable for aiding and abetting because he "would be aiding and abetting his own supposed breach of fiduciary duty."  Opp. at 21.  Defendants' argument ignores the distinction between Garrison and the Fund Managers.  The Fund Managers, the primary violator, owed fiduciary duties to the Funds and breached those duties when Garrison and others directed the Fund Managers to misappropriate fees to which they were not entitled and to lie about their

---

[3] Such "special circumstances" are present here, as Garrison also served as a member of the Funds' boards of directors, and in that capacity owed direct fiduciary duties to the Funds.  *See generally* 3 Fletcher Cyc. Corp. § 837.50 ("Directors . . . stand in a fiduciary relationship to the corporation" and "must exercise the utmost good faith in all transactions touching their duties to the corporation and its property").

misappropriation of the money. Garrison had actual knowledge that the Fund Managers were not supposed to take the money and had lied to the Funds, and he substantially assisted the Fund Managers in *their* misconduct. By "'behav[ing] in a manner that enable[d] the primary violator to commit the underlying tort,'" he subjected himself to liability as an aider and abettor. Opp. at 21 (quoting *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1134 (C.D. Cal. 2003)).

## CONCLUSION

For the foregoing reasons, the Funds respectfully request that the Funds' cross-motion for summary judgment be granted.

Dated: New York, New York  
       February 5, 2014

WILMER CUTLER PICKERING  
  HALE AND DORR LLP

By:   /s/ Charles C. Platt_____  
     Charles C. Platt  
     Jeremy S. Winer  
     Stephanie D. Shuler  
     Fiona J. Kaye  
  7 World Trade Center  
  250 Greenwich Street  
  New York, New York 10007  
  Tel: (212) 230-8800  
  Fax: (212) 230-8888  

*Attorneys for Plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd.*