UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

GPIF-I EQUITY CO., LTD. and GPIF-I
FINANCE CO., LTD.,

      Plaintiffs/Counterclaim Defendants,

      -against-                              No. 13 Civ. 547 (CM)

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON,

      Defendants/Counterclaim Plaintiffs.

---------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER (1) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' REMAINING CLAIMS AND (2) DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT ON THEIR FIDUCIARY DUTY CLAIMS**

McMahon, J.:

Plaintiffs GPIF-I Equity Co., Ltd., and GPIF-I Finance Co., Ltd., (together, the "Funds") brought this action against Defendants HDG Mansur Investment Services, Inc., HDGM Advisory Services, LLC (together, the "HDG Entities"), and Harold D. Garrison, alleging breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, and violation of the Investment Advisors Act, 15 U.S.C. § 80b-1 *et seq.*, stemming from Defendants' alleged misappropriation of $5,818,682 from the Funds between February and November 2012.

Currently before the Court are two motions: (1) Defendants' motion for summary judgment on Plaintiffs' remaining claims (following this Court's grant of summary judgment to Plaintiffs on their breach of contract claim), and (2) Plaintiffs' cross-motion for partial summary judgment on their fiduciary duty claims. For the following reasons, Defendants' motion is granted in part and denied in part, and Plaintiffs' motion is denied.

1

## BACKGROUND

The Funds are real estate investment funds that were set up as an investment vehicle for religious Muslims, who are prohibited by Shariah law from paying or receiving interest or becoming direct lenders or borrowers. The HDG Entities are real estate investment advisory firms that provided advisory and management services to the Funds. Harold D. Garrison is the co-founder of HDG Mansur Investment Services, Inc. ("HDGMIS").

From 2002 through March 2012, HDGMIS acted as the Fund Manager to the Funds. HDGMIS entered into Fund Management Agreements (the "FMAs") with each of the Plaintiff Funds. In 2012, Defendant HDGM Advisory Services ("HDGMAS") was created, and on March 30, 2012, it took an assignment of all of HDGMIS' rights and obligations under the FMAs.

The FMAs provided that the HDG Entities would provide various services to the Funds, including "the structuring, acquisition and financing of investments, in accordance with the principles of Islamic Shariah as interpreted by the Shariah committee [a committee at HSBC that oversees Shariah-compliant investment services]." In return for these services, the HDG Entities were entitled to receive two types of fees from the Funds: "Financing Fees" and "Investment Fees." The FMAs distinguish between the way the Financing Fees are calculated and the way Investment Fees are calculated.

In late 2011 or early 2012, the HDG Entities suddenly decided that they had been reading the FMAs incorrectly for the past decade and that they were entitled to an additional $5,818,682 in Financing Fees—which sum they proceeded to withdraw from various of the Funds' accounts, in some thirty different transactions, of differing amounts, all without obtaining any approval from Plaintiffs or their Board of Directors. Indeed, it is not clear that Plaintiffs were even notified of Defendants' contractual epiphany until after the money had been taken

2

from the Funds. Defendants claimed that they were simply exercising their contractual right to self-help as set forth in Section 3 of the FMAs.

The Funds finally learned of Defendants' new contract interpretation in the fall of 2012. In January 2013, they terminated the FMAs and brought this action seeking the return of the $5.8 million that Defendants withdrew from their accounts. Plaintiffs filed their Complaint on January 24, 2013, along with a motion for a preliminary injunction, asking the Court to order the HDG Entities to deposit the $5.8 million in a constructive trust during the pendency of the litigation. The Court held a hearing on January 31, 2013, and denied the motion, holding that Plaintiffs had an adequate remedy at law.

On February 15, 2013, the HDG Entities asserted counterclaims against Plaintiffs for breach of contract and accounting. They claim that Plaintiffs owe the HDG Entities approximately $20.3 million in fees related to Plaintiffs' early termination of the parties' agreement, including, *inter alia*, fees owed on certain closed and pending transactions and a "severance payment."

On August 1, 2013, this Court granted Plaintiffs' motion for partial summary judgment on their breach of contract claim against the HDG Entities and awarded them $5,181,682 in damages, plus statutory pre- and post-judgment interest.

On December 20, 2013, this Court denied the parties' cross-motions for summary judgment on Defendants' counterclaims and also denied Plaintiffs' motion for entry of a partial judgment.

## DISCUSSION

### I. Summary Judgment Standard

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed. R.

3

Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In addressing a motion for summary judgment, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor. *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Whether any disputed issue of fact exists is for the court to determine. *See Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248. Finally, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

II. **Defendants' Motion for Summary Judgment Is Granted in Part and Denied in Part.**

    A. **Defendants' Motion for Summary Judgment on Plaintiffs' Investment Advisers Act Claim Is Denied.**

Defendants argue that Plaintiffs' claim under the Investment Advisers Act fails because (1) Plaintiffs already terminated the FMAs, leaving them no remedy under the Act, and (2)

Plaintiffs' IAA claim seeks identical damages as their breach of contract claim. Neither argument persuades the Court.

Section 206 of the IAA states:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly . . . to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

15 U.S.C. § 80b–6(2). This provision is given teeth by section 215 of the Act, which "provides that any investment adviser contracts whose formation or performance would violate the provisions of the IAA 'shall be void.'" *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 388 (S.D.N.Y. 2004) (quoting 15 U.S.C. § 80b–15). Courts have interpreted section 215 to create an implied private right of action allowing plaintiffs to seek the "customary legal incidents of voidness," which include suits for "rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Relief under section 215 of the Act is therefore available only when "an investor brings suit on [its] investment adviser's allegedly improper conduct . . . pursuant to a contract for services, and seeks a remedy consistent with a determination that the contract is void." *Norman*, 350 F. Supp. 2d at 388.

Defendants argue that Plaintiffs' termination of the FMAs in January 2013 leaves them without any possible remedy under the IAA, because "where plaintiffs have already terminated the contract, as the Funds have done here, rescission is no longer an available remedy." Defs.' Mem. at 4. For support, Defendants point to *Frank Russell Co. v. Wellington Mgmt. Co., LLP*, 154 F.3d 97, 100-02 (3d Cir. 1998), in which the Third Circuit held that former clients of an investment management firm could not bring an action under the IAA to enjoin the firm from enforcing a non-compete agreement between it and a former employee (to whose new firm the

5

clients had transferred their business). Because the plaintiffs had already terminated their contract with the defendant, the Third Circuit concluded that their action under the IAA was barred by *Transamerica* because it was "not an attempt to void an investment advisor contract." *Id.* at 102.

According to Defendants, *Frank Russell* bars Plaintiffs' IAA claim in this action because it teaches that "a private party cannot seek to void an investment advisor contract at the same time that it 'affirms the contract' by bringing suit on it." Defs.' Reply at 5 (quoting *Frank Russell*, 154 F.3d at 102). The case teaches no such thing, for two reasons.

First, the alleged violation of the IAA in *Frank Russell*—the defendant's lawsuit to enforce the non-compete agreement—took place *after* the contract was terminated. Here, by contrast, Plaintiffs did not terminate the FMAs until weeks after the HDG Entities completed their alleged thefts from the Funds.

Second, the relief sought by the plaintiff in *Frank Russell*—an injunction preventing the defendant from enforcing a non-compete agreement against the plaintiff's new investment management firm—had nothing to do with the "customary legal incidents of voidness," *Transamerica*, 444 U.S. at 19, and therefore the Third Circuit was justified in concluding, without much discussion, that the plaintiff's suit was "clearly . . . not an attempt to void an investment advisor contract." *Frank Russell*, 154 F.3d at 102. Here, although the FMAs have already been terminated, Plaintiffs seek damages in the form of restitution, as well as relief that would bar Defendants from collecting any "severance" or other sum to which the FMAs might entitle them. Both equitable remedies are customary incidents of voidness.

As my colleague Judge Lynch held in *Norman*, to require, as Defendants would here, that an investor "maintain his account through the pendency of an action under the IAA, continuing

to pay fees to the investment adviser after he has become aware of the damaging conduct, so as not to forfeit his remedies under the Act, would be absurd and wholly at odds with the investor-protection purposes of the statute." *Norman*, 350 F. Supp. 2d at 389. Instead, "the correct analogy here is to other types of contracts that are void *ab initio* because of the statute of frauds or because they are against public policy (whether embodied in statute or broader notions of public welfare). Even where these contracts have been 'terminated' through completion of performance or the action of one party, restitution continues to be available as a remedy to a wronged party." *Id.*

Defendants argue in the alternative that Plaintiff's IAA claim fails because it seeks the same damages as Plaintiffs' breach of contract claim, on which this Court previously granted summary judgment. Although, if true, this fact would indeed render the claim subject to dismissal, Plaintiffs represent that they seek some $2,688,925 in additional damages, over and above the $5,818,682 to which they are entitled on their breach of contract claim. Whether Plaintiffs are entitled to these additional damages is a disputed issue of fact that will be resolved at trial.[1]

### B. Defendants' Motion for Summary Judgment on Plaintiffs' Breach of Fiduciary Duty Claim Is Denied.

Defendants argue that Plaintiffs' breach of fiduciary duty claim is also duplicative of their breach of contract claim. The Court disagrees.

Under New York law, claims of fraud and breach of fiduciary duty that merely duplicate contract claims must be dismissed. *See, e.g., William Kaufman Org., Ltd. v. Graham & James*

---

[1] That Plaintiffs never mentioned these additional damages in their Complaint is irrelevant, because although a *default* judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings," any other final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

7

*LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000); *Morgan v. A.O. Smith Corp.*, 697 N.Y.S.2d 152, 152 (2d Dep't 1999). Conduct constituting a breach of contract may nevertheless actionable in tort, however, if "a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987). "Such a duty may be independent of a contract and yet emerge from a relationship of trust and confidence created by a contract, as in the case of a lawyer and client." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp. 2d 385, 408 (S.D.N.Y. 2005).

In other words, "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Id.* (quoting *Mandelblatt v. Devon Stores*, 521 N.Y.S.2d 672, 676 (1st Dep't 1987)); *see Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). "Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties. In these instances, it is policy, not the parties' contract, that gives rise to a duty of due care." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551-52 (1992) (internal citations omitted).

In *Fraternity Fund*, a group of hedge fund managers were accused of overstating their funds' net asset values ("NAVs") in audited financial statements and monthly performance reports representing that the funds' NAVs were "steadily increasing with little volatility and virtually no negative months" when in fact they were losing money, due in part to highly leveraged short positions in U.S. Treasuries. 376 F. Supp. 2d at 390-91. After the funds collapsed, a group of fund shareholders sued, alleging federal securities violations along with state-law claims that included breach of contract and breach of fiduciary duty claims against

Asset Alliance Corp., which held a 50% interest in one of the hedge fund manager defendants. *Id.* at 392-93. Despite the existence of a contract between the parties requiring Asset Alliance to "monitor the status and performance of [the fund managers] at least once a month, and [to] promptly inform [plaintiff] if, for any reason, it believes that [the fund managers] should be de-selected," my colleague Judge Kaplan refused to dismiss the plaintiff's breach of fiduciary duty claim as duplicative. Instead, he held that based in part on this contractual obligation, the plaintiff "justifiably reposed trust and confidence in Asset Alliance and relied upon its superior knowledge" and that Asset Alliance therefore owed the plaintiff an independent fiduciary duty. *Id.* at 413-14.

Defendants, for their part, point to *MashreqBank, psc v. ING Grp. N.V.*, No. 13-cv-2318 (LGS), 2013 WL 5780824, at *1-2 (S.D.N.Y. Oct. 25, 2013), in which another of my colleagues, Judge Schofield, recently dismissed a breach of fiduciary duty claim brought against an investment manager that had invested the plaintiff's funds in risky, asset-backed securities such as CDOs, CBOs, and CLOs, even though a contract between the parties allegedly barred such investments. Because (1) the plaintiff's complaint did not "allege a fiduciary duty apart from the Agreement and Revised Guidelines," and (2) the breach of fiduciary duty claim was "based upon the same facts and theories" as the breach of contract claim and was comprised of allegations "either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith," Judge Schofield held that the claim was duplicative of the plaintiff's breach of contract claim. *Id.* at *5 (internal quotation marks omitted).

Defendants also cite *Perkins v. Am. Transit Ins. Co.*, No. 10-cv-5655 (CM), 2013 WL 174426, at *10 (S.D.N.Y. Jan. 15, 2013), in which this Court dismissed a breach of fiduciary

9

duty claim against an auto insurer that was based on the insurer's alleged failure to exercise "due care and diligence" in its defense of a negligence action against the insured. Because the plaintiff offered no evidence that the insurance company owed the insured any "duty above and beyond one arising out of their contractual relationship," this Court held that the breach of fiduciary duty claim was duplicative.

Unlike in *MashreqBank* and *Perkins*, Plaintiffs in this case do allege the existence of a fiduciary duty apart from the FMAs, and Defendants appear to have admitted in their answer that one exists. *See* Compl. ¶ 40 (alleging that "the HDG Entities owed fiduciary duties under the common law and the Investment Advisers Act to the Funds and the shareholders by virtue of the Agreements and the fund management and investment advisory services that the HDG Entities provided to the Funds as manager and agent for the Funds, and by virtue of the trust and confidence that the Funds placed in the HDG Entities"); Answ. ¶ 40 ("Defendants admit the allegation in Paragraph 40."). And in contrast to the insurance context, in which New York courts will not recognize a fiduciary relationship between insurer and insured without evidence that "will permit a jury to assess the circumstances of the relationship to determine if it is one of trust and confidence," *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 546-47 (S.D.N.Y. 1997), "investment advisors owe fiduciary duties to their clients, much as general partners owe fiduciary duties to limited partners." *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 470-71 (S.D.N.Y. 2007) (internal citation omitted).

Plaintiffs have offered evidence tending to show that the HDG Entities breached their fiduciary duties by, among other things, placing their own financial interests ahead of Plaintiffs', concealing their misappropriation of money from the Funds, and refusing to place the disputed assets in escrow pending litigation. These allegations go beyond the misconduct alleged in

10

Plaintiffs' breach of contract claim, and render their breach of fiduciary duty claim non-duplicative.

## C. Defendants' Motion for Summary Judgment on Plaintiffs' Fraud Claim Is Denied.

Defendants argue that Plaintiffs' common-law fraud claim also duplicates their breach of contract claim. They are incorrect. Under New York law, a plaintiff can pursue a fraud claim along with a breach of contract claim if he can *either* (1) demonstrate a legal duty separate from the duty to perform under the contract, (2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. *Guilbert v. Gardner*, 480 F.3d 140, 148 (2d Cir. 2007). Here, as noted above, the HDG Entities owed Plaintiffs fiduciary duties separate from their obligations under the FMAs. Plaintiffs' fraud claim against the HDG Entities is not duplicative.

Defendants' argument for dismissal of the fraud claim against Garrison also fails. Plaintiffs have established a genuine dispute of fact about Garrison's personal involvement in the HDG Entities' fraud.

## D. Garrison's Motion for Summary Judgment on Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Is Granted.

Finally, Defendants argue that Plaintiffs' claim against Garrison for aiding and abetting breach of fiduciary duty fails because, as an officer of the HDG Entities, Garrison cannot be liable for aiding and abetting the HDG Entities' alleged breach of fiduciary duty. The Court agrees, and the claim is dismissed.

In *AHA Sales, Inc. v. Creative Bath Products, Inc.*, 867 N.Y.S.2d 169 (2d Dep't 2008), a sales representative for manufacturers brought suit against Creative, a bath products manufacturer on whose business the plaintiff claimed to be "substantially dependent," for

11

various state-law claims including breach of contract and breach of fiduciary duty. The plaintiff also brought a claim against Creative's president, Mathias Meinzinger, for inducing the company's breach of contract and aiding and abetting its breach of fiduciary duty. After reversing the trial court's dismissal of most of the plaintiff's claims against Creative, including breach of fiduciary duty, the Second Department affirmed the dismissal of the claims against Meinzinger. Despite allegations that Meinzinger had "induced the plaintiff to continue serving as [Creative's] sales representative for many years, for the most part without a written contract, by representing that it could trust him and Creative, and that the plaintiff would continue as a sales representative for Creative as long as Meinzinger owned Creative," the court held that the plaintiff's claim against Meinzinger for aiding and abetting Creative's breach of fiduciary duty failed because Meinzinger's actions were taken in his capacity as the company's president. *Id.* at 181-83; *see also BGW Dev. Corp. v. Mount Kisco Lodge No. 1552 of Benev. & Protective Order of Elks of the United States of Am., Inc.*, 669 N.Y.S.2d 56, 59 (2d Dep't 1998) ("A corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer and did not commit independent torts or predatory acts directed at another.").

Here, as in *AHA Sales*, Plaintiffs' evidence is insufficient to establish that, assuming Garrison aided and abetted the HDG Entities' breach of their fiduciary duties to the Funds, "he did so in any capacity other than his capacity as a corporate officer." *AHA Sales, Inc.*, 867 N.Y.S.2d at 182-83. In their cross-motion for summary judgment on this claim, Plaintiffs point to evidence tending to show that: (1) "while serving on the Funds' boards, Garrison had actual knowledge that the [HDG Entities] had taken more than $5.8 million in Fund assets to which they were not entitled"; (2) Garrison "substantially assisted the [HDG Entities] in taking that

12

money"; and (3) Garrison "directed that assets misappropriated from the Funds be transferred to other entities and a trust in which he or members of his family had an ownership interest." Pl. Opp. at 20. Although this last allegation carries with it an insinuation of selfish motives, nowhere in their motion papers do Plaintiffs even argue that Garrison acted in his personal capacity and not as an officer of the HDG Entities. Plaintiffs' claim against Garrison for aiding and abetting the HDG Entities' breach of fiduciary duty is therefore dismissed.

## III. Plaintiffs' Cross-Motion for Partial Summary Judgment On Their Fiduciary Duty Claims Is Denied.

The issues of fact pertinent to Plaintiffs' fiduciary duty claims are being tried in connection with the trial of Defendants' counterclaims. We will therefore go to trial on all remaining claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiffs' motion for partial summary judgment is denied. The Clerk of the Court is directed to remove Docket Nos. 86 and 95 from the Court's list of pending motions.

Dated: April 21, 2014

_[signature]_

U.S.D.J.

BY ECF TO ALL COUNSEL

13