UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

4/30/14

GPIF-I EQUITY CO., LTD, and
GFIP-I FINANCE CO., LTD.

        Plaintiffs-Counterclaim Defendants,

        -against-                                             13 Civ. 547 (CM)

HDG MANSUR INVESTMENT SERVICES, INC.,
HDGM ADVISORY SERVICES, LLC, and
HAROLD D. GARRISON,

        Defendants-Counterclaim Plaintiffs.

----------------------------------------------------------x

DECISION ON COUNTERCLAIM DEFENDANTS' IN LIMINE MOTIONS
AND APPLICATION FOR AN ADJOURNMENT OF THE TRIAL

McMahon, J.:

    The court, for its rulings *in limine*:

(1) **Motion to Preclude Evidence of a Heretofore Undisclosed Alternative Reason Why Defendants Removed $5.8 Million From Their Clients' Bank Accounts is GRANTED**.

    The court that will try this case does not arrive at the day of reckoning a stranger to the evidence or the parties' arguments.

    We have already had extensive motion practice concerning the Defendant fiduciary's secret theft of $5.8 million from the bank accounts of the Plaintiffs, their clients. At the time the theft was discovered, and throughout the course of that litigation — which resulted in the granting of Plaintiff's motion for summary judgment for the full $5.8 million in wrongfully taken funds — Defendants repeatedly contended that they took the money rightfully to redress the historical underpayment of fees they were owed under the Fund Management Agreements (FMAs) between the two plaintiff Funds and the defendants. At no time after the discovery by the Funds' Boards of the taking did Defendants say to their clients, "Yes, we took the money because we were underpaid for

1

years, but we also took the money from your accounts because we are entitled to pre-pay ourselves for our work on certain deals that have not yet closed."[1] In the numerous papers filed with this court in connection with not one but two motions for summary judgment, Defendants never argued, "Even if we were not entitled to 'true up' historically underpaid financing fees, we actually — or at least also — took the money to pay ourselves for work we were doing on deals that had not yet closed, a practice that accords with the parties' course of dealing." The court learned for the first time when it read the motion *in limine* that defendants planned to argue that there was a second and separate reason why it removed millions of dollars from their clients' accounts without the clients' knowledge or permission.

In effect, what Defendants propose to do is justify their theft by insisting that there was a second, secret, undisclosed reason why they took the money from their clients' accounts.

That is not going to happen.

Let me begin this discussion with a brief history of what has transpired to date:

Very shortly after this lawsuit was filed, plaintiffs moved for summary judgment on their claim of breach of contract (Count Two). They argued that defendants had breached the terms of their management agreement when they unilaterally and secretly helped themselves to the $5.8 million.

In order to defend against that motion, defendants should have raised any and every reason why taking the money did not breach their FMAs with the plaintiff Funds.

Defendants offered exactly one justification for taking the money: they were "truing up" (to use their euphemism) historically underpaid management fees. As described in the court's opinion granting plaintiffs' motion *GPIF-I Equity Co., Ltd. V. HDG Mansur Inv. Servs. Inc.*, No. 13 Civ. 547, 2013 WL 39899041 (S.D.N.Y. Aug. 1, 2013), defendants claim to have had an epiphany during 2012, when they realized (after ten years of doing business in the same way) that they had misread the FMAs and should have been paid far more money all along – going back, I believe, to 2002.

For the reasons explained in the opinion, this Court gave that argument short shrift and granted Plaintiffs summary judgment. It has thus been fully and finally adjudicated that Defendants breached their contract by taking the $5.8 million.

Let me restate that so that I am fully understood. The court's ruling was not simply that defendants had no right to "true up" underpaid management fees. Rather, I granted the

---

[1] I cannot help but note that a deal that has not closed is a deal that might not close.

plaintiffs summary judgment on their claim that defendants' taking of the money constituted a breach of contract. If there were some legitimate reason why defendants could have taken the money without breaching their contract, they were required to raise that reason in response to the original summary judgment motion. It is undisputed that they raised no other argument – specifically, they did not argue that there had been no breach because they were entitled to pre-pay themselves fees on deals not yet concluded.

But while this issue has been fully litigated and (as far as this court is concerned) finally resolved, plaintiffs – due to a technicality – cannot invoke the doctrine of collateral estoppel to bar defendants from raising what is, in effect, this new defense to plaintiffs' breach of contract.[2]

Collateral estoppel bars a party from litigating all issues that were or could have been litigated in the course of deciding an issues. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. As . . . [the Supreme] Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (internal citation omitted).

Obviously, plaintiffs would not have been entitled to summary judgment on the breach of contract claim if, despite the lack of merit in the "truing up" argument, defendants were otherwise contractually entitled to take the money without their clients' knowledge or permission. That means the validity of prepayments could — and should — have been litigated in connection with the motion for summary judgment on Count Two.

But while I granted the motion and found defendants in breach of contract, I have not yet entered judgment in favor of plaintiffs, and principles of former adjudication generally require the entry of a final judgment. "An order that adjudicates fewer than all of the claims remaining in the action is not a final order . . . unless the court directs the entry of a final judgment as to the dismissed claims 'upon an express determination that there is no just reason for delay.'" *Kamerling v. Massanari*, 295 F.3d 206, 213 (2d Cir. 2002) (citing Fed. R. Civ. P. 54(b)). I twice declined to do precisely that -- solely and simply because the pendency of defendants' counterclaims raised the possibility of an offset that might reduce or even eliminate plaintiffs' entitlement to recover the $5.8 million. Defendants urged the court to reach that result.

---

[2] I appreciate that defendants do not characterize their new argument as a defense to the breach of contract claim – they argue that it justifies their counterclaim -- but defendants plan to argue that they were contractually entitled to remove $5.8 million secretly from their clients' accounts, based on their entitlement to certain fees and the parties' purported course of dealing; and any finding that they were so entitled – in whatever context -- would be inconsistent with the court's prior ruling that Defendants breached the FMAs when they took the money.

3

Lacking a judgment, plaintiffs move instead on the ground of judicial estoppel. Defendants argue that the doctrine is being misapplied. Defendants are incorrect.

Judicial estoppel bars a party from taking a position that is clearly inconsistent with a prior position taken by them. In this Circuit, the four requirements for judicial estoppel are : (1) a party's later position is clearly inconsistent with its earlier position; (2) the former position has been adopted "in some way" by the court; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel; and (4) failure to apply estoppel would make the risk of inconsistent results, with its impact on judicial integrity, all but certain. *Advanced Video Techs LLC v. HTC Corp.*, 2013 WL 6017923, at n.8 (S.D.N.Y. Nov. 7, 2013).

All four elements of judicial estoppel are present here.

First, in connection with the disposition of Count Two, defendants explicitly took the position that they were not in breach of the FMAs for one and only one reason – the terms of the management agreement entitled them to be paid $5.8 million more in management fees *attributable to prior deals* than they had already been paid. Defendants submitted two sworn statements to this court early in 2013, both averring that the $5.8 million was taken to recompense the Defendants for "underpayments" on pre-2012 transactions. Neither statement suggested that the money was taken to "pre-pay" for transactions expected to close at the end of 2012. See e.g., Garrison Declaration at docket #7, ¶¶18-23. The exact same representations were made to the court in two memoranda of law (Dockets #8 at 15 and #24 at 1). More recently, Defendants have stipulated that they told the Boards of the Plaintiff Funds that the money had been taken because Defendants realized that they were owed more for past services rendered (Stipulated Facts ¶¶25-26 in the Final Pre-Trial Order, Docket #97). Defendants actually prepared a schedule for the Boards purporting to show that the money was taken due to "underpayments" for prior transactions. (TX-15)[3]

In none of those submissions did defendants assert that they (also) took the money because they were entitled to pre-pay themselves for transactions that had not yet closed – though if that were authorized under the FMAs (as interpreted by the parties' course of dealing), that would have been a full defense to a claim for breach of contract.

Second, in granting summary judgment to plaintiffs on Count Two, the court adopted defendants' position "in some way." Because the "true up" (or, as I called it, the "epiphany") argument was entirely lacking in merit, the court ruled that defendants did indeed breach the FMAs by helping themselves to the money. In so doing, I necessarily adopted the litigation position that had been espoused by defendants: the only reason it took the money was to "true up" previously underpaid management fees. Had there been some

---

[3] Defendants do not seem to have given much consideration to whether this court – the trier of fact, since there is going to be a bench trial – would find the newly-asserted argument for why they were authorized to take the money from their clients to be credible.

4

other reason why the money was taken, I could not have concluded that defendants were in breach of the contract without addressing that alternative argument.

Third, there is no question that Defendants would derive an unfair advantage against plaintiffs if they were now able to assert that there was some other contractual reason why they were entitled secretly to help themselves to (exactly) $5.8 million from their clients' accounts. Defendants succeeded in convincing the court – not once, but twice -- that the entry of partial final judgment in favor of plaintiffs would be inappropriate, because they were asserting counterclaims that would have to be offset against the $5.8 million judgment in plaintiffs' favor. They took this position without ever apprising the court that they intended to justify a portion of that offset on the ground that taking the money did not actually violate the contract. This has prejudiced plaintiffs in their quest for finality, which would have permitted the application of collateral estoppel.

Finally, were Defendants to be permitted to raise the argument they now seek to make, it would raise the very real risk of inconsistent results – yes, they did breach the contract; no, they didn't breach the contract after all -- which impacts on the integrity of this court and the proceedings before it.

Additionally, it is law of the case that defendants breached the FMAs by taking the money – that is, the court has determined, on the facts presented, that defendants breached the terms of their FMAs with the plaintiff Funds as a matter of law. Under the law of the case doctrine, when a court "decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996). The law of the case doctrine "only forecloses consideration of issues that have already been decided." *Steinfield v. Marks*, No. 96-cv-0552 (PKL), 1997 WL 563340, at *3 (S.D.N.Y. Sept. 8, 1997). "Under this doctrine, a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (citing *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

In sum, whether on the ground of judicial estoppel or law of the case, defendants are barred from relitigating whether they were authorized to take the $5.8 million from plaintiffs' accounts. They will not be permitted to switch horses and argue that the reason they took the money was to pre-pay themselves for management fees on deals not yet concluded.

This does not mean that defendants cannot establish that they were owed fees on deals not yet concluded at the time the management agreements were terminated. They can – the essence of their counterclaim is that they were entitled to certain fees upon the termination of the contracts. What they cannot now do is assert that the $5.8 million theft (for theft it was) was intended by them to be a prepayment of deal fees and was contractually authorized as a prepayment of deals fees. I assume the parties understand the difference.

5

### 2. The Motion to Bar Evidence of Fees Connected to Four Leases is DENIED.

The rest of plaintiffs' motion is the perfect example of how the *in limine* motion process is abused. Plaintiffs are in effect seeking summary judgment on certain arguments Defendants propose to make in support of their counterclaims. Plaintiffs should have raised these issues when they made their second motion for summary judgment. Having failed to do so, they must litigate them. Plaintiffs appear to have lots of defenses to any claim for leasing fees; they should definitely present them to the court during the trial; the fact that Plaintiffs will have to introduce "substantial amounts of evidence" in order to make out those defenses is no reason to grant an *in limine* motion.

That said, the parties are on notice that all direct testimony in this bench trial will be by affidavit, as per the court's rules on bench trials; that the court will only allow a total of 10 hours of cross examination by each side for all witnesses; and that lengthy and detailed proposed findings of fact must be presented to the court BEFORE THE TRIAL (every one of them with citations to the relevant witness or to whatever documentary evidence purportedly supports the factual claim). There should, for example, be proposed findings of fact relating to such issues as whether the leases in question permit or bar fees to defendants, and whether the FMAs do or do not provide for the provision of leasing services. They should cite to the relevant provisions of the FMAs and reference the testimony of any witnesses who will give testimony about them. The affidavits and proposed findings are due no later than May 21, so I can be fully familiar with them when we gather for trial on May 27.

It is my practice to check off findings of fact with which I agree and announce them from the bench, along with a verdict, at the conclusion of the evidence; I do not ordinarily write decisions in bench trials, and I have no intention of doing so in this case. I have two other trials backed up on this one, one of them a criminal trial; the parties told me this could be tried in less than a week and I have taken them at their word.

No party should take this ruling as an intimation that defendants are entitled to recover fees in connection with these leases. They may well not be so entitled. However, the issue must be tried – it is not appropriately resolved on what is actually a motion for partial summary judgment disguised as a motion in limine.

### 3. The Motion to Bar Evidence Regarding ING Refinancing Fees is DENIED.

For the reasons set forth in Section 2 above, this aspect of Plaintiffs' motion – another summary judgment motion in disguise – is denied. Again, the court intimates nothing about the merits of this aspect of the counterclaim. And again, I suggest detailed findings of fact, because it is this court's practice to tick off findings of fact from the parties' proposals and read that list into the record, rather than writing a lengthy decision after a bench trial.

6

## 4. The Motion to Bar Evidence Regarding the Correct Amount of the NAV Is DENIED.

By now I imagine that the plaintiffs understand that *in limine* motions are not for litigating issues that could and should have been raised on summary judgment. We are going to trial, and at trial Defendants bear the burden of proving their entitlement to the substantial sums they are seeking. If plaintiffs have to submit "substantial evidence" to rebut certain claims, then they should be prepared to submit that evidence.

## 5. The Application for a Stay of the Trial Is DENIED

This morning I have a letter from Defendants asking for a short stay of the trial on the ground that they have learned that the United States Attorney is looking into their conduct. I can't say that I am surprised to hear as much; I had expected something of the sort a year ago.

The application for a stay of the trial is DENIED. Defendants' application recognizes that court in this Circuit typically do not stay civil actions prior to indictment, and there is no indictment pending here – indeed, Defendants insist that they will be able to convince the United States Attorney to drop this matter. I do not intend to wait around and see what Mr. Bharara chooses to do. Plaintiffs have waited quite long enough to get this lawsuit concluded.

I need also to correct a misstatement in counsel's letter: an indictment and criminal trial would not supercede this civil lawsuit. Plaintiffs have already established that they are entitled to get their $5.8 million back; unless Defendants can establish some offset, I intend that they shall have judgment within the month.

Defendants of course have an absolute right to claim Fifth Amendment privilege during the course of a civil trial; should they do so, the court will draw the appropriate inference (i.e., against them).

The Clerk should remove the motions at Docket # 116 and 123 from the court's list of open motions.

Dated: April 30, 2014

_____
U.S.D.J.

BY ECF TO ALL COUNSEL