UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
GPIF-I EQUITY CO., LTD. and  :
GPIF-I FINANCE CO., LTD.,  :
 :
        Plaintiffs-Counterclaim Defendants,  :
 :     **Case No. 13 Civ 547 (CM)**
v.  :
 :
HDG MANSUR INVESTMENT SERVICES, INC.,  :
HDGM ADVISORY SERVICES, LLC, and  :
HAROLD D. GARRISON  :
 :
        Defendants-Counterclaim Plaintiffs.  :
----------------------------------------------------------------x

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR CLARIFICATION

MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO, P.C.
Francis J. Earley
Scott A. Rader
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
FEarley@mintz.com
SARader@mintz.com

# TABLE OF CONTENTS

**PAGE**

THE COURT'S RULING ..................................................................................................2

ARGUMENT ....................................................................................................................3

      A.     Defendants do not seek to offer prepayment evidence to support an offset against the $5.8 million in dispute ........................................................................3

      B.     Defendants did not raise the FMA's prepayment provision as a defense to Plaintiffs' breach of contract claim because it was irrelevant ................................4

            (1)     Evidence of intent is irrelevant to a breach of contract claim ...................4

            (2)     Evidence of intent is critical to a fraud claim ............................................5

      C.     The prepayment argument is not new or previously undisclosed ..........................6

      D.     The evidence demonstrates that Defendants held a good faith belief that the FMA entitled them to receive the disputed fees in 2012 as prepayments of transactions budgeted to occur ........................................................................8

      E.     Allowing prepayment evidence would not lead to any risk of inconsistent results ....................................................................................................................10

      F.     Plaintiffs were on notice about this argument and would not be disadvantaged by the introduction of prepayment evidence because it was a primary focus in discovery ..........................................................................10

      G.     The Court has the inherent authority to reconsider its decision although doing so is not strictly necessary; a clarification of the Court's opinion would also preserve the interest of justice ..........................................................13

      H.     Defendants are not raising a new argument in this motion ...................................13

CONCLUSION ...............................................................................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,*
    467 F. Supp. 2d 394 (S.D.N.Y. 2006) ........................................................5

*Catskill Dev. L.L.C. v. Park Place Entm't. Corp.,*
    154 F. Supp. 2d 696 (S.D.N.Y. 2001) (McMahon, J.) ...........................13

*Chanayil v. Gulati,*
    169 F.3d 168 (2d Cir. 1999) .........................................................................5

*Flickinger v. Harold C. Brown & Co.,*
    947 F.2d 595 (2d Cir. 1991) .........................................................................6

*Greenwood v. Daily News, L.P.,*
    2005 WL 1389052 (N.Y. Sup. Ct. June 7, 2005) ......................................4

*Haggar Int'l Corp. v. United Co. for Food Indus. Corp.,*
    906 F. Supp. 2d 96 (E.D.N.Y. 2012) .........................................................5

*Harkabi v. Sandisk Corp.,*
    891 F. Supp. 2d 527 (S.D.N.Y. 2012) ........................................................4

*Lehman Brothers, Inc. v Piper Jaffray & Co.,*
    2008 WL 5129084 (N.Y. Sup. Ct. May 20, 2008) ....................................4

*Luce v. Edelstein,*
    802 F.2d 49 (2d Cir. 1986) ...........................................................................5

*National Petrochemical Co. v. M/T Stolt Sheaf,*
    930 F.2d 240 (2d Cir. 1991) .......................................................................13

*SEC v. Moran,*
    922 F. Supp. 867 (S.D.N.Y. 2006) .............................................................6

*United States v. Alkins,*
    925 F.2d 541 (2d Cir. 1991) .........................................................................5

*Virga v. Big Apple Constr. & Restoration, Inc.,*
    590 F. Supp. 2d 467 (S.D.N.Y. 2008) (McMahon, J.) ............................13

Defendants HDG Mansur Investment Services, Inc. and HDGM Advisory Services, LLC (collectively the "Fund Manager") and Harold D. Garrison submit this memorandum of law in support of their motion asking the Court to reconsider or clarify its April 30, 2014 ruling (the "Opinion") precluding Defendants from introducing evidence at trial to demonstrate that one reason the Fund Manager believed it was entitled to receive the fees in dispute in this action during 2012 was because the plain language of the FMA, confirmed by the parties' prior course of conduct and signoffs from the Funds' independent auditor and Board of Directors, allowed certain fees to be paid on budgeted transactions in a given year "prior to" their closing.  (FMA ¶¶ 5.5, 5.6.)

This argument does not justify Defendants' retention of the disputed fees following the Fund Manager's termination, which is why Defendants could not have made this argument in opposition to Plaintiffs' breach of contract claim (and why this argument does not entitle Defendants to a setoff).  However, this argument is necessary for Defendants to rebut Plaintiffs' fraud and other remaining claims, which allege that Defendants improperly prepaid themselves fees during 2012 and then, "after realizing that certain transactions would not in fact occur in 2012 and that they would not earn the money they had taken, they re-characterized these improper payments as the additional Financing Fees."  (Compl. ¶ 51.)  Defendants seek to use prepayment evidence only to demonstrate that, contrary to Plaintiffs' theory, (i) making the prepayments during 2012 was not improper (which is not inconsistent with the Court's holding that Defendants could not retain the fees post-termination); and (ii) more importantly, that Defendants believed that making the prepayments during 2012 was proper and they did not have an intent to defraud or deceive.

We respectfully submit that in its ruling precluding Defendants from offering prepayment evidence the Court overlooked Defendants' stated reason for why they are seeking to offer prepayment evidence at trial (to refute Plaintiffs' fraud and other remaining claims) and whether Defendants could have presented this argument in opposition to Plaintiffs' breach of contract claim.  (We believe the answer is no.)  We suggest that this led the Court to reach certain conclusions it otherwise would not have reached.

We also respectfully submit that the Court overlooked that this is not a "heretofore undisclosed reason" (Op. at 1) for why Defendants received the disputed fees during 2012.  As discussed below, Defendants presented this rationale at length to the court in their opposition to Plaintiffs' most recent motion for summary judgment, which was the first time it was appropriate to do so.  We respectfully submit that the Court overlooked this fact in its statement that Defendants did not raise this argument in "the numerous papers filed with this court in connection with not one but two motions for summary judgment." (Op. at 2).

### THE COURT'S RULING

We understand that the basis of the Court's ruling precluding Defendants from introducing prepayment evidence is the following:

> Very shortly after this lawsuit was filed, plaintiffs moved for summary judgment on their breach of contract claim (Count Two). . . . In order to defend against that motion, *defendants should have raised any and every reason why taking the money did not breach their FMAs with the plaintiff Funds.*

(Op. at 2 (emphasis added).)

The Court stated in the Opinion that although Defendants are seeking to use the prepayment evidence to support an offset against Plaintiffs' breach of contract claim rather than a defense to it (Op. at n.2), the bottom line is that in either context the issue of Plaintiffs' entitlement to the $5.8 million in dispute has been adjudicated and that:

> [W]ere Defendants permitted to raise the argument they now seek
> to make, it would raise the very real risk of inconsistent results –
> yes, they did breach the contract, no, they didn't breach the
> contract after all – which impacts on the integrity of this court and
> the proceedings before it.

(Op. at 5.)

## ARGUMENT

### A.   Defendants do not seek to offer prepayment evidence to support an offset against the $5.8 million in dispute.

We understand and accept that the Court's summary judgment ruling on Plaintiffs'

breach of contract claim precludes Defendants from arguing that they are entitled to the $5.8

million in dispute *for any reason* under the FMA.  We understand and accept that if Defendants

were trying to introduce prepayment evidence to support an offset against the $5.8 million in

dispute, this would be a backdoor way of re-litigating Plaintiffs' breach of contract claim that the

Court already has adjudicated.[1]

But that is not what Defendants are seeking to do.  Defendants seek to use prepayment

evidence to demonstrate why they were entitled to, or at least believed they were entitled to,

receive the disputed fees during 2012, which would serve to rebut Plaintiffs' fraud and other

remaining claims.   Defendants do not contend that the rationale for taking prepayments would

provide a basis to keep the disputed fees following their termination as fund manager, and

therefore have never intended to use this rationale to serve as the basis of an offset. [2]

---

[1]      The Opinion states that this is why Defendants seek to offer prepayment evidence in
several places. *See, e.g.*, Op. at 2 n.2 ("I appreciate that defendants do not characterize their new
argument as a defense to the breach of contract claim – they argue that it justifies their
counterclaim."); Op. at 5 ("[Defendants] intended to justify a portion of that offset on the ground
that taking the money did not actually violate the contract.").

[2]      We noted in our opposition to Plaintiffs' motion *in limine* that the prepayment evidence is
relevant to Defendants' claim "for full or partial severance in its counterclaims" (Dkt. No. 118 at
4), but not for the reason the Court has outlined in its Opinion.  The evidence is relevant because

**B.   Defendants did not raise the FMA's prepayment provision as a defense to Plaintiffs' breach of contract claim because it was irrelevant.**

Defendants need to introduce prepayment evidence to defend against Plaintiffs' fraud and other remaining claims because they require a finding of intent, but the same evidence could not have been introduced to defend against Plaintiff's breach of contract claim where intent is irrelevant.

### (1)   Evidence of intent is irrelevant to a breach of contract claim

The prepayment evidence demonstrates that Defendants believed in good faith that they had a basis for taking the payments during 2012 pursuant to the FMA and the parties' prior practice, regardless of whether they could retain the prepaid fees after their termination. Defendants could not have introduced this evidence as a defense to Plaintiffs' breach of contract claim because in New York, "intent is not relevant to a cause of action for breach of contract.... The only issue is whether the Defendants breached the contract." *Greenwood v. Daily News, L.P.*, 2005 WL 1389052, at *4 (N.Y. Sup. Ct. June 7, 2005) (internal citation omitted); *accord Harkabi v. Sandisk Corp.*, 891 F. Supp. 2d 527, 546-47 (S.D.N.Y. 2012) ("Proof of motive or state of mind is not necessary to prevail on a breach of contract claim. . . . Motive is generally irrelevant in breach of contract actions.") (internal quotation marks omitted); *Lehman Brothers, Inc. v Piper Jaffray & Co.*, 2008 WL 5129084, at *9 (N.Y. Sup. Ct. May 20, 2008) ("A defendant's motive for breach is not a defense to a breach of contract claim, as a defendant's good or bad faith is not an element of the cause of action. . . . *A breach is a breach; it is of marginal relevance what motivations led to it.*") (emphasis added).

---

a finding that Defendants committed fraud or breached their fiduciary duty would support a finding that Defendants were terminated for cause, which would determine the type of severance payment they could receive – not because Defendants can use the prepayment rationale to keep the fees as an offset.

Here, it would have been improper for Defendants to raise their prepayment argument as a defense to Plaintiffs' breach of contract claim because whether or not Defendants reasonably believed that the FMA permitted them to take prepayments during the year was irrelevant to whether they could retain the fees following termination, which was what the breach of contract claim hinged upon.

> (2)  Evidence of intent is critical to a fraud claim

By contrast, intent is critical to a fraud claim. To prove fraud, simply showing that a party does not have a right to keep money is insufficient; rather, a showing must be made that, among other elements, there was "an intent to defraud" and "reasonable reliance on the representation, causing damage to the plaintiff." *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (internal quotations and citation omitted); *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006).

In a wide variety of contexts, courts have concluded that a party cannot prevail on a fraud claim where the defendant had a good faith belief that its conduct was proper. *See, e.g., Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("While the failure to carry out a promise made as consideration for a sale of securities may be an element of a Section 10(b) claim, that failure does not constitute fraud if the promise was made with a good faith expectation that it would be carried out."); *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 107 (E.D.N.Y. 2012) (good faith precludes a finding of fraud in a trademark registration context); *United States v. Alkins*, 925 F.2d 541, 50 (2d Cir. 1991) (in the context of criminal mail fraud charges, noting that "[i]f an individual believes that the information set forth in a mailing is true, it follows that he cannot have the requisite intent to defraud").[3] In addition, for the reasonable

---

[3]    While the law on fiduciary duty is not as unequivocally clear, there is case law which suggests that intent is a required element of a fiduciary duty claim. *See, e.g., Flickinger v. Harold C. Brown &*

reliance prong of a fraud claim to have meaning, a plaintiff must have contemporaneously relied on the alleged misrepresentation.

So, with respect to intent, whether Defendants had a good faith belief that they were entitled to receive the disputed fees as prepayments during 2012 is a critical factor. Prohibiting Defendants from introducing evidence to support that factor would be highly and unfairly prejudicial to Defendants.

### C.     The prepayment argument is not new or previously undisclosed.

The Court's Opinion refers to the prepayment argument as a "heretofore undisclosed alternative reason" for receiving the prepayments. (Op. at 1.) The Court states:

> [I]n the numerous papers filed with this court in connection with not one but two motions for summary judgment, Defendants never argued, 'Even if we were not entitled to 'true up' historically underpaid financing fees, we actually – or at least also – took money to pay ourselves for work we were doing on deals that had not yet closed, a practice that accords with the parties' course of dealing.

(Op. at 2.)

The Court has overlooked that Defendants previously outlined this argument in the first context where it was appropriate to do so:  in their opposition to Plaintiffs' motion for summary judgment.  There, Defendants stated:

> Contrary to Plaintiffs' mischaracterizations, the actual evidence shows that the HDG Entities received fees during 2012 pursuant to a budgeted process that was fully disclosed to and vetted by the auditors.  Specifically, the evidence demonstrates that at the beginning of 2012, as in all prior years, the HDG Entities submitted a budget to Plaintiffs which Plaintiffs reviewed in great detail prior to approving it. (Defs. St. ¶ 39.)  The budget projected that the HDG Entities would receive over $7 million in financing

---

*Co.*, 947 F.2d 595, 599 (2d Cir. 1991).  There likewise is case law suggesting that intent is a required element of the type of Investment Advisor Act claim that Plaintiffs have asserted.  *See, e.g., SEC v. Moran*, 922 F. Supp. 867, 896-97 (S.D.N.Y. 2006).

and disposition fees during 2012 from transactions expected to close during the year. (*Id.*)

Throughout 2012, the Fund Manager authorized the Funds to pay the Fund Manager fees in various amounts totaling $5,818,682 during the year. (Defs. St. ¶ 40.) As in prior years, the HDG Entities' accounting team understood these payments to be prepayments on transactions that were budgeted to close in 2012. (*Id.*) This was specifically permitted by Sections 5.5 and 5.6 of the Fund Management Agreement ("FMA") in which the HDG Entities had specifically negotiated the right to receive transaction fees "on *or prior to*" the closing of budgeted transactions to ensure they had the cash flow to meet their overhead and operational expenses. (Defs. St. ¶ 41 (emphasis added).) The HDG Entities' accounting team internally tracked the transaction fees received in 2012 to ensure they remained within the approved budget. (*Id.*)

The auditor and Board of the Funds knew about this practice of prepayments from prior years. As an example, in 2009, pursuant to Section 5.5 of the FMA, the HDG Entities authorized the prepayment of fees totaling $1,946,000 on a refinancing transaction budgeted to close in 2009 that did not end up closing until March 2010. (Defs. St. 42.) At year-end 2009, the HDG Entities disclosed the prepayments to the Funds' auditor, PricewaterhouseCoopers ("PwC"). (*Id.*) PwC then discussed the prepayments in detail with the HDG Entities and the Board and ultimately confirmed that both PwC and the Board were comfortable with the prepayments. (*Id.*) The HDG Entities memorialized the rationale under the FMA for the prepayments in a memo to PwC in 2010. (*Id.*) Likewise at year-end 2010, PwC and the Board approved prepayments in 2010 on a transaction that did not close until 2011, and again the HDG entities sent PwC a memorandum memorializing the existence of and rationale for the prepayments under the FMA. (*Id.*)

Thus, the evidence conclusively demonstrates that the HDG Entities' practice of authorizing payments throughout 2012 year was consistent with their regular practice in prior years which had been approved by both the auditors and the Board.

At the same time, contemporaneous documents confirm that the HDG Entities formed the belief in late 2011 or early 2012 that they were owed approximately $5.8 million on underpaid financing fees, a belief which was communicated to Board members throughout 2012. (Defs. St. ¶ 50.)

> Plaintiffs make much of the fact that the payments in dispute were
> not reported to them during the year. (Opp. at 5.) But in fact
> prepayments had never been disclosed during prior years until the
> year-end audit, and the auditors and Board knew this and
> confirmed that the prepayments were appropriate without
> demanding a change. (Defs. St. ¶ 42.)

(Dkt. No. 104 at 1-3.)

Moreover, the propriety of prepayments and Defendants' good faith belief that they were

proper when made was introduced at the very inception of the case. Plaintiffs alleged in their

Complaint:

> [O]n at least 29 occasions during 2012, the HDG Entities paid
> themselves fees for transactions that they apparently expected to
> occur later in the year, even though the HDG Entities had not yet
> earned that money.

(Compl. ¶ 27.) And in their Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated

January 29, 2013, Defendants stated that the "The FMA specifically provided the HDG Entities

with the right to be paid Financing Fees 'prior to the time of the completion of the relevant

financing." (Dkt. No. 8 at 6.) This is not a newly-created story that Defendants have introduced

into this case.

**D.    The evidence demonstrates that Defendants held a good faith belief that the FMA entitled them to receive the disputed fees in 2012 as prepayments of transactions budgeted to occur.**

The Court states that "Defendants do not seem to have given much consideration to

whether this court – the trier of fact, since there is going to be a bench trial – would find the

newly-asserted argument for why they were authorized to take the money from their clients to be

credible." (Op. at n.3.)

However, the evidence in the record demonstrates that one reason Defendants believed

that they were entitled to receive the disputed fees during the year was because the FMA entitled

them to receive prepaid fees on transactions budgeted to close and the parties' prior course of

8

conduct and prior approvals from the Funds' independent auditor supported this practice. The parties have stipulated that the "Fund Managers contemporaneously recorded the Payments in the general ledgers of the underlying property accounts as prepayments of financing fees and disposition fees for transactions that were budgeted to close in 2012." (Stipulated Facts ¶ 16.) The parties also stipulated that in both 2009 and 2010, respectively, the HDG Entities "memorialized certain facts relating to payments of a financing fee" that did not close in those years. (Stipulated Facts ¶¶ 19-20.) There are at least ten contemporaneous documents designated as trial exhibits by Plaintiffs or both parties that demonstrate that the fees were booked as prepayments during the year. (*See, e.g.*, Ex. 1 to May 6, 2014 Declaration of Francis J. Earley ("Earley Decl."), attached hereto (attaching examples).) Plaintiffs' own witness, Ian Nelson (the Funds' independent auditor), testified that the FMA's provision that financing fees are payable "prior to the time of completion of the relevant financing" was "unusual" in his experience. (Nelson Tr. 36:4-24, attached as Ex. 2 to Earley Decl.) He also testified that in 2009 the prepayments were not reported to the Board or the auditor until after year-end, and only at that time did the Board and auditor approve the prepayments. (Nelson Tr. 22:11-24:25.)

Moreover, Plaintiffs themselves stated in their Complaint that the disputed fees were taken as prepaid fees during the year. *See* Compl. ¶ 27 ("[O]n at least 29 occasions during 2012, the HDG Entities paid themselves fees for transactions that they apparently expected to occur later in the year, even though the HDG Entities had not yet earned that money."). Indeed, it is the basis of their fraud claim:

> The HDG Entities and Mr. Garrison failed to disclose material facts in December 2012 when, after realizing that certain transactions would not in fact occur in 2012 and that they would not earn the money they had taken, they re-characterized these improper payments as the additional Financing Fees described above, apparently in an effort to cover up the unearned payments

9

that they had been making to themselves throughout the year, and
that were never disclosed to the Funds or their auditors.

(Compl. ¶ 51.)  Plaintiffs cannot now change their story to say that prepayments were never a

relevant issue in this case.  And it would not prejudice Plaintiffs to allow such vital evidence into

the trial, although precluding such evidence would be highly prejudicial to Defendants.

### E.    Allowing prepayment evidence would not lead to any risk of inconsistent results.

Because prepayment evidence is relevant to a remaining claim but was irrelevant to the

previously litigated claim and there is no risk of inconsistent results, judicial estoppel should not

apply.  It would not be inconsistent for the Court to find that Defendants believed in good faith

that they were entitled to the prepayments at the time they were made, even if they did not have

the right to retain the fees on the basis of their contractual right to prepayments once the FMA

was terminated.  That is because these two findings would be fully compatible:  even if the Court

were to find that Defendants believed they could receive prepaid fees in 2012, the Court's ruling

that Defendants were not allowed to retain the disputed fees for any reason following their

termination would remain undisturbed.  This would not equate to a finding of "yes, they did

breach the contract; no, they didn't breach the contract after all" (Op. at 5) because a finding that

Defendants did not act with *intent* to deceive (or even that Defendants had a right to receive

prepaid fees during 2012 but no right to retain them) would have no bearing on whether the

contract was breached by the Fund Manager's retention of the fees following its termination.

### F.    Plaintiffs were on notice about this argument and would not be disadvantaged by the introduction of prepayment evidence because it was a primary focus in discovery.

The Court has stated that it would prejudice Plaintiffs if Defendants were allowed to

present prepayment evidence at trial.  However, in addition to the fact that, as noted above, this

issue has been known to Plaintiffs from the beginning of the case and was pled in their

Complaint, the evidence indisputably shows that the prepayment evidence was a focal point of discovery. Plaintiffs deposed Defendants' witnesses and even their own witness about it and plainly recognized it as a critical part of the case.

For example, during the deposition of Brian Reeve, the Fund Manager's director of accounting, Plaintiffs' counsel focused on whether the Fund Manager was permitted under the FMA to authorize prepayments to itself:

> Q: What payments are scheduled here?
>
> A: The prepayments.
>
> Q: And what do you mean by prepayments?
>
> A: Payments on transactions to close in the future.
>
> Q: Okay. So…the transactions connected with the properties listed here had not happened at the time the fees were paid to the fund manager.
>
> A: Correct…
>
> Q: Do you have an understanding as to whether the fees on these properties were due to be paid to the fund manager under the fund management agreements at the time the payments were made?
>
> A: Yes
>
> Q: What is your understanding?
>
> A: That the contract allows for it.
>
> Q: Okay. And is that view based on your own review of the contracts or is that something someone told you?
>
> A: My own review.

(Reeve Dep. 40:7 – 41:22, Earley Decl. Ex. 3.)

Plaintiffs took the same approach in questioning their own witness, Mr. Nelson, asking him in detail about the history of the prepayments:

Q: And you also said that the Board was comfortable with respect to the prepayments that occurred back in 2009.  How did you know that the Board was comfortable with respect to those prepayments?

A: They were aware of the fact that they were done and had been presented with the information that they were done, understood the facts, and were okay with it.

Q: How was the Board aware of the prepayments and comfortable?

A: Through – again, through discussions that we had pre-issuance of financial statements.

(Nelson Dep. Tr. 193:2-14, Earley Decl. Ex. 2.)

Because Plaintiffs alleged in their Complaint and have understood from the case's inception and through discovery that the prepayment evidence is relevant to the Fund Manager's intent, it would not disadvantage them if Defendants present prepayment evidence at trial. Moreover, Plaintiffs themselves have designated numerous documents relating to prepayments as exhibits, which refutes their claim that they would be unfairly prejudiced if this evidence is introduced.  (*See* Earley Decl., Ex. 1.)

Lastly, we note that the Court's view as to why Defendants were seeking to introduce prepayment evidence was the basis of its holding for why Plaintiffs would be unfairly disadvantaged if judicial estoppel were not to apply:

> Defendants succeeded in convincing the court…that the entry of partial final judgment in favor of plaintiffs would be inappropriate, because they were asserting counterclaims that would have to be offset against the $5.8 million judgment in plaintiffs' favor. *They took this position without ever apprising the court that they intended to justify a portion of that offset on the ground that taking the money did not actually violate the contract.*  This has prejudiced plaintiffs in their quest for finality, which would have permitted the application of collateral estoppel.

(Op. at 5. (emphasis added).)

However, as explained above, Defendants do not intend to justify any portion of the offset on the ground that taking $5.8 million did not violate the contract and that is not why

Defendants seek to introduce prepayment evidence. We do not believe that Defendants have ever represented otherwise. We therefore ask the Court not to consider this as a factor for whether or not judicial estoppel should apply.

**G.    The Court has the inherent authority to reconsider its decision although doing so is not strictly necessary; a clarification of the Court's opinion would also preserve the interest of justice.**

The Court has inherent supervisory power and authority pursuant to the Local Rules to grant Defendants' motion or to clarify that its order was only intended to preclude prepayment evidence in support of Defendants' counterclaims, not to preclude evidence to defend against Plaintiffs' fraud claim. The decision to grant a motion for reconsideration is within "the sound discretion of the trial court." *National Petrochemical Co. v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir. 1991).

While motions for reconsideration are infrequently granted, this Court has granted such motions in the past when appropriate. *See, e.g., Virga v. Big Apple Constr. & Restoration, Inc.,* 590 F. Supp. 2d 467, 477 (S.D.N.Y. 2008) (McMahon, J.); *Catskill Dev. L.L.C. v. Park Place Entm't. Corp.,* 154 F. Supp. 2d 696, 706 (S.D.N.Y. 2001) (McMahon, J.).[4]

**H.    Defendants are not raising a new argument in this motion.**

In their opposition to Plaintiffs' motion *in limine*, Defendants noted that the prepayment evidence "relates to Plaintiffs' remaining claims and the Fund Manager's claim for full or partial severance in its counterclaim." (Dkt. No. 118 at 4.) As discussed above, this evidence is

---

[4]    In *Catskill*, this Court noted that "the Court was laboring under certain misapprehensions about the particulars of the various transactions," and noted that "Plaintiffs are partly responsible for the Court's failure to understand fully the details of the project, since they submitted precious little background information and I had to glean what I could from project documents provided by the defendant. Plaintiffs have used this motion to fill in the gaps in their earlier papers." *Id.* at 698. Even so, the Court granted the motion, holding that "[h]aving again reviewed the relevant statute and the terms of plaintiff's agreements, I conclude that my application of section 2711(a)(3) to the Management Agreement .... was in error" and that section did not apply to the class of gaming contracts at issue. *Id.* at 702.

intended only to rebut Plaintiffs' fraud and other remaining claims.  That in turn is relevant to the type of severance payment that Defendants potentially could receive because a finding that there was a fraud or breach of fiduciary duty would preclude Defendants from receiving a full severance amount.  Defendants have never intended to use prepayment evidence to support an offset on the basis that the prepaid fees can be retained after termination.

## CONCLUSION

For each of the aforementioned reasons, Defendants respectfully urge this Court to grant Defendants' motion for reconsideration or clarification and permit Defendants to introduce prepayment evidence to refute Plaintiffs' fraud and other remaining claims.

Dated: May 6, 2014
    New York, New York

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: _____
Francis J. Earley
Scott A. Rader
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
(212) 935-3000
FEarley@mintz.com
SARader@mintz.com

*Attorneys for Defendants HDG Mansur
Investment Services, Inc., HDGM Advisory
Services, Inc., and Harold D. Garrison*

14