UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
GPIF-I EQUITY CO., LTD. and                              :
GPIF-I FINANCE CO., LTD.,                                :
                                                         :
        Plaintiffs-Counterclaim Defendants,              :
v.                                                       :   Case No. 13 Civ 547 (CM)
                                                         :
HDG MANSUR INVESTMENT SERVICES, INC.,                    :
HDGM ADVISORY SERVICES, LLC, and                         :
HAROLD D. GARRISON                                       :
                                                         :
        Defendants-Counterclaim Plaintiffs.              :
------------------------------------------------------------------ x

### STATEMENT OF DEBORAH HAZELL IN DEFENSE OF COUNTERCLAIM FOR TERMINATION FEES

I, Deborah Hazell, hereby submit the following statement of facts in defense of the counterclaim of defendants HDG Mansur Investment Services, Inc. ("HDG Mansur Investments") and HDGM Advisory Services, LLC ("HDGM Advisory" and, collectively, the "Fund Managers") at trial:

I understand that the defendants HDG Mansur Investments and HDGM Advisory are seeking to recover $8.8 million in termination fees under the Fund Management Agreements (the "Agreements"). It is not clear to me on what basis they seek to recover, or how they arrived at the amounts they claim, and I understand that their witnesses will not be testifying at trial to support their claim for termination fees.

Based on stipulated facts and exhibits offered by the defendants, I have tried to address what I believe their claims to be. However, to the extent they have other arguments to support their claims, I may need to supplement or amend my testimony to address those arguments.

#### The Termination Fees Due Based On A "For Cause" Termination

1.      The termination fee for cause under the terms of the Agreements is $1,040,202, which consists of the following components:

- AW Plano disposition fee of $369,000, *see* Stip. Facts ¶ 36.
- TR Solihull disposition fee of $56,277, *see* Stip. Facts ¶ 36.
- EG Hemel disposition fee of $41,655, *see* Stip. Facts ¶ 36.
- IB Farnborough disposition fee of $72,704, *see* Stip. Facts ¶ 36.
- SP Bruchsal disposition fee of $21,722, *see* Stip. Facts ¶ 36.
- Legal fees of $29,792, *see* Stip. Fact ¶ 37.
- Expenses totaling $14,513, *see* Stip. Fact ¶ 38.

- Sponsor Co-Investment Payment of $140,940.

2. The Sponsor Co-Investment Payment of $140,940 is based on the audited NAV of plaintiffs GPIF-I Equity Co., Ltd. and GPIF-I Finance Co., Ltd. (the "Funds") as of December 31, 2012, which was adopted and approved by the Funds' Boards. *See* Ex. 110. The audited NAV as of December 31, 2012, also was used to calculate the value of the *hissas*, or shares held by investors in the Funds, as well as the interest of HSBC Capital (USA) Inc., as of that date. I am not aware of any reason that the NAV of the Funds would have changed between December 31, 2012, and the effective date of the Fund Manager's termination, January 2, 2013. Stipulated Facts ¶¶ 27, 30.

3. I understand that the Fund Manager is seeking a Sponsor Co-Investment Payment of $1,400,969, or $1,260,029 more than what the Funds believe is due. The Fund Managers' claim for the additional money is based on a fourth-quarter NAV for the Funds that was never presented to or approved by the Boards. That NAV was based on valuations prepared for the Fund Managers by Cushman & Wakefield, and those valuations, in turn, rested on what I understand were very aggressive assumptions provided by the Fund Managers regarding the real estate market and the expectations for income from the Funds' properties.

4. When the Funds terminated HDGM Advisory as the Fund Manager, and retained CBRE to act as Investment Manager, the Funds' Boards asked CBRE to value the Funds' properties as of December 31, 2012. After that review, CBRE provided the Funds' Boards with significantly reduced valuations that were based on more measured assumptions. The CBRE valuations were reviewed by PwC as part of the audit, and provided the basis for the audited NAV that was approved by the Boards after a full review of all of the CBRE assumptions and conclusions.

5. The Funds' audited and approved NAV as of December 31, 2012 was $44.5 million. *See* Ex. 110.

6. I also understand that the Fund Managers are seeking $1,341,203 in leasing commissions for several leases that closed after the effective date of HDGM Advisory's termination. In particular, the Fund Managers claim that the "termination fees" under the FMAs include leasing commissions due for the leases signed in 2013 on the SA Andover, MB Maryland Heights, SB Richardson "A" and "B," and AP Nassau Bay properties (the "Properties" or the "Leases").

7. The Fund Managers did not have any agreements with the Funds or the underlying property entities to receive any such commissions, fees or other compensation in connection with the provision of leasing services for these Properties. The FMAs do not cover the provision of leasing services by the Fund Manager to the Funds or the underlying property entities, or provide for the Fund Manager to receive fees for leasing services from the Funds or the underlying property entities. I am not aware of any other agreements between the Funds and the Fund Managers to pay such leasing commissions. Moreover, to the extent that HDGM Advisory and/or HDG Mansur Investment are claiming they were acting in some capacity as a broker for these Leases, the Leases were not completed while they were acting in that broker capacity, and any such work ended when HDGM Advisory was terminated effective on January

2

2, 2013.  Thus, the Fund Managers are not entitled to any compensation for those Leases, particularly because CBRE, the new Investment Manager, performed material work on those Leases after HDGM Advisory was terminated.

_____

Deborah Hazell